# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BENSLEY CONSTRUCTION, INC., on its own behalf and on behalf of all others similarly situated, | |
| Plaintiff, | Civil Action No. 05 11249 GAO |
| v. | |
| MARSH & MCLENNAN COMPANIES, INC., et al. | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

Douglas M. Brooks, BBO #058850
Kenneth G. Gilman, BBO #192760
Douglas J. Hoffman, BBO #640472
GILMAN AND PASTOR, LLP
60 State St., 37th Floor
Boston, MA 02109
Tel: (617) 742-9700
Fax: (617) 742-9701

00005528.WPD ; 1

## TABLE OF CONTENTS

INTRODUCTION AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.      THE BURDEN OF PROVING REMOVAL JURISDICTION RESTS WITH
        MARSH, AND THERE IS A STRONG PRESUMPTION IN FAVOR OF
        REMAND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     THE COURT MUST REMAND THIS CASE TO THE ESSEX COUNTY
        SUPERIOR COURT FOR LACK OF FEDERAL JURISDICTION . . . . . . . . . 3

        A.     CAFA Does Not Apply To This Case . . . . . . . . . . . . . . . . . . . . . . . . . . 3

               1.     An Action Is "Commenced" For Purposes of CAFA When
                      It Is Filed In State Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

               2.     This Case Was Commenced In State Court On
                      February 17, 2005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        B.     Marsh Has Not Established Diversity Jurisdiction . . . . . . . . . . . . . . . . 10

               1.     The Requisite Amount In Controversy Is Not Met . . . . . . . . . . 10

               2.     The Parties Are Not Completely Diverse . . . . . . . . . . . . . . . . . . 13

        C.     Substitution of The Class Representative Does Not Subject
               This Case To CAFA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## TABLE OF AUTHORITIES

## CASES

*Aldoupolis v. Commonwealth*,
    386 Mass. 260 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Alshrafi v. American Airlines, Inc.*,
    321 F.Supp. 2d 150 (D. Mass. 2004, Young, C.J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Arizona v. Manypenny*,
    451 U.S. 232 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Berman v. Narragansett Racing Ass'n*,
    414 F.2d 311 (1ˢᵗ Cir. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*BIW Deceived v. Local S6*,
    132 F. 3d 824 (1ˢᵗ Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Burnett v. New York C. R. Co.*,
    380 U.S. 424 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Burns v. Windsor Ins. Co.*,
    31 F.3d 1092 (11th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Bush v. Cheaptickets*,
    No. CV 05-2285 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cardizem CD Antitrust Litig.*,
    105 F. Supp. 2d 618 (E.D. Mich. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Ciardi v. F. Hoffmann-La Roche, Ltd.*,
    No. 99-11936, 2000 U.S. Dist. LEXIS 1483 (D. Mass. 2000) . . . . . . . . . . . . . . . . . . . . 12

*Clark v. California*,
    No. C96-1486, 1998 U.S. Dist. LEXIS 6770 (N.D. Cal. May 11, 1998) . . . . . . . . . . . 20

*Clark v. Paul Gray, Inc.*,
    306 U.S. 583 (1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Clay v. Brown & Williamson Tobacco Corp.*,
    77 F. Supp. 2d 1220 (M.D. Ala. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Commonwealth v. Duteau,*
    384 Mass. 321 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Cormier v. Pezrow New Eng., Inc.,*
    437 Mass. 302 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Cowan v. Outpatient Ptnrs., Inc.,*
    No. 6:04-cv-28, 2004 U.S. Dist. LEXIS 6876 (M.D. Fla. April 1, 2004) . . . . . . . . . . . 11

*Dierks v. Thompson,*
    414 F.2d 453 (1st Cir. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Durant v. Servicemaster Co.,*
    147 F. Supp. 2d 744 (E.D. Mich. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Emig v. American Tobacco Co.,*
    184 F.R.D. 379 (D. Kan. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Engers v. AT&T Corp.,*
    No. 98-3660, 2000 U.S. Dist. LEXIS 10937 (D.N.J., 2000) . . . . . . . . . . . . . . . . . . . 20

*Expedia Hotel Taxes and Fees Litigation,*
    No. C05-0365C (W.D. Wash. Apr. 15, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Exxon Mobil Corp. v. Allapattah Servs.,*
    Nos. 04-70, 04-79, 2005 U.S. LEXIS 5015 (June 23, 2005) . . . . . . . . . . . . . . . . . . 10, 11

*Fallick v. Nationwide Mut. Ins. Co.,*
    162 F.3d 410 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Federated Mut. Ins. Co. v. McKinnon Motors,*
    329 F.3d 805 (11th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Flower v. Suburban Land Co.,*
    123 N.E.2d 218 (Mass. 1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Gattegno v. Sprint Corporation,*
    297 F. Supp. 2d 372 (D. Mass. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11-13

*Gilman v. BHC Sec.,*
    104 F.3d 1418 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Griffith v. Bowen*,
    678 F. Supp. 942 (D. Mass. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Hankins v. Pfizer, Inc.*,
    CV 05-1797 ABC (Rzx) (C.D. Cal. March 25, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hewitt vs. AAA Ins. Co.*,
    Nos. Civ. A. 98-3711, 99-0596, 1999 U.S. Dist. LEXIS 6047 (E.D.La. 1999) . . . . . . . 17

*Hiller v. DaimlerChrysler Corp.*,
    No. 02-10533-RWZ, 2004 U.S. Dist. LEXIS 4578 (D. Mass. March 23, 2004) . . . . . . 10

*Holmes Product Corp. v. Dana Lighting, Inc.*,
    958 F. Supp. 27 (D. Mass. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Hunt v. Transport Indem. Ins. Co.*,
    No. 90-00041, 1990 U.S. Dist. LEXIS 16555 (D. Haw. July 30, 1990) . . . . . . . . . . . . . 5

*Indus. Diamonds Antitrust Litig.*,
    167 F.R.D. 374 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Interstate Litho Corp. v. Brown*,
    255 F.3d 19 (1st Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Kabatchnick v. Hanover-Elm Bldg. Corp.*,
    331 Mass. 366 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Keiffer v. Travelers Fire Ins. Co.*,
    167 F. Supp. 398 (D. Md. 1958 ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Knudsen v. Liberty Mutual Insurance Company*,
    No. 05-8010, 2005 U.S. App. LEXIS 10440 (7 Cir. June 7, 2005) . . . . . . . . . . . 4, 6-8, 19

*Lomax v. Duchow*,
    163 F. Supp. 873 (D. Neb. 1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lorraine Motors, Inc. v. Aetna Cas. & Surety Co.*,
    166 F. Supp. 319 (E.D.N.Y. 1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lott v. Pfizer, Inc.*,
    Case No. 05-cv-0230-MJR (S.D. Ill. April 7, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

iv

*Markelson v. Director of Div. of Employment Sec.*,
    383 Mass. 516 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Mass. Diet Drug Litig.*,
    338 F. Supp. 2d 198 (D. Mass. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Mills v. Allegiance Healthcare Corp.*,
    178 F. Supp.2d 1 (D. Mass. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Monaco v. Stone*,
    187 F.R.D. 50 (E.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Morris v. Pfizer, Inc.*
    No. 05-113-GPM (D. Mass. April 21, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Morrison v. Allstate Indem. Co.*,
    228 F. 3d 1255 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Playmobil Antitrust Litig.*,
    35 F. Supp. 2d 231 (E.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Ponce Super Ctr., Inc. v. Glenwood Holdings, Inc.*,
    359 F. Supp. 2d 27 (D.P.R. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 19

*Pritchett v. Office Depot, Inc.*,
    360 F. Supp. 2d 1176 (D. Col. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-8

*Rhinehart v. Cincinnati, Inc.*,
    716 F. Supp. 7 (E.D. Mich. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Salinas v. United States*,
    522 U.S. 52 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Sayers v. Sears, Roebuck and Co.*,
    732 F. Supp. 654 (W. D. Va. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Smith v. Pfizer, Inc.*,
    Case No. 05 cv-0112-MJR (S.D. Ill. March 24, 2005) . . . . . . . . . . . . . . . . . . . . . 7

*Sneddon v. Hotwire, Inc.*,
    Nos. 05-0951, 05-0952, 05-0953, 2005 U.S. Dist. LEXIS 13257
    (N.D. Cal. June 29, 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*South Cent. States Bakery Products Antitrust Litigation*,
 86 F.R.D. 407 (M.D. La. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Spielman v. Genzyme Corp.*,
 251 F.3d 1 (1st Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Spinner v. Nutt*,
 631 N.E. 2d 542 (Mass. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*St. Paul's Indem. Corp. v. Red Cab Co.*,
 303 U.S. 283 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Terazosin Hydrochloride Antitrust Litigation*,
 220 F.R.D. 672 (S.D. Fla. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Weiss vs. Winner's Circle of Chicago, Inc.*,
 No. 91C 2780, 1995 U.S. Dist. LEXIS 18713 (N.D. Ill. 1995) . . . . . . . . . . . . . . . . . . 17

*Weld v. Glaxo Wellcome, Inc.*,
 434 Mass. 81 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Williams Corp. v. Kaiser Sand & Gravel Corp.*,
 No. C-91-4028, 1992 U.S. Dist. LEXIS 16947 (N.D. Cal. Oct. 9, 1992) . . . . . . . . . . . 18

*Woodward v.  Newcourt Commercial Finance Corp.*,
 60 F. Supp. 2d 530 (D.S.C. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## **STATUTES**

28 U.S.C. § 1332(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 U.S.C. §1447(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

M.G. L. c. 215, §§ 8A, 15. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

M. G. L. c. 223, § 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## **RULES**

Fed R. Civ.  P.  3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

Fed. R. Civ. P. 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

Mass. R. Civ. P. 3 ........................................................ 4

## INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiff Bensley Construction, Inc. ("Plaintiff"), by and through its undersigned counsel, moves this Court, pursuant to 28 U.S.C. §1447(c), to remand this class action to the Superior Court for Essex County, Massachusetts.[1]  The Motion to Remand is compelled by the improper removal of this action by defendants Marsh & McClennan Companies, Inc. and Marsh, Inc. (collectively, "Marsh"), through a Notice of Removal (the "Notice") filed with this Court on June 15, 2005.

Plaintiff commenced this action on February 17, 2005, by filing a Complaint in the Superior Court for Essex County, Massachusetts.  On May 16, 2005, Plaintiff filed a First Amended Class Action Complaint (the "Amended Complaint") with the Essex Superior Court pursuant to Mass R. Civ. P. 15(a).  Plaintiff subsequently served the Amended Complaint upon the defendants.

The Amended Complaint does not bring any count under a federal statute.  Rather, Plaintiff seeks relief solely pursuant to Massachusetts law.   (Amd. Compl. ¶¶ 2, 48, Counts I-VI). Nevertheless, on June 15, 2005, Marsh filed a Notice of Removal (the "Notice") with this Court, claiming that diversity jurisdiction lies.  First, Marsh argues that the diversity provisions of the Class Action Fairness Act ("CAFA") apply to this case because, although it was filed prior to the enactment of that statute, it was *removed* after enactment.  (Notice ¶¶ 28-37).  As explained in detail below, every federal court to address this argument has rejected it.

Marsh has also failed to meet the pre-CAFA standards for diversity jurisdiction, which require Marsh to establish that: (1) the named plaintiff's amount in controversy exceeds $75,000; ***and*** (2) the

---

[1]  Plaintiff Bensley Construction, Inc. has informed counsel that, due to an anticipated corporate transaction involving a change in ownership, it has determined that it is no longer able to serve as a class representative in this matter.  Therefore, counsel intends to file a motion to substitute Rehab Seating Systems, Inc., as class representative no later than Monday, July 25, 2005.  As explained below, substitution of the class representative should not affect the Court's analysis on this motion to remand.

parties are completely diverse.  Marsh, in fact, does not argue that the named plaintiff's amount in controversy exceeds $75,000.  Marsh instead argues that the class claims may be aggregated for this purpose because Plaintiff brought a claim for unjust enrichment.  This argument contradicts the great weight of authority, which holds that aggregation is only proper in extremely limited circumstances not present here.  Consequently, this matter must be remanded on that basis alone.

In addition, the parties are not completely diverse.  Although Plaintiff and four of the defendants reside in Massachusetts, Marsh claims that these defendants were "fraudulently joined." Marsh, however, fails to meet its heavy burden of establishing fraudulent joinder by demonstrating, through clear and convincing evidence, that Plaintiff cannot possibly state a claim against these defendants or that their joinder was a mere "sham."  As explained below, Marsh misconstrues the nature of Plaintiff's claim, and joinder of these defendants is appropriate either under the doctrine of "juridical links" or a conspiracy theory.

Marsh also claims removal is appropriate because similar cases brought under federal law have been consolidated in an MDL proceeding.  This argument is irrelevant, because the only question here is whether *this* Court has jurisdiction over *this* case, as pled by *this* Plaintiff.  Plaintiff has every right to have this matter resolved by the courts of its home state, regardless of the pendency of other cases filed by different plaintiffs pending in a federal court in New Jersey.  Under these circumstances, the Court should grant Plaintiff's Motion to Remand.

## **ARGUMENT**

### I.    **THE BURDEN OF PROVING REMOVAL JURISDICTION RESTS WITH MARSH, AND THERE IS A STRONG PRESUMPTION IN FAVOR OF REMAND**

"If at any time before final judgment it appears that the district court lacks subject matter

jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).  The removal statute is to be strictly construed and any doubts about the propriety of removal are to be resolved against the removal of an action.  *See, e.g., BIW Deceived v. Local S6*, 132 F. 3d 824, 831 (1st Cir. 1997); *Alshrafi v. American Airlines, Inc.*, 321 F.Supp. 2d 150, 153 (D. Mass. 2004).  The party seeking removal has the burden of demonstrating the existence of federal jurisdiction.  *BIW Deceived*, 132 F. 3d at 831; *Alshrafi*, 321 F.Supp. 2d at 153; *Gattegno v. Sprint Corporation*, 297 F. Supp. 2d 372, 374 (D. Mass. 2003).

## II.    THE COURT MUST REMAND THIS CASE TO THE ESSEX COUNTY SUPERIOR COURT FOR LACK OF FEDERAL JURISDICTION

In order for Marsh to avoid remand of this matter, it must either: (1) establish that the provisions of CAFA apply to this case; or (2) establish that the parties are completely diverse *and* that Plaintiff's claim exceeds $75,000.  Marsh is unable to establish *any* of these requirements, and therefore the case must be remanded to Massachusetts state court.

### A.    CAFA Does Not Apply To This Case

CAFA applies only to actions "commenced" on or after its effective date of February 18, 2005.  109 P.L. 2, Sec. 9.  Marsh maintains that CAFA is applicable here either because:  (1) a case is not commenced for purposes of CAFA until it is removed to federal court; or (2) the case was not "commenced" in Massachusetts state court at all because venue was not proper in Essex County, Massachusetts.  Neither argument has merit.

#### 1.    An Action Is "Commenced" For Purposes of CAFA When It Is Filed In State Court.

Section 9 of CAFA provides that the "amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act [February 18, 2005]."  109 P.L. 2, Sec. 9.  However, Marsh claims that the term "commenced" refers to the date that a defendant

*removes* the case to federal court.  (Notice ¶¶ 36-37).  This argument contradicts the plain language

of the relevant procedural rules, under which the *filing* of a case commences the action.  Fed. R. Civ.

P. 3 ("A civil action is commenced by filing a complaint with the court."); Mass. R. Civ. Proc. 3 ("A

civil action is commenced by . . . filing such complaint and an entry fee with such clerk.").

Marsh's interpretation of "commenced" also contradicts the plain language and legislative

history of CAFA, and has been rejected by every federal court to address the issue, including the U.S.

Court of Appeals for the Tenth Circuit, *Pritchett v. Office Depot, Inc.*, 360 F. Supp. 2d 1176 (D. Col.

2005) (referred to herein as "*Pritchett* App."), *affirmed*, 404 F. 3d 1232 (10th Cir. 2005) (referred to

herein as "*Pritchett* DC"), and the Seventh Circuit.  *Knudsen v. Liberty Mutual Insurance Company*,

No. 05-8010, 2005 U.S. App. LEXIS 10440, at *2-3 (7 Cir. June 7, 2005).  In *Pritchett*, the District

Court and the Tenth Circuit each held that the term "commenced" in CAFA Section 9 refers to the

date the action was filed in state court, and "not the date that it was removed to federal court."

*Pritchett* DC, 360 F. Supp. 2d at 1181 ("Consequently, the Act does not apply to cases, such as this

one, commenced prior to February 18, 2005."); *Pritchett* App., 404 F.3d at 1238 ("[b]ecause we

conclude that removal to federal court does not 'commence' an action for the purposes of the Class

Action Fairness Act of 2005, the district court's remand order is AFFIRMED").

As discussed in *Pritchett*, two floor statements from **sponsoring legislators** indicate that the

bill was not designed to apply to currently pending lawsuits.  *Pritchett* App., 404 F.3d at 1236-37

(citing 151 Cong. Rec. S1080 (daily ed. Feb. 8, 2005) (statement of Sen. Dodd) ("[The Act] does not

apply retroactively, despite those who wanted it to. A case filed before the date of enactment will be

unaffected by any provision of this legislation."); 151 Cong. Rec. H753 (daily ed. Feb. 17, 2005)

(statement of Rep. Goodlatte) ("Since the legislation is not retroactive, it would have absolutely no

effect on the 75 class actions already filed against Merck in the wake of the Vioxx withdrawal.")).

Moreover, Congress had expressly rejected a provision that would have made CAFA applicable to

actions pending in state court.  However, "neither the Senate version of the bill nor the final statute"

contained this provision, instead providing only for application to civil actions "commenced" on or

after the date of the Act.  *Pritchett* App., 404 F.3d at 1236.  *Pritchett* concluded that "[b]y exercising

the House provision, Congress signaled an intent to narrow the removal provisions of the Act to

exclude currently pending suits."  *Pritchett* App., 404 F.3d at 1236 (citing House and Senate Reports).

Accordingly, Marsh's reading of CAFA contradicts the express intent of Congress.

     *Pritchett* also addressed the three cases cited by Marsh here, which were decided in the

context of amendments to other jurisdictional provisions:  *Lorraine Motors, Inc. v. Aetna Cas. &*

*Surety Co.*, 166 F. Supp. 319 (E.D.N.Y. 1958); *Sayers v. Sears, Roebuck and Co.,* 732 F. Supp. 654

(W.D. Va. 1990); and *Hunt v. Transport Indem. Ins. Co.*, No. 90-00041, 1990 U.S. Dist. LEXIS

16555 (D. Haw. July 30, 1990) (Notice ¶ 36).  The Tenth Circuit recognized that whatever guidance

these cases could offer was severely undercut because they were not even the definitive authority as

to the statutory amendments they addressed, as other contemporaneous cases had reached the opposite

conclusion.[2]  *Pritchett* App., 404 F.3d at 1237.  The Tenth Circuit also noted that these cases were

"relevant only by analogy," since they dealt with a different statute.

     Although CAFA broadened federal jurisdiction, ***it only did so for cases that fall under its***

***purview***.  *Pritchett* App., 404 F.3d at 1237, n.6 ("While it is clear the Congress wished to expand

---

[2]  *Citing Keiffer v. Travelers Fire Ins. Co.*, 167 F. Supp. 398, 402 (D. Md. 1958 ) (holding that action is "commenced" on initial filing date in state court and declining to impose higher amount-in-controversy requirement imposed prior to removal) and *Rhinehart v. Cincinnati, Inc.*, 716 F. Supp. 7,8 (E.D. Mich. 1989) (same).  *See also Lomax v. Duchow*, 163 F. Supp. 873, 874 (D. Neb. 1958) (same).

federal jurisdiction, when that expansion is made effective is what is at issue in this case, and that is

an issue we approach cautiously."); *Pritchett* DC, 360 F. Supp. 2d at 1179 ("the general statement of

purpose [of broadening access to the federal courts] in Section 2 of the Act does not address the more

specific question of Congress' intent with regard to the effect of the act on existing cases.").

     The Tenth Circuit's decision in *Pritchett* was further bolstered by the Seventh Circuit in

*Knudsen*:

> [W]e agree with *Pritchett v. Office Depot, Inc*., 2005 U.S. App. LEXIS 5896 (10th Cir. Apr. 11, 2005), that § 9 of the new Act must be taken seriously . . . defendant in *Pritchett* contended that the notice of removal itself commenced a new case (the one in federal court). Rebuffing that effort to sidestep the legislative decision, *Pritchett* concluded that a civil action is "commenced" for purposes of § 9 when it is filed in state court and not when some later step occurs in its prosecution. ***Equating filing with commencement is the norm in civil practice.*** See Fed. R. Civ. P. 3.

*Knudsen*, 2005 U.S. App. LEXIS 10440, at *1-2 (emphasis added).

     These decisions were recently endorsed by another federal district court. *Sneddon v. Hotwire,*

*Inc.*, Nos. 05-0951, 05-0952, 05-0953, 2005 U.S. Dist. LEXIS 13257 (N.D. Cal. June 29, 2005). In

*Sneddon*, the initial complaints, later consolidated, were filed in state court on January 10 and 13, and

February 17, 2005. *Id.* at *2-3. The defendant removed all three cases under CAFA on March 7,

2005. *Id.* at *3. On remand, the court rejected the defendant's interpretation of "commenced" under

CAFA, stating: "So far as this Court is aware, all courts which have addressed this issue under CAFA

have held that the commencement of an action refers to the date the action is filed in state court, not

when the case is removed to federal court." *Sneddon*, 2005 U.S. Dist. LEXIS 13257 at *6-7 (citations

omitted). *Sneddon* further explained that "[s]tatutory definitions of 'commencement' support this

view." *Id.* (citing Fed. R. Civ. Proc. 3; Cal. Code Civ. Proc. §§ 350, 411.10).

Marsh's argument has also been rejected by federal district courts on at least six other occasions. *Hankins v. Pfizer, Inc.,* CV 05-1797 ABC (Rzx) (C.D. Cal. March 25, 2005) (Ex. A hereto, at 3 ) ("[r]emoving defendants cannot rely on diversity conferred by CAFA, which was not enacted at the time the state action was filed"); *Smith v. Pfizer, Inc.*, Case No. 05 cv-0112-MJR (S.D. Ill. March 24, 2005) (Ex. B hereto, at 9) ("[t]his Court rejects Pfizer's argument that 'commenced' means the date the case reached federal court (*i.e.*, the date a case was removed) rather than the date the complaint was filed"); *Lott v. Pfizer, Inc.*, Case No. 05-cv-0230-MJR (S.D. Ill. April 7, 2005) (Ex. C hereto, at 4) (same); *In re Expedia Hotel Taxes and Fees Litigation*, No. C05-0365C (W.D. Wash. April 15, 2005) (Ex. D hereto, at 2-3) (remand appropriate where "[t]he suits giving rise to this consolidated action were all filed [in state court] before CAFA's effective date."); *Bush v. Cheaptickets*, No. CV 05-2285 (C.D. Cal. May 9, 2005) (Ex. E hereto, at 2-4) (holding that because an action cannot commence at the time of removal because "it is already pending by that time"); *Morris v. Pfizer, Inc.,* No. 05-113-GPM (S.D. Ill. Apr. 21, 2005) (same) (Ex. F hereto, at 4-5)

Each of these decisions held that the term "commenced" in Section 9 of CAFA refers to the date the action was first filed in state court. As explained in *Sneddon*, "[t]his Court concludes the legislative history clearly supports an inference that CAFA does not apply to cases filed before February 18, 2005 . . . If the legislature intended that CAFA apply to cases filed before the enactment date, it would have said so, and would likely have enacted the retroactive House bill, H.R. 516, or some other statute." *Sneddon*, 2005 U.S. Dist. LEXIS 13257, at *7-8. (citations omitted).

Marsh is unable to distinguish these decisions. Marsh instead makes the bald assertion that *Pritchett* does not contradict its position, yet does not explain why this is so. (Notice ¶ 36, n.4). Marsh also cites to *Knudsen* for the proposition that *service* of a complaint after the effective date of

CAFA subjects that case to CAFA's provisions. *Id.* However, *Knudsen* says no such thing. The referenced language in *Knudsen* is merely a hypothetical discussion of the types of amendments to a complaint that could conceivably "commence a new piece of litigation," but does not include service of process among those examples. *Knudsen*, 2005 U.S. App. LEXIS 10440, at *4-5.

Marsh also asserts that "additional claims" alleged in the Amended Complaint warrant application of CAFA. (Notice ¶ 37). Marsh, however, does not identify what these "additional claims" are, likely because no additional claims were raised. Even if additional claims had been raised, under *Knudsen*, these claims would not recommence a new action as long as they "related back" to the original complaint.[3] *Knudsen*, 2005 U.S. App. LEXIS 10440, at *5.

A final reason to reject Marsh's interpretation of CAFA is the consequences. As the Tenth Circuit stated in *Pritchett*: ". . . Defendant's argument, if accepted, could have serious consequences for both the federal judiciary and . . . the state bench. Permitting the Act to apply to currently pending state suits would, in the words of the chairman of the Senate Judiciary Committee, 'be extraordinarily disruptive of many State court proceedings.'" *Pritchett* App., 404 F.3d at 1238 (citing 151 Cong. Rec. S1225 (daily ed. Feb. 10, 2005) (statement of Sen. Specter)). The Tenth Circuit went on to state: "The consequences of Defendant's argument are sufficiently dramatic that we are not eager to ascribe those motivations to Congress without a clearer expression than we find here." *Id.*

### 2.    This Case Was Commenced In State Court On February 17, 2005

Although Marsh admits that this action was filed in Massachusetts state court prior to the effective date of CAFA, it argues that the case was never "commenced" in state court for purposes

---

[3] Pursuant to Fed. R. Civ. P. 15(c), claims "relate back" to the date of the original pleading when, *inter alia*, "the claim or defense asserted in the amended complaint arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.

of CAFA because venue was improper in Essex County Superior Court, where the case as filed. (Notice ¶ 35). Defendants' interpretation of Massachusetts procedure is incorrect. First, it is well-settled that venue is not jurisdictional in nature and is waivable. *Markelson v. Director of Div. of Employment Sec.*, 383 Mass. 516, 518 (1981). In Massachusetts, if venue is found to be improper, the case is not treated as if it were never "commenced" in the first place, which is essentially what Marsh argues here. Instead, the action is transferred to a court where venue is proper and is treated as if it had been first filed in that court in the first place. M. G. L. c. 223, § 15 ("If an error in venue is discovered . . . the court may . . . order the action . . . to be removed to the proper county . . . and it shall thereupon be entered and prosecuted . . . ***as if it had been originally commenced therein, and all prior proceedings otherwise regularly taken shall be valid***") (emphasis added). In other words, the action is treated as if it were "commenced" as of the date it was filed in the initial court. This statute cannot be reconciled with Defendants' reading of Mass. R. Civ. P. 3.[4] *See also*, *Cormier v. Pezrow New Eng., Inc.*, 437 Mass. 302, 307 (2002). "[t]he remedy for improper venue is not necessarily dismissal of the action when venue may be properly found in another court of the Commonwealth." *See also Commonwealth v. Duteau*, 384 Mass. 321, 325 (1981) ("If some of these cases were mistakenly instituted in the wrong county, this problem of improper venue can be easily corrected.") (citing G. L. c. 215, §§ 8A, 15.)).

In fact, even where a case was filed in a state court lacking venue, the Supreme Court has ruled that the case is "commenced" for purposes of a federal statute of limitations when it was *initially* filed in the improper state court. *Burnett v. New York C. R. Co.*, 380 U.S. 424, 430-35

---

[4] Marsh offers only the Rule's Reporters' Note as support for its proposition. Even if Marsh were interpreting the note correctly, it is not binding on this, or any court. *Aldoupolis v. Commonwealth*, 386 Mass. 260, 269 (1982) ("The Reporters' Notes, not officially approved or reviewed by this court, are not binding on this court.").

(1965). If, under *Burnett*, a case is commenced for purposes of a federal statute of limitations, it must also be commenced for purposes of a federal jurisdictional statute such as CAFA.[5]

### B.    Marsh Has Not Established Diversity Jurisdiction

Because CAFA does not apply to this case, Marsh must establish that diversity jurisdiction exists under the pre-CAFA standard. In order to do so, Marsh must demonstrate ***both***: (1) that "the matter in controversy exceeds the sum or value of $75,000;" and (2) complete diversity of the parties. 28 U.S.C. § 1332(a). Because Marsh cannot establish either of these requirements, diversity jurisdiction will not lie and remand is mandated.

### 1.    The Requisite Amount In Controversy Is Not Met

In order to establish diversity jurisdiction in a class action, Marsh must prove that the claims of the *named plaintiff* exceed $75,000. *Exxon Mobil Corp. v. Allapattah Servs.*, Nos. 04-70, 04-79, 2005 U.S. LEXIS 5015, at *8 (June 23, 2005) (amount in controversy met where "at least one named plaintiff in the action satisfies the amount-in-controversy requirement"). Consequently, the claims of unnamed class members may not be used in computing the amount in controversy.

The Amended Complaint explicitly states that Plaintiff does not seek, nor would it accept, damages exceeding $74,999 (Amd. Compl. ¶¶ 47, 133, 142, 155, 163, 170), a fact which counsels against a finding of diversity jurisdiction. *Hiller v. DaimlerChrysler Corp.*, No. 02-10533-RWZ,

---

[5] Marsh's argument for removal is also internally inconsistent. If the case was never "commenced" in Essex County Superior Court, as Marsh claims, then Marsh's removal of the case to this court was improper. It is well-settled that the jurisdiction of a federal court in a case removed from state court is derivative, and is only proper if jurisdiction was proper in the state court. *Arizona v. Manypenny*, 451 U.S. 232, 242 n.17, 101 (1981) (In the area of general civil removals, it is well settled that if the state court lacks jurisdiction over the subject matter or the parties, the federal court acquires none upon removal, even though the federal court would have had jurisdiction if the suit had originated there."). Consequently, even if the Court agreed with Marsh's argument that the case was never "commenced" because it was filed in an improper state court, Marsh would then be unable to remove the case on that basis.

2004 U.S. Dist. LEXIS 4578, at *2-3 (D. Mass. March 23, 2004) (motion for remand granted where "[p]laintiffs have specifically disclaimed any damages greater than the amount-in-controversy requirement").  *See also St. Paul's Indem. Corp. v. Red Cab Co.,* 303 U.S. 283, 288-289, 292 (1938) (when plaintiff seeks less than jurisdictional amount, then the case cannot be removed as a matter of law); *Federated Mut. Ins. Co. v. McKinnon Motors*, 329 F.3d 805, 807 (11th Cir. 2003) (accepting as true the representation that litigant did not seek and would not accept damages in excess of $74,000).[6] Although Marsh protests this disclaimer and urges the Court to simply ignore it, Marsh cites no authority whatsoever holding the disclaimer is not effective.  (Notice ¶ 6).

Marsh, in fact, does not even argue that the value of Plaintiff's individual claim exceeds $75,000.  Rather, Marsh argues that because the Complaint includes a claim for unjust enrichment seeking disgorgement, the claims of all class members should be aggregated for the amount in controversy analysis.  (Notice ¶¶ 23-25).  This assertion cuts against the great weight of authority. The Supreme Court recently re-confirmed the rule against aggregating the claims of class members for purposes of meeting the amount in controversy requirement.  *Exxon Mobil Corp.*, 2005 U.S. LEXIS 5015 at *3.  ([I]n . . . class actions, we have unyieldingly adhered to the nonaggregation rule . . .") (citing *Clark v. Paul Gray, Inc.*, 306 U.S. 583, 589 (1939).  The rule in the First Circuit is no different.  *Gattegno v. Sprint Corp.*, 297 F. Supp. 2d 372, 377 (D. Mass. 2003, Keeton, S.D.J.) (stating, in a case seeking disgorgement on behalf of a class: "As a general rule, the amount-in-controversy for a federal diversity jurisdiction may not be met by aggregating the claims

---

[6] *See also Cowan v. Outpatient Ptnrs., Inc.*, No. 6:04-cv-28, 2004 U.S. Dist. LEXIS 6876, at *17 (M.D. Fla. April 1, 2004) ("[w]here a plaintiff has alleged that her damages are less than the jurisdictional amount, the "defendant must prove to a legal certainty that plaintiff's claim must exceed" the jurisdictional threshold in order to avoid remand") (quoting *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 n.9 (11th Cir. 1994)); *Woodward v. Newcourt Commercial Finance Corp.*, 60 F. Supp. 2d 530, 533 (D.S.C. 1999) ("a plaintiff may, prior to removal, limit the amount of damages so as to defeat diversity jurisdiction").

of the members of a class.") (citing *Spielman v. Genzyme Corp.*, 251 F.3d 1, 7 (1st Cir. 2001)).

The type of aggregation sought here by Marsh is only permissible in the unusual case where class members have a "common and undivided interest" in the claim. *Ciardi v. F. Hoffmann-La Roche, Ltd.*, No. 99-11936, 2000 U.S. Dist. LEXIS 1483, at *5, n.1 (D. Mass. 2000). "Such might be the case where a group of plaintiffs seek to enforce a common right." *Id.* (citing *Dierks v. Thompson*, 414 F.2d 453, 456 (1st Cir. 1969)); *Morrison v. Allstate Indem. Co.*, 228 F. 3d 1255, 1262 (11th Cir. 2000) ("the presence of a 'common and undivided interest' is rather uncommon, existing only when the defendant owes an obligation to the group of plaintiffs as a group and not to the individuals severally."). Obviously, most class actions seek the creation of some type of common fund, but that does not necessarily translate into a "common and undivided interest." Common funds are "created to facilitate the litigation process in virtually every class action, and ha[ve] nothing necessarily to do with whether the plaintiffs shared a pre-existing (prelitigation) interest in the subject of the litigation." *Gilman v. BHC Sec.*, 104 F.3d 1418,1427-1428 (2d Cir. 1997).

The only authority cited by Marsh on this point applies this "common and undivided interest" exception. *Berman v. Narragansett Racing Ass'n*, 414 F.2d 311 (1ˢᵗ Cir. 1969). In *Berman*, no single plaintiff claimed an individual entitlement to any portion of the disputed prize money, because the agreements at issue "created no specific rights in any individual winner," but instead gave the owners "an integrated right against the tracks." *Id.* at 315 n.10. In *Berman*, the First Circuit explicitly distinguished the facts at hand from a traditional case where each plaintiff in a joint action sues on his own rights. *Id.* at 315-16.

In *Gattegno*, the Defendant removed a consumer class action from Massachusetts state court, based, in part, on an argument that the plaintiff sought not only certain overcharges, but also "all

revenues earned on those individual overcharges." *Id.* at 378.  The defendant, citing *Berman*, argued

that the requested remedy of disgorgement made aggregation of claims appropriate.  *Id.*  In rejecting

this argument and granting the motion to remand, Judge Keeton distinguished *Berman*:

> Defendants misstate the law. The focus should not be on the type of relief requested, but rather on the nature and value of the right asserted. ***Thus, the issue turns not on whether plaintiffs seek a "common fund," but on whether plaintiffs bring the case based in individual claims or in an indivisible, common claim***.  In fact, the case that defendants cite specifically notes that "no contractual rights [were] created between the defendants and individual pursewinners [who had brought the suit], and plaintiffs make no specific claims for individual payment." *Berman*, 414 F.2d at 314 . . . . I therefore conclude that the claims of the members of the proposed class may not be aggregated to meet the required amount-in-controversy.

*Gattegno*, 297 F. Supp. 2d at 377.  In the case at bar, Plaintiff does not seek disgorgement of any

specific, identifiable existing fund, but rather the creation of a common fund as a result of the class

members' existing claims.  Therefore, the narrow exception allowing aggregation of class members'

claims does not apply here.[7]

It is obvious that Marsh has not proven that Plaintiff's claims exceed the jurisdictional

amount.  Consequently, given the fact that CAFA does not apply to this case, this matter was

improperly removed and must be remanded to the Essex County Superior Court on that basis alone.

### 2.    The Parties Are Not Completely Diverse

Even if Marsh had established the amount-in-controversy, it would still need to demonstrate

that the parties are completely diverse.  However, Marsh tries to circumvent this requirement by

arguing that the Massachusetts resident defendants, the Liberty Defendants[8], were "fraudulently

---

[7]  Defendants' citation to *Durant v. Servicemaster Co.*, 147 F. Supp. 2d 744 (E.D. Mich. 2001) is unavailing, as that case is inconsistent with First Circuit precedent and contrary to the greater weight of authority.

[8]  These defendants are identified as "Liberty Mutual Group and its subsidiaries" (Notice ¶ 5).

joined." (Notice ¶ 5). A defendant asserting fraudulent joinder must "prove by clear and convincing evidence either that there has been an outright fraud committed in the plaintiff's pleadings or that there is no reasonable basis in law and fact for the plaintiff's claim against the putative fraudulently joined defendant." *In re Mass. Diet Drug Litig.*, 338 F. Supp. 2d 198, 202 (D. Mass. 2004). "[T]he linchpin of the fraudulent joinder analysis is whether the joinder of the non-diverse party has a reasonable basis in law and fact." *Id.* (quoting *Mills v. Allegiance Healthcare Corp.*, 178 F. Supp.2d 1, 4-6 (D. Mass. 2001)). "So long as the plaintiffs have an objectively valid basis for joining [the defendant] in the complaint, their subjective motivations are largely irrelevant." *Id. See also Ponce Super Ctr., Inc. v. Glenwood Holdings, Inc.*, 359 F. Supp. 2d 27, 30 (D.P.R. 2005) ("In other words, the defendant must establish that there is ***no reasonable possibility*** that the non-diverse defendant could be held liable under the governing law, and the burden is a heavy one.") (emphasis added).[9]

Marsh claims that joinder of the Liberty Defendants was fraudulent because Plaintiff mentioned them only "once" in the Amended Complaint. (Notice ¶ 18). However, this paragraph provides *detailed* information regarding the Liberty Defendants' conduct and describes their connection to the larger conspiracy alleged.[10] It alleges that the Liberty Defendants have been active participants in an industry-wide conspiracy to raise the price of insurance, and supports these allegations with references to other pending lawsuits and government investigations targeting the Liberty Defendants. (Amd. Compl. ¶ 22). More specifically, it alleges that the Liberty Defendants

---

[9] Moreover, the court must "evaluate the parties' factual allegations in the light most favorable to the plaintiff, and the court must resolve all uncertainties about state substantive law in favor of the plaintiff." *Clay v. Brown & Williamson Tobacco Corp.*, 77 F. Supp. 2d 1220, 1222 (M.D. Ala. 1999). "If there is a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder is proper and remand the case to the state court." *Id.* (emphasis added).

[10] In addition, since the Liberty Defendants were included in the definition of the "Insurer Defendants," every allegation directed toward this group is by definition directed at the Liberty Defendants.

entered into illegal and unethical Contingent Commission Agreements and/or participated in bid-rigging with various insurance brokers. *Id.* It further alleges that Liberty was named in an internal communication at Willis (one of the Broker Defendants) as one of the insurers receiving an unfair competitive advantage due to its Contingent Commission Agreement. *Id.* Liberty also entered into a Contingent Commission Agreement with defendant AON Corporation, the world's largest reinsurance broker, which has been sued by, among others, the New York Attorney General for its participation in the contingent commission scandal. *Id.* Liberty has also been subpoenaed by the Connecticut and New York Attorneys General in their investigations of contingent commission practices in the insurance industry, and the Massachusetts Attorney General has also begun an investigation into Liberty's Contingent Commission Agreements. *Id.*

Marsh claims that joinder of the Liberty Defendants was improper because Plaintiff "did not purchase insurance from the Liberty Defendants and has no relationship – contractual or otherwise – with any of the Liberty Defendants." (Notice ¶ 19). This argument misconstrues the theory of Plaintiff's case. The Amended Complaint centers on allegations that Plaintiff and class members purchased Insurance Products issued by the Insurer Defendants (a term explicitly defined to include the Liberty Defendants) at prices that were inflated due to a wide-ranging conspiracy among the Insurer Defendants and the Broker Defendants, which "corrupted" the "marketplace for insurance." (Amd. Compl. ¶¶ 10, 55, 68-69, 103-106, 111-114). These practices "affected practically every line of insurance business" including reinsurance." *Id.* ¶ 69. The Complaint further alleged that:

> Any single Broker Defendant could not continue to utilize these arrangements unless it knew and had the understanding that its competing brokers were likewise using them and that insurers were acquiescing in and cooperating with their use. Individual insurers likewise agreed to these arrangements with the knowledge and understanding that other competing insurers agreed to them as well.

*Id.* ¶ 65. The Amended Complaint also contains numerous allegations further describing the conspiracy that ties the defendants together. *Id.* ¶¶ 3, 6, 8-10 , 53-55, 62-64, 68.

Allegations such as these are more than sufficient to state a claim against the Liberty Defendants. In particular, as to Plaintiffs' unjust enrichment claim, Marsh argues the claim must fail because there is "no relationship" between Plaintiff and the Liberty Defendants, citing *Holmes Product Corp. v. Dana Lighting, Inc.*, 958 F. Supp. 27, 36 (D. Mass. 1997). (Notice ¶ 20(B)). However, nothing in *Holmes* says that a plaintiff claiming unjust enrichment must have a direct relationship with the defendant. In fact, courts regularly recognize claims for unjust enrichment where the plaintiff did not deal directly with the defendant. *Interstate Litho Corp. v. Brown*, 255 F.3d 19, 31 (1st Cir. 2001) ("The right to recover in an action for money had and received does not depend upon privity of contract, but on the obligation to restore that which the law implies should be returned, where one is unjustly enriched at another's expense.") (quoting *Flower v. Suburban Land Co.*, 123 N.E.2d 218, 221 (Mass. 1954)); *In Re: Terazosin Hydrochloride Antitrust Litigation*, 220 F.R.D. 672, 697-98 (S.D. Fla. 2004) (certifying class of consumer indirect purchasers claiming defendant drug manufacturer was unjustly enriched by illegally inflated prices for its product); *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 671 (E.D. Mich. 2000) (holding that "whether or not the benefit is directly conferred on the defendant is not the critical inquiry; rather, the plaintiff must show that his detriment and the defendant's benefit are related and flow from the challenged conduct"). Unjust enrichment claims are regularly recognized where, as here, a plaintiff alleges that a conspiracy among the defendants has resulted in artificially inflated prices paid by the purchasers of defendants' products. *See, e.g., Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d at 671; *Terazosin Hydrochloride Antitrust Litigation*, 220 F.R.D. at 697-98.

Under Massachusetts law, the joinder of the Liberty Defendants is appropriate under the "juridical links" doctrine. *Weld v. Glaxo Wellcome, Inc.*, 434 Mass. 81, 89-90 (2001). As recognized by the Supreme Judicial Court of Massachusetts in *Weld*, "[t]here are several types of connective links that courts have determined are sufficient to permit a plaintiff . . . to represent a class against individual multiple defendants (as distinguished from a defendant class), ***where not all of the defendants had direct contact with the named plaintiff***." *Id.* at 89-90 (2001) (emphasis added).[11] The juridical links doctrine is a procedural device that "permits collective adjudication of related claims." *Weld,* 434 Mass. at 90 (citing *Kabatchnick v. Hanover-Elm Bldg. Corp.*, 331 Mass. 366, 369, 119 N.E.2d 169 (1954)). The analysis is analogous, but not identical to that required under Mass. R. Civ. P. 20, governing permissive joinder. *Id.*

Even if the named plaintiff cannot state a claim directly against a defendant, joinder may still be proper under this doctrine. *Id.*, n.10. ("That the letter Kelley received was sponsored by Merck and not by [the other defendants] may be a defense these defendants can assert . . . but in the circumstances of this case, that potential defense does not make Kelley's claims atypical.").[12]

In *Weld*, several drug manufacturers entered into a program where misleading letters promoting certain drugs were sent to CVS pharmacy customers. *Id.* at 83-84. Each manufacturer

---

[11] Citing *Hewitt vs. AAA Ins. Co.,*  Nos. Civ. A. 98-3711, 99-0596, 1999 U.S. Dist. LEXIS 6047 (E.D.La. 1999) (insurance companies engaged in pattern of setting allegedly discriminatory insurance rates); *Monaco v. Stone*, 187 F.R.D. 50, 53-54 (E.D.N.Y. 1999) (judges responsible for enforcing challenged statute); *Emig v. American Tobacco Co.*, 184 F.R.D. 379, 386-387 (D. Kan. 1998) (allegation of conspiracy among tobacco companies); *Weiss vs. Winner's Circle of Chicago, Inc.*, No. 91C 2780, 1995 U.S. Dist. LEXIS 18713, (N.D. Ill. 1995) (assignees of contracts originally made between single defendant and plaintiff class).

[12] The juridical links doctrine is not limited to Massachusetts, in fact, but rather is widely accepted. *E.g. Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423-24 (6th Cir. 1998) (holding that, in the presence of concerted action, it is not necessary that each named plaintiff have individual standing to sue each named defendant, and that a plaintiff who has standing to sue at least one of the named defendants also "has standing to challenge a practice even if the injury is of a sort shared by a large class of possible litigants.")

sponsored different letters. *Id. Weld* held that the joinder of all of these defendants in one suit was appropriate even though the letter sent to the named plaintiff was sponsored by only one of the manufacturer defendants, and plaintiff had no contact with the other manufacturer defendants. *Id.* at 90-91.  Consequently, it does not matter from which Insurer Defendant Plaintiff purchased its policies.  Joinder here is appropriate because Plaintiff's claims are typical of the claims that the other class members have against the other Insurer Defendants. *Id.* at 90, n.10.

The Liberty Defendants are also properly joined as co-conspirators.  It is black letter law that each conspirator is liable for the acts of its co-conspirators. *Salinas v. United States*, 522 U.S. 52, 64 (1997) ("[S]o long as they share a common purpose, conspirators are liable for the acts of their co-conspirators.").  Consequently, where a plaintiff alleges a conspiracy to inflate prices, he or she may bring a claim against all of the defendants involved as long as he or she purchased the price-inflated product(s) from at least one of the conspiring defendants. *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 243 (E.D.N.Y. 1998) ("Where the plaintiffs have alleged a single conspiracy to artificially inflate prices, a representative plaintiff may satisfy the adequacy requirement without having purchased products from all of the defendants . . .") (quoting *In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374, 381 (S.D.N.Y. 1996)); *Williams Corp. v. Kaiser Sand & Gravel Corp.*, No. C-91-4028, 1992 U.S. Dist. LEXIS 16947, at *12-13 (N.D. Cal. Oct. 9, 1992) (holding, in an action alleging a price-fixing conspiracy by several defendants, "there is no requirement that a class representative must have purchased from all defendants joined in an action . . .") (citing 1 Newberg on Class Actions, §§ 3.27 at 211; 3.18 at 183 (2d ed. 1985)); *In re South Cent. States Bakery Products Antitrust Litigation*, 86 F.R.D. 407, 418 (M.D. La. 1980) ("In an antitrust price fixing case in which the class representative has alleged a broad conspiracy, courts have not required . . . that the

representative have purchased from all of the defendants . . .).[13]

Whether under the juridical links doctrine or under a conspiracy theory, it is clear that, at the very least, Marsh has not shown by clear and convincing evidence that "there is **no reasonable possibility** that the non-diverse defendant[s] could be held liable under the governing law." *Ponce Super Ctr.*, 359 F. Supp. 2d at 30.   Therefore, joinder was not fraudulent, the parties are not completely diverse, and remand is mandated.

## C.    Substitution of The Class Representative Does Not Subject This Case To CAFA

As noted above, Plaintiff Bensley Construction, Inc. has recently informed the undersigned counsel that, due to an upcoming change in ownership, it has determined that it is no longer able to serve as a class representative in this matter.  Consequently, counsel intends to file, no later than July 25, 2005, a motion to substitute Rehab Seating Systems, Inc., a Massachusetts corporation and a member of the class alleged in the Amended Complaint, as representative plaintiff.

The substitution of a new representative plaintiff should not alter this Court's analysis on the motion to remand because substitution of a new representative plaintiff does not "commence" a new case.  As stated above, a case is "commenced" when it is first filed.  In *Knudson*, the Seventh Circuit recognized that certain changes to a case could, at least in theory, "commence" a new case and potentially subject it to CAFA.  *Knudsen*, 2005 U.S. App. LEXIS 10440, at *4.  Such changes included adding a new defendant or adding new "claims."  *Id.* at *4-5.  As explained in *Knudson*, however, amendments to a complaint that "relate back" under a Fed. R. Civ. P. 15 analysis do not

---

[13] Marsh also asserts that Plaintiff can prove no claim for Aiding and Abetting Breach of Fiduciary Duty against the Liberty Defendants, because Plaintiff did not have a "relationship" with the Liberty Defendants, citing *Spinner v. Nutt*, 631 N.E. 2d 542 (Mass. 1994).  (Notice ¶ 20(C)).  However, *Spinner* identifies no such requirement.  The Court merely held that the defendants could not be held liable under this theory because the Plaintiffs had not shown that the defendants "actively participated" in the breach.  *Id.*

commence a new matter, and would therefore not bring the case within CAFA's reach.

Rule 15(c)(2) provides that an amended pleading relates back to the date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . ." Thus, it is well-settled that in the context of a class action, the substitution of a representative plaintiff with another member of the class who alleges essentially the same claims "relates back" to the filing of the original complaint, and therefore does not commence a new case. *E.g. Griffith v. Bowen*, 678 F. Supp. 942, 947 (D. Mass. 1988) (Young, J.) (holding that claims of substituted plaintiff related back to original filing); *Engers v. AT&T Corp.*, No. 98-3660, 2000 U.S. Dist. LEXIS 10937, at *11-12 (D.N.J., 2000) (claims of newly-added class representative related back where new plaintiff was a member of the class and raised the same claims). The same rule applies when determining whether a matter has become subject to new legislation due to a substituted plaintiff. *Clark v. California*, No. C96-1486, 1998 U.S. Dist. LEXIS 6770, at *7 (N.D. Cal. May 11, 1998) (where claims of the newly-added class representatives met the relation back test of Fed. R. Civ. P. 15(c)(2) case would not be subjected to the new legislation). *Id.* at *8.

Consequently, because Rehab Seating Systems, Inc. is a member of the class and will allege the same claims, its claims relate back to the February 17, 2005 filing of the complaint in this case, and this matter remains outside the scope of CAFA.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiff's Motion to Remand should be GRANTED.

DATED: July 21, 2005

Respectfully submitted,

**GILMAN AND PASTOR, LLP**

By:     /s/ Douglas M. Brooks, Esq.
        Douglas M. Brooks, BBO #058850
        Kenneth G. Gilman, BBO #192760
        Douglas J. Hoffman, BBO #640472
        60 State St., 37th Floor
        Boston, MA 02109
        Tel: (617) 742-9700
        Fax: (617) 742-9701

Priority ✓
Send ✓
Enter ✓
Closed ✓
JS-5/JS-6 ✓
JS-2/JS-3 ——
Scan Only ——

ENTERED
CLERK, U.S. DISTRICT COURT

MAR 29 2005

CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY



FILED
CLERK, U.S. DISTRICT COURT

MAR 2 5 2005

CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

|  |  |
|---|---|
| MONICA HANKINS,<br><br>    Plaintiff<br><br>  v.<br><br>PFIZER, INC., et al.,<br><br>    Defendants. | CV 05-1797 ABC (RZx)<br><br>ORDER REMANDING CASE TO STATE COURT<br><br>BC 327641 |

On January 24, 2005, Plaintiff filed a complaint in Los Angeles County Superior Court against Pfizer, Inc., Pharmacia & Upjohn, Inc. (a/k/a Pharamacia & Upjohn Co.), and McKesson Corp.  Plaintiff's complaint alleges a single cause of action, namely, state law unfair competition.  On March 11, 2005, Pfizer, Inc., Pharmacia & Upjohn, Inc. (a/k/a Pharamacia & Upjohn Co.) (together, "Removing Defendants") removed the action to this Court on the basis of diversity jurisdiction.[1]

---

[1] Removing Defendants do not assert that the Court has federal question jurisdiction, as Plaintiff's complaint involves a single state law claim.

1    Federal courts have jurisdiction under 28 U.S.C. § 1332(a) where

2   an action is between citizens of different states and the amount in

3   controversy exceeds $75,000.  The removal statutes are to be strictly

4   construed; there is an inherent "'strong presumption' against

5   removaljurisdiction."  Gaus v. Miles, 980 F.2d 564, 566 (9th Cir.

6   1992)(quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S.

7   283, 288-89 (1938)).  On February 18, 2005, the Class Action Fairness

8   Act ("CAFA") was passed creating federal diversity jurisdiction where

9   "the matter in controversy exceeds the sum or value of $5,000,000,

10  exclusive of interests and costs, and is a class action in which . .

11  .(A) any member of a class of plaintiffs is a citizen of a State

12  different from any defendant . . . ."  28 U.S.C. § 1332(d)(2).

13    Although Plaintiff initiated this action on January 24, 2005,

14  well before the enactment of CAFA on February 18, 2005, Removing

15  Defendants assert that CAFA governs.  In support of this argument,

16  Removing Defendants cite Hunt v. Transport Indemnity Ins., Co., 1990

17  U.S. Dist. LEXIS 16555 (D. Haw. July 30, 1990) as authority that the

18  date of commencement of an action is determined by the date an action

19  is removed to federal court.  See Notice of Removal ¶ 2.

20    Hunt involved the 1988 amendment to 28 U.S.C. § 1332, which

21  raised the jurisdictional amount in controversy required for diversity

22  from $10,000 to $50,000.  The Hunt court remanded a state action

23  seeking an amount in controversy more than $10,000, but less than

24  $50,000.  The state action was commenced before, but removed after,

25  the effective date of the jurisdictional increase.  In remanding, the

26  Hunt court construed the date of removal as controlling because of the

27  Ninth Circuit's clear preference for construction of removal statutes

28  against removal.

1    <u>Hunt</u> is not controlling authority.  In any event, if this Court

2  were to adopt similar reasoning, this Court would construe CAFA

3  against removal such that the date of filing in state court controls,

4  given the strong presumption against removal.  <u>See</u> <u>Gaus</u>, 980 F.2d at

5  566 (quoting <u>St. Paul Mercury Indem. Co.</u>, 303 U.S. at 288-89).[2]

6    Because the Removing Defendants cannot rely on diversity

7  conferred by CAFA, which was not enacted at the time the state action

8  was filed, Removing Defendants must demonstrate diversity jurisdiction

9  according to 28 U.S.C. § 1332(a).  However, Removing Defendants cannot

10  show that the amount in controversy exceeds $75,000, as Plaintiff

11  specifically alleges that the amount in controversy is less than

12  $75,000.  <u>See</u> Complaint at 12-13.

13    Therefore, on the Court's own motion, on the basis of the lack of

14  either federal question or diversity jurisdiction, the case is

15  REMANDED to state court.[3]

16

17    **SO ORDERED.**

18  **DATED:**  _March 25, 2005_

19

20                          **AUDREY B. COLLINS**

21                  **UNITED STATES DISTRICT JUDGE**

22  _____

23    [2]   The Court notes that CAFA specifically provides that the
    citizenship of class members shall be determined as of the date of

24  filing of the complaint.  <u>See</u> 28 U.S.C. 1332(d)(7).

25    [3]   The Notice of Removal contained several procedural defects,
    including the failure of all defendants to join in the removal and

26  Removing Defendants' failure to establish that the case was removed
    thirty (30) days from when the <u>first</u> defendant was served.  However,

27  given that the Court bases its remand on the lack of jurisdiction,
    these procedural defects are moot.

28

                            3

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

MARY SMITH, individually and )
on behalf of similarly situated individuals, )
                     )
           **Plaintiffs,** )
                     )
vs.                      )     **Case No. 05-cv-0112-MJR**
                     )
PFIZER, INC.,            )
                     )
           **Defendant.** )

## MEMORANDUM and ORDER

**REAGAN, District Judge**:

        In the Circuit Court of Madison County, Illinois, Mary Smith filed a putative class action against Pfizer, Inc., manufacturer of a prescription pain relief medication "Bextra." Pfizer timely removed the case on February 18, 2005, invoking this Court's subject matter jurisdiction under the federal diversity statute, **28 U.S.C. § 1332**. Ten days later, Judge Herndon recused, and the case randomly was reassigned to the undersigned District Judge.

        Before the Court is Plaintiff Smith's fully-briefed remand motion. For the reasons described below, the Court finds that it lacks subject matter jurisdiction and grants the motion.

        Smith's state court complaint, based on an Illinois consumer fraud statute, alleges that Pfizer negligently marketed Bextra, despite the fact Pfizer knew of dangerous side effects and symptoms of the drug.

        Of significance is what Smith's complaint does *not* seek. She does not sue for any personal injury she or others may have sustained as a result of ingesting Bextra. Nor does she pray for injunctive relief. Rather, she seeks compensatory damages to cover the costs of medical monitoring and testing which would facilitate early detection of any injuries.

Specifically, the complaint asks for damages "sufficient to cover the costs of periodic medical examinations which are reasonably necessary to detect and enable early treatment of injuries and/or diseases caused by Bextra" (Doc. 2, p. 6).  As explained further below, this aspect of the complaint plays a key role in determining the amount in controversy.

**28 U.S.C. § 1332** confers original jurisdiction over suits between citizens of different states if (a) complete diversity exists between the parties, and (b) the amount in controversy exceeds $75,000, excluding interest and costs.  The party invoking federal jurisdiction bears the burden of demonstrating that all jurisdictional requirements have been satisfied.  *Chase v. Shop 'N Save Warehouse Foods, Inc.*, **110 F.3d 424, 427 (7th Cir. 1997).**

Here, complete diversity exists between the parties.  The question is whether Pfizer has shown that the amount in controversy exceeds $75,000, excluding interest and costs.

For a defendant to successfully remove a class action based on diversity, at least one of the named plaintiffs must have a claim that surpasses the $75,000 jurisdictional bar.  *In re Brand Name Prescription Drugs Antitrust Litigation*, **123 F.3d 599, 607 (7th Cir. 1997),** *cert. denied,* **522 U.S. 1153 (1998);** *Garbie v. DaimlerChrysler Corp.*, **211 F.3d 407, 409 (7th Cir. 2000).**  If one named plaintiff meets the jurisdictional minimum, the other named plaintiffs and class members can "piggyback" on that plaintiff's claim, via supplemental jurisdiction under **28 U.S.C. § 1367**.  *Brand Name*, **123 F.3d at 607.**

Pfizer's removal notice alleges: "it is Pfizer's good faith belief" that the amount in controversy exceeds $75,000 (Doc. 1, p. 2).  Plainly, that allegation does not meet Pfizer's burden of proof as to the amount in controversy.  *See, e.g., Chase*, **110 F.3d at 427 (removing defendant must support allegations of diversity jurisdiction with "competent proof");** *America's Best*

*Inns, Inc. v. Best Inns of Abilene, L.P.*, **980 F.2d 1072, 1074 (7th Cir. 1992)(allegations based upon information and belief are insufficient to support diversity jurisdiction).**

Pfizer does offer proof to support its contention that the amount in controversy exceeds $75,000. With the removal notice, Pfizer submitted the declaration of Dennis R. Connolly, who has experience in tort-related medical monitoring programs. Connolly suggests that the medical monitoring requested by Smith in this case actually will be much more extensive than Smith anticipates and, despite the fact the class is defined to include only consumers who purchased Bextra in Illinois, the consumers to be tested – and the doctors doing the testing – would be located "throughout the country" (Doc. 1, Exh. C, p. 2).

Furthermore, Connolly predicts that the monitoring will require the establishment of a claims-handling facility. According to Connolly, the cost of "siting" that facility will include expenditures to rent space, store records, manage operations, install hardware and communication lines, purchase furnishings, staff the operations center, train the staffers, and compile and analyze the results of all medical monitoring (*Id.*, p. 3). Relying on the Connolly declaration, Pfizer maintains that the cost to set up this facility and provide medical monitoring for "hundreds of thousands" of class members easily exceeds $75,000, justifying the exercise of jurisdiction in this case.

The Court disagrees. This Circuit does recognize that, in determining the amount in controversy, the Court may consider the cost to defendant of enforcing the requested relief, as well as the value to plaintiff of obtaining that relief. *McCarty v. Amoco Pipeline Co.*, **595 F.2d 389, 395 (7th Cir. 1989)(adopting "either viewpoint" rule under which the Court may consider the "pecuniary result to either party which the judgment would directly produce").**

But it is far from clear that the either viewpoint rule applies in a case, such as this, in which the plaintiff requests no injunctive relief and instead seeks only compensatory damages. For instance, in ***Uhl v. Thoroughbred Technology and Telecommunications, Inc*., 309 F.3d 978, 983-84 (7th Cir. 2002)**, the United States Court of Appeals for the Seventh Circuit sharply distinguished cases in which only money damages were sought (such as Smith's case against Pfizer) from cases in which injunctive relief was sought.

The Court emphasized:

> In a case that seeks only money damages, the amount the defendant will lose is more or less the same. But in a case like this one, for injunctive relief, there may be an asymmetry. The question has thus arisen whether it is proper in determining amount in controversy to look in the alternative to the cost the defendant will incur in complying with the injunction the plaintiff seeks. In this circuit, the answer to the latter question has been yes: it is established that the jurisdictional amount should be assessed looking at either the benefit to the plaintiff or the cost to the defendant of the requested relief – the so-called "either viewpoint" rule. *See, e.g., In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 609 (7th Cir.1997); *McCarty v. Amoco Pipeline Co.*, 595 F.2d 389, 391- 95 (7th Cir.1979). Those cases specifically establish that the cost to a defendant of complying with an injunction sought by the plaintiff may properly be considered in determining the amount in controversy

***Uhl*** indicates that the either viewpoint assessment should be used only in cases in which the complaint includes a request for injunctive relief. ***See also Gould v. Artisoft, Inc*., 1 F.3d 544, 548 n.4 (7th Cir. 1993)(applying either viewpoint rule to case in which the pecuniary harm to the defendant from the injunctive relief requested by the plaintiff exceeded the amount in controversy).** The instant case contains no such request.[1]

---

[1] *See also* this Court's 10-20-2003 Order in *Flynn, et al. v. General Motors Corp., et al.*, Case No. 03-cv-0486-MJR, Doc. 34, p. 4 ("Defendants cite no cases extending the 'either viewpoint' rule to complaints seeking only monetary relief.").

Additionally, even if the either viewpoint rule *does* apply (if the Court accepts Pfizer's argument that Smith's prayer for compensatory damages is really a request for injunctive relief in disguise), the Court is not persuaded that the entire cost envisioned by Pfizer is chargeable to the single named plaintiff (Smith) from whose standpoint the Court evaluates the amount in controversy.  As the Seventh Circuit explained in **Brand Name, 123 F.3d at 609-10**:

> Whatever the form of relief sought, each plaintiff's claim must be held separate from each other plaintiff's claim from both the plaintiff's and the defendant's standpoint.  The defendant in such a case is deemed to face multiple claims for injunctive relief, each of which must be separately evaluated.[2]

***Accord Del Vecchio v. Conseco, Inc., 230 F.3d 974, 977 -78 (7th Cir. 2000)(Even under the either viewpoint rule, each plaintiff's claim for relief must be separately evaluated.  "That means, for Del Vecchio, that the amount in controversy from the defendants' point of view is the amount they risk paying him, not the amount they might have to pay the entire class.").***

The Court *does* find appeal in Pfizer's argument as to the effect of Smith's purported disclaimer of damages, but that does not support this Court's exercise of diversity jurisdiction.

Plaintiffs' counsel mistakenly believes that remand is warranted based solely on the allegations of the complaint and an accompanying affidavit of counsel.  The complaint states:

> Plaintiff stipulates that she will not seek and will neither demand nor accept on behalf of any Class Member any recovery in excess of $75,000 exclusive of interest and costs.

Doc. 2, p. 2.

---

[2]  Nor does this case fit into the narrow exceptions to the anti-aggregation rule recognized in ***Snyder v. Harris*, 394 U.S. 332 (1969)** and its progeny – the "common fund exception" which covers situations in which there is a single *res* at issue (like an estate), and the recovery is a "unitary whole."  ***See Del Vecchio*, 230 F.3d at 977-78.**

Simultaneously filed in state court with the complaint is an affidavit of Plaintiffs' counsel that "the total damages sought by the Plaintiff in this cause of action exceeds Fifty Thousand Dollars ($50,000), but is less than Seventy-Five Thousand Dollars ($75,000) per Plaintiff or class member [sic]."

This "stipulation" in Smith's complaint does not prevent removal. Allegations that a plaintiff seeks no more than $75,000 or will not accept damages over $75,000 do not, standing alone, preclude removal. Such allegations properly are *considered* by the Court (and have been considered by this Court in prior cases) but are not determinative of the amount in controversy.

In *American Bankers Life Assur. Co. of Florida v. Evans*, 319 F.3d 907, 908 (7th Cir. 2000), the Seventh Circuit (a) affirmed the determination by Judge William D. Stiehl of this Court that subject matter jurisdiction did not lie and (b) found insufficient an allegation which stated that the damages were "in no event to exceed $75,000."

> The district court properly ignored this detail – **it was neither a limit on recovery**, *see* 735 ILCS 5/2-604; *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 552 (7th Cir.2002) ... **nor a demand for $75,000**, *see De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir.1995)--and looked instead to the claim's actual value, *see In re Brand Name Prescription Drugs Antitrust Litigation*, 248 F.3d 668, 671 (7th Cir.2001),

*American Bankers*, **319 F.3d at 908 (emphasis added).**

So, the language of the complaint, by itself, does not defeat removal here. Next, the Court examines to the affidavit filed with Plaintiffs' state court complaint in compliance with ILLINOIS SUPREME COURT RULE 222 **("Any civil action seeking money damages shall have attached to the initial pleading the party's affidavit that the total of money damages sought does or does not exceed $50,000.")**.

The law of this Circuit clearly holds:  "Litigants who want to prevent removal must file a binding stipulation or affidavit with their complaints." ***Chase*, 110 F.3d at 430, *citing In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992).  *See also* CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE, Jurisdiction 3d § 3725 at 87 (a plaintiff's waiver of over $75,000 "must be truly binding on the plaintiff in state court before it will prevent removal").**  The question is whether attorney Armstrong's Rule 222 affidavit (filed with Smith's state court complaint) is *binding* as to Smith's damages.

No Seventh Circuit case located by the undersigned Judge or cited by counsel squarely delineates what constitutes a legally binding stipulation/affidavit under ***Shell Oil***.  A number of federal district courts have held that, to prevent removal, a pre-removal affidavit or stipulation must be signed by the plaintiff, not just plaintiff's counsel.  ***See, e.g., Asbury-Castro v. GlaxoSmithKline, Inc.*, 352 F. Supp. 2d 729, 733 (N.D. W.Va. 2005)("to be operative, a disclaimer must be 'a formal, truly binding, pre-removal stipulation signed by counsel and his client explicitly limiting recovery'"); *Virden v. Altria Group, Inc*., 304 F. Supp. 2d 832, 847 (N.D. W.Va. 2004) ("Therefore, absent a binding stipulation signed by Virden that he will neither seek nor accept damages in excess of $75,000, the Court must independently assess whether the defendants have proven by a preponderance of the evidence that Virden's complaint seeks damages in excess of $75,000."); *McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 485-86 (S.D. W.Va. 2001)("The better rule requires a formal, truly binding, pre-removal stipulation signed by counsel and his client explicitly limiting recovery.").**

Other courts have interpreted an attorney's stipulation as binding on the plaintiff (even when not signed by the plaintiff), *if* the plaintiff confirmed in writing the attorney's authority

to bind the plaintiff.  *See Dozier v. Kentucky Finance Co., Inc.,* **319 F. Supp. 2d 716, 719 (S.D. Miss. 2003)(complaint demand for less than $75,000 "coupled with the stipulation of plaintiff's counsel," whose authority to stipulate on behalf of plaintiff has been confirmed by plaintiff himself, established that amount in controversy did not exceed $75,000).  *See also Dora v. Citifinancial, Inc.,* 2003 WL 22243996, \*4 (N.D. Miss. 2003)(removal thwarted where plaintiffs affirmed that they were legally bound by stipulation which stated "Neither the individual Plaintiffs nor their lawyers will accept an amount that exceeds the federal jurisdictional minimum ...; Neither the individual Plaintiffs nor their lawyers will amend the complaint after one year to plead an amount in controversy in excess of the $74,900, per Plaintiff, nor will they authorize anyone on their behalf or their future heirs and assigns, to make such an amendment").**

In the case at bar, the Court already has found the "stipulation" in the complaint that Plaintiff Smith will not seek or accept over $75,000 insufficient to block removal.  (For one thing, Plaintiff could amend her complaint at any time and delete that language.)  The separate affidavit tendered by lawyer Armstrong was not signed by Smith.  Nor did Smith, in any pre-removal document, affirm that stipulation as binding her.  The Court is not convinced that the affidavit is "binding" under *Shell Oil,* so as to effectively block removal.  Thus, the undersigned Judge must look "instead to the claim's actual value."  *American Bankers*, **319 F.3d at 908.**

Smith seeks compensatory damages to cover the cost of periodic doctor visits – and presumably tests – to detect any injury or disease caused by ingesting Bextra (Doc. 2, p. 6).  She seeks no injunctive relief or punitive damages.  She does not ask for a comprehensive system of court-supervised medical monitoring.

Although the estimate of the amount in controversy contained in the complaint is not *dispositive* of the amount in controversy, the Court may consider it. Indeed, accepted wisdom provides " when deciding whether a claim meets the minimum amount in controversy, the plaintiff's evaluation of the stakes must be respected." **Barbers, 132 F.3d at 1205.** The Court cannot conceive how (and Pfizer has not demonstrated that) Smith's claim surpasses the $75,000 jurisdictional bar.

Nor does the Court find persuasive Pfizer's argument that subject matter jurisdiction lies here under the recently-enacted amendments to the federal jurisdictional statutes known as the "Class Action Fairness Act of 2005." **Pub. L. 109-2, Feb. 18, 2005, 119 Stat. 14.**

**28 U.S.C. § 1332(d)(2)(A)** now confers original subject matter jurisdiction on federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and is a class action in which any member of a class of plaintiffs is a citizen of a state different from any defendant. The statute explicitly permits aggregation of claims in class actions to reach the $5,000,000 hurdle. *See* **28 U.S.C. § 1332(d)(6)("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.").** Pfizer argues that the aggregated claims in the instant case easily exceed $5,000,000 (Doc. 11, p. 9).

The Court, however, concludes that the amendments in question do not apply, because this case was not "commenced on or after the date of enactment" (February 18, 2005). Plaintiff commenced this case by filing her complaint in Illinois state court on December 28, 2004.

The Court rejects Pfizer's argument that "commenced" means the date the case reached federal court (*i.e.*, the date a case was removed) rather than the date the complaint was filed.

Both a plain reading of the statute and the legislative history of the bill indicate that the jurisdictional amendments were never intended to apply retroactively.  *See* **P.L. 102-9 ("The amendments made by this Act ... shall apply to any civil action commenced on or after the date of enactment of this Act."); 151 Cong. Rec. H741 (Feb. 17, 2005(remarks of Rep. Udall)("Unlike earlier versions, S. 5 would not have a retroactive effect, so it would not affect pending cases.").** *See also* **151 Cong. Rec. H753 (Feb. 17, 2005)(remarks of Rep. Goodlatte); 151 Cong. Rec. S1080 (Feb. 8, 2005)(remarks of Sen. Dodd); 151 Cong. Rec. S1087 (Feb. 8, 2005)(remarks of Sen. Kennedy).**

Pfizer has not met its burden of establishing that the amount in controversy exceeds $75,000, exclusive of interest and costs.  Jurisdiction does not lie under the federal diversity statute. Because this Court lacks subject matter jurisdiction, it **GRANTS** Smith's February 24, 2005 motion (Doc. 4) and **REMANDS** this case to the Circuit Court of Madison County, Illinois.

Smith did not request an award of costs and expenses of removal in her remand motion or supporting brief, and the Court **DECLINES** to award such costs under **28 U.S.C. § 1447(c).**

IT IS SO ORDERED.

DATED this __24th__ day of March, 2005.


s/Michael J. Reagan
**MICHAEL J. REAGAN**
**United States District Judge**

-10-

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RICKY LOTT, GERALD SUMNER,** ) | |
| **SANDY BECKER & MIKE BALDWIN,** ) | |
| **individually and on behalf of all other** ) | |
| **similarly situated individuals,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **Case No. 05-cv-0230-MJR** |
| ) | |
| **PFIZER, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM and ORDER

**REAGAN, District Judge**:

On February 17, 2005, four Illinois citizens who live in the St. Clair/Madison County area (Ricky Lott, Gerald Sumner, Sandy Becker, and Mike Baldwin) filed a putative class action suit against Pfizer, Inc., in the Circuit Court of Madison County, Illinois.

Plaintiffs allege that Pfizer, a Delaware corporation with its principal place of business in New York, actively concealed information regarding the risks and dangerous side effects of two medications – Celebrex and Bextra. Celebrex and Bextra are the brand names of two non-steroidal anti-inflammatory drugs manufactured by Pfizer and used to treat musculoskeletal problems.

More specifically, Plaintiffs allege that Pfizer (via misrepresentations and concealment) was able to charge a higher price for Celebrex and Bextra than the drugs' true fair market value, had the health hazards been known by the purchasers. *See* Complaint, Doc. 2, p. 8. Plaintiffs allege that Pfizer thereby violated the Illinois Consumer Fraud and Deceptive Business Practices Act, **815 ILCS § 505/2**, and similar consumer protection statutes in other states.

Served on March 4, 2005, Pfizer removed the action to this Court on April 1, 2005, invoking subject matter jurisdiction under **28 U.S.C. § 1332.** Pfizer maintains that diversity jurisdiction lies both under § 1332 *and* under recently-enacted amendments to § 1332, resulting from passage of the Class Action Fairness Act of 2005, **Pub. L. 109-2, Feb. 18, 2005, 119 Stat. 14.**

**28 U.S.C. § 1332** confers subject matter jurisdiction over suits between citizens of different states if (a) complete diversity exists between the parties, and (b) the amount in controversy exceeds $75,000, excluding interest and costs. The party invoking federal jurisdiction – here, Pfizer – bears the burden of demonstrating that all jurisdictional requirements have been satisfied. *Chase v. Shop 'N Save Warehouse Foods, Inc.*, **110 F.3d 424, 427 (7th Cir. 1997).**

In this case, complete diversity exists, because "the citizenship requirement for purposes of diversity jurisdiction in a class action hinges entirely on the citizenship of the named plaintiffs," each of whom (as an Illinois citizen) is diverse from Pfizer (a citizen of Delaware and New York). *See Tropp v. Western-Southern Life Ins. Co.*, **381 F.3d 591, 595 (7th Cir. 2004),** *citing Payton v. County of Kane*, **308 F.3d 673, 681 (7th Cir. 2002).** The question is whether Pfizer has shown that the amount in controversy exceeds $75,000, excluding interest and costs.

For a defendant to successfully remove a class action based on diversity, one of the named plaintiffs must have a claim that surpasses the $75,000 jurisdictional bar. *In re Brand Name Prescription Drugs Antitrust Litigation*, **123 F.3d 599, 607 (7th Cir. 1997),** *cert. denied*, **522 U.S. 1153 (1998);** *Garbie v. DaimlerChrysler Corp.*, **211 F.3d 407, 409 (7th Cir. 2000).** If one named plaintiff meets the jurisdictional minimum, the other named plaintiffs and class members can "piggyback" on that plaintiff's claim, via supplemental jurisdiction under **28 U.S.C. § 1367**. *Brand Name*, **123 F.3d at 607.**

Here, Plaintiffs seek to recover damages "in an amount equal to the difference between the price charged for the drugs and the fair market value which the drugs would have had" but for Pfizer's misrepresentations and omissions. Doc. 2, p. 10. In their prayer for relief contained in the state court complaint, Plaintiffs request (*Id.*, p. 11):

> that this action be certified as a class action, that the acts and practices of the Defendant be adjudged in violation of the New Jersey Consumer Fraud Act, and that the Court award them compensatory damages, treble damages, attorneys' fees, their costs of suit, and pre- and post-judgment interest.

Pfizer contends that the amount in controversy suffices, because "Plaintiffs are seeking a 'common fund' on behalf of all class members that exceeds $75,000, exclusive of interest and costs." Removal Notice, Doc. 1, p. 2. The Court, below, solicits briefs on this issue.

Alternatively, Pfizer relies on recent legislation, the Class Action Fairness Act (or "Act"), which amended the federal diversity statute. **28 U.S.C. § 1332(d)(2)(A)** now confers original subject matter jurisdiction on federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and is a class action in which any member of a class of plaintiffs is a citizen of a state different from any defendant. Moreover, the statute explicitly permits aggregation in class actions to reach the $5,000,000 hurdle. *See* **28 U.S.C. § 1332(d)(6)("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.").**

Pfizer argues that the requisite minimal diversity exists, and "the amount in controversy, after aggregating the claims of the proposed class members, exceeds $5 million, exclusive of interest and costs." Doc. 2, p. 2.

The Court rejects Pfizer's argument based on the provisions of the Class Action Fairness Act. Those provisions apply only to civil actions commenced on or after the date the Act was enacted. Plaintiffs commenced this civil action by filing their complaint in Madison County Circuit Court on February 17, 2005. The Class Action Fairness Act was not "enacted" until the following day – February 18, 2005.

As it did in another case recently removed by Pfizer, this Court rejects Pfizer's argument that "commenced" means the date the case reached federal court (*i.e.*, the date a case was removed) rather than the date the complaint was filed. *See* 3/24/05 Order (Doc. 12) in *Smith, et al. v. Pfizer*, Case No. 05-cv-0112-MJR.

Both a plain reading of the statute and the legislative history of the bill indicate that the jurisdictional amendments were never intended to apply retroactively. ***See* P.L. 102-9 ("The amendments made by this Act ... shall apply to any civil action commenced on or after the date of enactment of this Act."); 151 Cong. Rec. H741 (Feb. 17, 2005(remarks of Rep. Udall)("Unlike earlier versions, S. 5 would not have a retroactive effect, so it would not affect pending cases."). *See also* 151 Cong. Rec. H753 (Feb. 17, 2005)(remarks of Rep. Goodlatte); 151 Cong. Rec. S1080 (Feb. 8, 2005)(remarks of Sen. Dodd); 151 Cong. Rec. S1087 (Feb. 8, 2005)(remarks of Sen. Kennedy).**

Having determined that jurisdiction does <u>not</u> lie under the Class Action Fairness Act, the Court returns to whether jurisdiction lies under the original (pre-Class Action Fairness Act) provisions of § 1332. The Court has found the parties diverse. The potential obstacle is the amount in controversy. After permitting counsel to brief whether one of the named plaintiffs has a claim that surpasses the $75,000 jurisdictional bar, the Court will assess the propriety of Pfizer's removal.

The Court instructs counsel to carefully review the undersigned Judge's 3/24/05 Order in *Smith v. Pfizer*, Case No. 05-cv-0112-MJR, with particular attention to the discussion of damage disclaimers and binding stipulations, before drafting their briefs regarding the amount in controversy herein.

The Court **DIRECTS** Plaintiffs' counsel to file a brief, no longer than 10 pages, addressing whether the amount in controversy suffices under **28 U.S.C. § 1332** (ignoring the recent amendments which this Court has declared inapplicable here).  Plaintiffs' brief – captioned "Jurisdictional Memorandum" – must be filed on or before April 28, 2005.[1]

The Court **DIRECTS** Pfizer's counsel to file a brief in the nature of a reply (Pfizer already has presented its jurisdictional arguments in the removal notice) no longer than 5 pages. Pfizer's brief – also captioned "Jurisdictional Memorandum" – must be filed by May 5, 2005.

**IT IS SO ORDERED.**

**DATED this 7th day of April, 2005.**


**s/ Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**

---

[1]     This due-date does not toll or modify any otherwise applicable deadline for remand motions under **28 U.S.C. § 1447(c)**.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re EXPEDIA HOTEL TAXES AND FEES
LITIGATION

CASE NO. C05-0365C

ORDER

This matter comes before the Court on Plaintiffs' Motion to Remand (Dkt. No. 19).  Plaintiffs seek to remand this case to King County Superior Court on the ground that Defendant's removal of this matter to federal court is improper.  The Court has carefully reviewed the materials submitted by the parties.  For the following reasons, the Court hereby GRANTS Plaintiffs' Motion to Remand.

In January and early February of 2005, three of the Plaintiffs separately filed class action suits against Expedia and its owner, IAC/InterActiveCorp, in King County Superior Court.  Each complaint alleges that Expedia violated the Washington State Consumer Protection Act by levying tax recovery and service fees in connection with hotel reservation transactions.  On February 18, 2005, a King County Superior Court judge consolidated the three cases.  Also on February 18, President Bush signed the Class

ORDER – 1

Action Fairness Act ("CAFA") into law. Class Action Fairness Act of 2005, Pub. L. No. 109-2 (2005). In part, CAFA expands federal court diversity jurisdiction over class actions to address the fact that most class actions, regardless of their nationwide scope, are currently adjudicated in state courts. S. Rep. No. 109-14, at 4 (2005). On March 7, 2005, Expedia removed the consolidated case to U.S. District Court pursuant to CAFA. Plaintiffs now seek remand of this case to King County Superior Court.

The sole issue raised by Plaintiffs' motion is the proper definition of the term "commence" as it is used in CAFA. Under Defendant's interpretation, the action commenced either on the date that the state court consolidated the three original suits or on the date that Defendant removed the case. Under either of Defendant's interpretations, CAFA would apply because the action would have commenced on or after the Act's February 18 enactment date. Plaintiffs, on the other hand, argue that "commenced" means "filed" and that this consolidated case consists of cases filed entirely before CAFA's effective date. Since the only ground for removal was provided by CAFA, under Plaintiffs' interpretation, remand would be appropriate.

Upon a motion to remand, "[t]he burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." *Prize Frize, Inc. v. Matrix, Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999). There is a strong presumption against federal jurisdiction, and jurisdiction must be rejected if there is any doubt as to the right of removal. *See Gaus v. Miles*, 980 F.2d 564, 566-67 (9th Cir. 1992). For a civil litigant to secure federal jurisdiction under CAFA, the case must have "commenced" on or after the law's enactment date, February 18, 2005. Class Action Fairness Act § 9. The term "commence" is not defined in the Act. *See id.* District Courts within the Ninth Circuit have found that "in removal cases, 'commencement' is governed by the law of the state in which the action originated." *E.g., O'Brian v. Powerforce*, 939 F. Supp. 774, 777 (D. Haw. 1996); *Perez v. Gen. Packer*, 790 F. Supp. 1464, 1469 (C.D. Cal. 1992); *Corman v. Int'l Playtex*, 713 F. Supp. 1324, 1328 (N.D. Cal. 1989); *see Provenza v. Yamaha Motor Co.*, 295 F. Supp. 2d 1175, 1178 (D. Nev. 2003); *Hom v. Serv. Merch. Co.*, 727 F. Supp. 1343, 1344 (N.D. Cal. 1990); *Rezendez v. Dow Corning*

ORDER – 2

*Co.*, 717 F. Supp. 1435, 1437 (E.D. Cal. 1989). Under Washington law, a civil action is commenced by service of a summons or by filing a complaint. Wash. Civ. R. 3(a); *Seattle Seahawks, Inc. v. King County*, 913 P.2d 375, 376 (Wash. 1996).

The Court finds that Defendant has failed to establish that federal jurisdiction is proper for the following reasons. Although neither the Ninth Circuit nor the Western District of Washington has directly defined "commence" with respect to removal or consolidation, deferring to state law to define this word is consistent with other Ninth Circuit District Court decisions.[1] Under state law, the plain text of Washington's Civil Rule 3(a) indicates that commencement occurs with "filing." The suits giving rise to this consolidated action were all filed before CAFA's enactment date. Moreover, Defendant's reliance on *Jeffery v. Weintraub*, 648 P.2d 914 (Wash. Ct. App. 1982), to argue that this case commenced when the state court consolidated the original cases is misplaced. *Jeffery* only addresses consolidation's impact on the number of judgments and attorney's fees. *See id.* at 921-22. In *Jeffery*, the court considered whether the lower court could award a separate fee for each action underlying a consolidated case. *Id.* The court's statement that consolidation creates a new action was made in the context of finding that the lower court's issuance of separate judgments did not alter the fact that consolidation renders a single judgment. *See id.* at 921. As a result, *Jeffery* is inapposite to the case at the bar. Finally, although CAFA seeks to expand federal diversity jurisdiction, inquiry into Congress' understanding of the term "commence" is uninstructive because CAFA's legislative history provides no definitive guidance. Defendant has failed in its burden of establishing federal jurisdiction. Given the presumption against removal, the Court finds that remand is appropriate.

//

---

[1] The Court also notes that Defendant fails to provide either persuasive or mandatory authority for the proposition that the Court should follow federal law to define "commence," and Defendant's argument that federal law dictates that commencement occurs upon removal relies on unpublished decisions and decisions by district courts outside the Ninth Circuit.

ORDER – 3

For these reasons, the Court hereby GRANTS Plaintiffs' Motion to Remand and REMANDS this case to King County Superior Court without award of costs or fees.

SO ORDERED this 15th day of APRIL, 2005.

John C Coughenour

UNITED STATES DISTRICT JUDGE

ORDER – 4

1

2

3

4

5

6

7

8

9

10

ENTERED
CLERK, U.S. DISTRICT COURT

MAY - 9 2005

CENTRAL DISTRICT OF CALIFORNIA
BY

FILED
CLERK, U.S. DISTRICT COURT

MAY - 5 2005

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

SCANNED

Priority       ✗
Send           ✗
Enter          ✗
Closed
JS-5/JS-6      ✗
JS-2/JS-3 ____
Scan Only ____

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11

12

13

14

15

16

17

18

19

20

21

22

RONALD BUSH, JULIANNE DYER, JOSH KRAMER, ANA LOPEZ and ASHLEY SALISBURY, On Behalf of Themselves and All Others Similarly Situated,

        Plaintiffs,

    v.

CHEAPTICKETS, INC., CENDANT CORPORATION, EXPEDIA, INC., IAC/INTERACTIVECORP, HOTELS.COM, L.P., HOTELS.COM GP, LLC, ORBITZ, INC., ORBITZ LLC, PRICELINE.COM, INC., TRAVELOCITY.COM, INC., TRAVELOCITY.COM, L.P., JOHN DOES 1-25, inclusive,

        Defendants.

No. CV 05-2285 PA (VBKx)

ORDER REMANDING ACTION

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

DOCKETED ON CM

MAY - 9 2005

BY                              001

23      Before the Court are the parties' responses and supplemental responses to the Court's

24  March 31, 2005 order to show cause why this action should not be remanded to the state

25  court for lack of federal subject matter jurisdiction.

26      Plaintiffs filed their Complaint on February 17, 2005, in the Superior Court of the

27  State of California for the County of Los Angeles. On March 28, 2005, Defendants

28  Cheaptickets, Inc.; Cendant Corporation; Expedia, Inc.; IAC/Interactive Corp.; Hotels.com,

18

1  L.P.; Hotels.com GP, LLC; Orbitz, Inc.; Orbitz, LLC; Priceline.com, Inc.; Travelocity.com,

2  Inc.; Travelocity.com, L.P. (collectively, "Defendants") removed the case to the United

3  States District Court for the Central District of California.  The Notice of Removal alleges

4  that this Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of

5  2005, Pub. L. 109-2 (the "Act").  The Act expands the scope of federal diversity jurisdiction

6  by amending 28 U.S.C. § 1332 to include class actions that meet certain criteria.  See 28

7  U.S.C. § 1332(d).  It also adds 28 U.S.C. § 1453, which authorizes and sets terms for

8  removal of class actions filed in state court that meet the new criteria for diversity

9  jurisdiction.

10       Section 9 of the Act states: "The amendments made by this Act shall apply to any

11  civil action commenced on or after the date of enactment of this Act."  Pub. L. 109-2, § 9

12  (emphasis added).  The Act was enacted on February 18, 2005, one day after this action was

13  filed in state court.

14       Whether this Court has subject matter jurisdiction depends on the meaning of the

15  word "commenced" in section 9 of the Act.  If the Court lacks subject matter jurisdiction, it

16  must remand this action to state court.  28 U.S.C. § 1447(c).

17       At the time this Court issued the order to show cause, the only published decision

18  addressing the meaning of the word "commenced" in section 9 of the Act was the United

19  States District Court for the District of Colorado, which held the word "commenced" refers

20  to the date an action is filed in state court, not the date of its removal.  Pritchett v. Office

21  Depot, Inc., 360 F.Supp.2d 1176, 1181 (2005).   Since that time, the United States Court of

22  Appeals for the Tenth Circuit has issued a published decision in the same case reaching the

23  same conclusion as the district court.  Pritchett v. Office Depot, Inc., __ F.3d __, 2005 WL

24  827158 (10th Cir. Apr. 11, 2005).  This Court is in agreement.

25       The starting point for statutory construction is the plain language of the statute.

26  Botosan v. Paul McNally Realty, 216 F.3d 827, 831 (9th Cir. 2000).  The verb "commence"

27  is commonly understood as a synonym of "begin."  See Oxford English Dictionary, available

28  at http://dictionary.oed.com (defining "commence" as "To begin (an action); to enter upon;

-2-

1    esp. in legal use, to commence an action, a suit, proceedings, etc.") A lawsuit does not

2    "begin" on the date it is removed to federal court; it is already pending by that time. Instead,

3    a lawsuit is deemed to "begin" or "commence" on the date the original complaint is filed.

4    See Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court.")

5         Defendants contend that the broad remedial purpose of the Act requires an expansive

6    definition of "commenced" that includes cases removed after the effective date.  This

7    approach, however, ignores the legislative history of the Act.  When the Act was first

8    introduced in the House, the removal provision applied not only to cases "commenced" on

9    or after the Act's effective date, but also to cases certified as class actions on or after the

10   effective date.  See H.R. 516, 109th Cong. § 7 (2005).  This latter category of cases naturally

11   would include cases already pending on the date of enactment.  Congress, however, chose to

12   narrow the scope of the removal provision by eliminating this category of cases.

13        Indeed, comments by legislators who sponsored the bill confirm the Court's

14   conclusion that the word "commenced" refers to the date the complaint is filed rather than

15   the date of the removal. See 151 Cong. Rc. S1080 (daily ed. Feb. 8, 2005) (statement of Sen.

16   Dodd) ("[The Act] does not apply retroactively, despite those who wanted it to.  A case filed

17   before the date of enactment will be unaffected by any provision of this legislation."); 151

18   Cong. Rec. H753 (daily ed. Feb. 17, 2005) (statement of Rep. Goodlatte) ("Since the

19   legislation is not retroactive, it would have absolutely no effect on the 75 class actions

20   already filed against Merck in the wake of the Vioxx withdrawal.")

21        Given the Act's plain language and legislative history, this Court agrees with the

22   Tenth Circuit that the word "commenced" in section 9 of the Act refers to the date the

23   complaint is filed, not the date of its removal.  As this action was commenced prior to the

24   Act's effective date, this Court lacks federal subject matter jurisdiction.  Accordingly, the

25   Court remands the action to the Superior Court of the State of California for the County of

26   Los Angeles.  See 28 U.S.C. § 1447(c).

27   . . . .

28   . . . .

1    Because the courts were divided on the meaning of the word "commenced" in earlier

2  jurisdictional statutes,[1/] and arguable support therefore existed for defendants' position, the

3  Court denies plaintiffs' request for attorneys' fees and costs resulting from the removal.  See

4  Moore v. Permanente Medical Group, 981 F.2d 443, 448 (9th Cir. 1992) (finding that "[a]n

5  award of attorney's fees pursuant to section 1447(c) . . . is within the discretion of the

6  district court.").

7    IT IS SO ORDERED.

8

9  DATED: May 5, 2005

10                                          Percy Anderson
                                  UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  [1/]    Compare Kieffer v. Travelers Fire Ins. Co., 167 F.Supp. 398, 401 (D.Md. 1958)

27  (holding the word "commenced" in an amendment to the diversity statute that raised the
    amount-in-controversy requirement referred to the date of the complaint's filing rather than

28  the date of its removal) with Lorraine Motors, Inc. v. Aetna Cas. & Sur. Co., 166 F.Supp.
    319, 323-24 (E.D.N.Y. 1958) (reaching the opposite conclusion).

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PATRICIA MORRIS, Individually and On Behalf of All Others Similarly Situated, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 05-113-GPM |
| | ) |
| PFIZER, INC., | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

This case came before the Court on a motion to remand (Doc. 4). The Court heard arguments on April 11, 2005, and took the matter under advisement. For the reasons set forth below, the motion is granted.

## BACKGROUND

On December 28, 2004, Morris filed a class action lawsuit against Pfizer, Inc. ("Pfizer") in the Circuit Court of Madison County, Illinois. Her complaint alleges serious side effects caused by Celebrex, a prescription arthritis medication manufactured and sold by Pfizer. In the complaint, Morris "stipulates that she will not seek and will neither demand nor accept on behalf of any Class Member any recovery in excess of $75,000 exclusive of interest and costs." (Doc. 2 at 2, ¶ 9.) Morris further asserts that there is "no claim … for equitable or injunctive relief." *Id.*

The prayer for relief includes the following statements:

d. consistent with the stipulation in Paragraph 9 of this Complaint, award Plaintiff and Class Members amounts sufficient to cover the costs of periodic medical

examinations which are reasonably necessary to detect and enable early treatment
of injuries and/or diseases caused by Celebrex; and

e. grant such other and further relief as the nature of the case may require or as may
be determined to be just, equitable, and proper by this Court, consistent with the
stipulation in Paragraph 9.

*Id*. at 6.

The action was removed from the Circuit Court of Madison County, Illinois, on February

18, 2005 (Doc. 1). Pfizer claims this Court has jurisdiction because of diversity of citizenship. *See*

28 U.S.C. § 1332. Morris seeks remand, arguing that the amount in controversy is not met and that

recent amendments to 28 U.S.C. § 1332 from the Class Action Fairness Act of 2005 ("CAFA") do

not apply. *See* CLASS ACTION FAIRNESS ACT OF 2005, Pub. L. No. 109-2 (February 18, 2005).

Morris is a citizen of Illinois, and Pfizer enjoys dual-citizenship because it was incorporated

in Delaware and maintains its principal place of business in New York. (Doc. 2 at 1; Doc. 1 at 2.)

Diversity of citizenship is thus met, and the only disagreements are whether the amount in

controversy exceeds $75,000 to complete the requirements for jurisdiction under 28 U.S.C. § 1332

and whether the CAFA amendments, codified in § 1332(d), apply.

<u>**ANALYSIS**</u>

Diversity jurisdiction under § 1332 requires (a) complete diversity between the parties, and

(b) an amount in controversy greater than $75,000, excluding interest and costs. 28 U.S.C.

§ 1332(a). The party invoking federal jurisdiction bears the burden of demonstrating that all

jurisdictional requirements have been satisfied. *Chase v. Shop 'N Save Warehouse Foods, Inc.*,

110 F.3d 424, 427 (7th Cir. 1997). There is complete diversity in this case, because only the named

plaintiff is considered in making that determination in a class action suit. *Gibson v. Chrysler Corp.*,

261 F.3d 927, 931 n.2 (9th Cir. 2001), *citing Supreme Tribe of Ben-Hur v. Cauble*, 255 U.S. 356,

366-67 (1921).

The amount in controversy requirement is not satisfied, however, in part because Morris disclaims any amount greater than $75,000

Pfizer offers no evidence that the individual claim of Morris, as the named plaintiff, is greater than $75,000.  Instead, Pfizer relies on establishing a "common fund" for medical monitoring and states that setting up such a fund would clearly "exceed $75,000 before a single plaintiff could benefit from it."  Morris does not seek medical monitoring here, however, nor does she seek injunctive relief of any kind; she merely seeks monetary compensation for periodic doctor visits and tests to detect any complications arising from Celebrex side effects.  While the amount in controversy can be determined from either a plaintiff's or a defendant's point of view, the claims for relief must be evaluated separately and not to a class as a whole.  *McCarty v. Amoco Pipeline Co.*, 595 F.2d 389, 395 (7th Cir. 1989) (adopting "either viewpoint" rule under which the Court may consider the "pecuniary result to either party which the judgment would directly produce"); *Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 977-78 (7th Cir. 2000) (Even under the either viewpoint rule, each plaintiff's claim for relief must be separately evaluated.  "That means, for Del Vecchio, that the amount in controversy from the defendants' point of view is the amount they risk paying him, not the amount they might have to pay the entire class.").  Pfizer, therefore, has not met its burden to show that the amount in controversy exceeds $75,000, and it cannot claim subject matter jurisdiction based on diversity.

This Court finds that the CAFA is not applicable to this case either.  The CAFA amendment provides jurisdiction in class actions where the total aggregate amount in controversy exceeds $5,000,000; the number of plaintiffs in all classes exceeds 100; and "any member of a class of

plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2), (5), and (6). It is important to determine what time is proper for determining federal jurisdiction under the CAFA. In this case, the complaint was filed before § 1332(d) was effective, but the notice of removal was not filed until the same day § 1332(d) became effective. The amendments are effective for any civil action "commenced on or after the date of enactment of this Act [February 18, 2005]." CLASS ACTION FAIRNESS ACT § 9, Pub. L. No. 109-2 (2005).

Pfizer makes an interesting argument that "commenced" means the date of removal. *See, e.g., Cedillo v. Valcar Enters*, 773 F. Supp. 932, 939 (N.D. Tex. 1991) (specifically making "commenced" the removal date because the date jurisdiction is invoked is when federal jurisdiction is determined); *see also In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992) (stating jurisdiction is determined at time of removal). The one reported district court case to address this specific issue refused to apply the CAFA because the case was filed in state court prior to the effective date (and this decision was affirmed by the Tenth Circuit on the same day the Court held a hearing in this case). *See Pritchett v. Office Depot, Inc.*, No. 05-MK-392, 2005 WL 563979, *5 (D.Colo. Mar. 9, 2005), *aff'd*, ___ F.3d ___, No. 05-0501, 2005 WL 827158 (10th Cir. Apr. 11, 2005). Judge Reagan has reached the same conclusion in this Court. *See Smith v. Pfizer, Inc.*, Cause No. 05-112-MJR (S.D. Ill. Mar. 24, 2005).

Both a plain reading of the statute and the legislative history of the bill indicate that the jurisdictional amendments were never intended to apply retroactively. *See* P.L. 102-9 ("The amendments made by this Act … shall apply to any civil action commenced on or after the date of enactment of this Act."); 151 Cong. Rec. H741 (Feb. 17, 2005) (remarks of Rep. Udall) ("Unlike earlier versions, S. 5 would not have a retroactive effect, so it would not affect pending cases."); *see*

*also* 151 Cong. Rec. H753 (Feb. 17, 2005) (remarks of Rep. Goodlatte); 151 Cong. Rec. S1080 (Feb. 8, 2005) (remarks of Sen. Dodd); 151 Cong. Rec. S1087 (Feb. 8, 2005) (remarks of Sen. Kennedy).

## CONCLUSION

Pfizer has not met its burden of establishing that the amount in controversy exceeds $75,000, exclusive of interest and costs, and jurisdiction does not lie under the diversity of citizenship statute. Because this Court lacks subject matter jurisdiction, the motion to remand (Doc. 4) is **GRANTED**, and this action is **REMANDED** to the Circuit Court of Madison County, Illinois, pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

DATED: 04/20/05

s/ G. Patrick Murphy
G. PATRICK MURPHY
Chief United States District Judge