# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BENSLEY CONSTRUCTION, INC., on its own behalf and on behalf of all others similarly situated, | |
| Plaintiff, | Civil Action No. 05 11249 GAO |
| v. | |
| MARSH & MCLENNAN COMPANIES, INC., et al. | |
| Defendants. | |

## OPPOSITION TO MOTIONS TO DISMISS OF DEFENDANTS LIBERTY MUTUAL GROUP, INC., LIBERTY MUTUAL INSURANCE COMPANY, LIBERTY MUTUAL FIRE INSURANCE COMPANY, EMPLOYERS INSURANCE COMPANY OF WAUSAU, AND ST. JAMES INSURANCE COMPANY, LTD.

Kenneth G. Gilman, BBO #192760
Douglas M. Brooks, BBO #058850
Douglas J. Hoffman, BBO #640472
GILMAN AND PASTOR, LLP
60 State St., 37th Floor
Boston, MA 02109
Tel: (617) 742-9700
Fax: (617) 742-9701

00005578.WPD ; 1

## <u>TABLE OF CONTENTS</u>

INTRODUCTION AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.     THIS COURT MUST DECIDE THE PENDING MOTION TO REMAND
PRIOR TO RULING ON THE LIBERTY DEFENDANTS' MOTIONS TO
DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.    EVEN IF IT WERE APPROPRIATE TO RULE ON THE LIBERTY
DEFENDANTS' MOTIONS TO DISMISS AT THIS TIME, THOSE
MOTIONS SHOULD BE DENIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.    The Relevant Legal Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.    The Liberty Defendants' Motions To Dismiss Are Largely Mooted
By The Recent Proposed Substitution Of The Representative Plaintiff . . 7

    C.    Even If Bensley Remained As Representative Plaintiff, The Motions To
Dismiss Should Still Be Denied . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        1.    Plaintiff Has Sufficiently Pled the Liberty Defendants'
Participation In the Conspiracy Alleged in the Complaint . . . . . . 8

        2.    Plaintiff's Claim for Unjust Enrichment
Must Be Sustained . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        3.    Plaintiff's Claim for Aiding and Abetting
a Breach of Fiduciary Duty Must be Sustained . . . . . . . . . . . . . 14

        4.    Plaintiff's Claims for Breach of Contract and The Covenant of
Good Faith and Fair Dealing Must Be Sustained . . . . . . . . . . . 15

        5.    Plaintiff's Claim For Breach of
Fiduciary Duty Must be Sustained . . . . . . . . . . . . . . . . . . . . . . . . 16

        6.    St. James' Motion to Dismiss Based on Personal Jurisdiction
Should Be Denied, as Plaintiff Has Not Yet Had an
Opportunity for Discovery on this Issue . . . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

## CASES

*Aldridge v. A.T. Cross Corp.*,
    284 F.3d 72 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Auerbach v. General Motors Corporation*,
    Civil Action No. 01-11723-RCL (D. Mass. July 10, 2003) . . . . . . . . . . . . . . . . . . . . . . 6

*Automatic" Sprinkler Corp. Of Am. v. Seneca Foods Corp.*,
    361 Mass. 441 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Boit v. Gar-Tech Products, Inc.*,
    967 F.2d 671 (1st Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Bramlet v. Wilson*,
    495 F.2d 714 (8th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Brandt v. Hicks, Muse & Co. (In re Healthco Int'l, Inc.)*,
    208 B.R. 288 (Bankr. Mass. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Burke v. Migday*,
    2001 Mass. Super. LEXIS 338 (Mass. Super. Ct. Aug. 20, 2001) . . . . . . . . . . . . . . . . 19

*Cacciola v. Nellhaus*,
    49 Mass. App. Ct. 746 (Mass. App. Ct. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Cardizem CD Antitrust Litig.*,
    105 F. Supp. 2d 618 (E.D. Mich. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Catrone v. Ogden Suffolk Downs*, Inc.,
    647 F. Supp. 850 (D. Mass. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*CCBN.com, Inc. v. Thomson Fin., Inc.*,
    270 F. Supp. 2d 146 (D. Mass. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Cytyc Corp. Sec. Litig*. No. 02-12399,
    2005 U.S. Dist. LEXIS 6166 (March 1, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Danca v. Private Health Care Systems, Inc.*,
    185 F. 3d 1 (1st Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*,
    290 F.3d 42 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Dines v. Liberty Mut. Ins. Co.*,
    28 Mass. App. Ct. 195 (Mass. App. Ct. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Dooley v. United Technologies Corp.*,
    786 F. Supp. at 65 (D.D.C. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Fay v. Aetna Life Ins. and Annuity Co.*,
    307 F. Supp. 2d 284 (D. Mass. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*First Nat'l Bank v. Ibarra*,
    47 Mass. App. Ct. 660 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Flower v. Suburban Land Co.*,
    123 N.E.2d 218, 221 (Mass. 1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Giannetti v. Mahoney*,
    218 F. Supp. 2d 8 (D. Mass. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Giles v. Gill*,
    1996 Mass. Super. LEXIS 189 (Mass. Super. Ct. Oct. 15, 1996) . . . . . . . . . . . . . . . . . . . 19

*Good Hope Industries, Inc. v. Ryder Scott Co.*,
    378 Mass. 1, 13 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Greater Newburyport Clamshell Alliance v. Public Service Company of New Hampshire*,
    No. 83-0066-MA, 1983 U.S. Dist. LEXIS 16694 (D. Mass. May 25, 1983) . . . . . . . . . 18

*Guerra v. Teradyne, Inc.*,
    2004 WL 1467065 (D.Mass. Jan. 16, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Indus. Diamonds Antitrust Litig.*,
    167 F.R.D. 374 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Interstate Litho Corp. v. Brown*,
    255 F.3d 19 (1st Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*John S. Clark Co. v. Travelers Indem. Co.*,
    359 F. Supp. 2d 429 (M.D.N.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Jung v. Ass'n of Am. Med. Colleges*,
    300 F. Supp. 2d 119 (D.D.C., 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 20

*Kabatchnick v. Hanover-Elm Bldg. Corp.*,
    331 Mass. 366 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lopes v. Commonwealth*,
    442 Mass. 170 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Malonis v. Harrington*,
    442 Mass. 692 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*McDonnell v. McDonnell*,
    No. 01-3421, 2005 Mass. Super. LEXIS 221 (Mass. Super Ct. Apr. 29, 2005) . . . . . . . 12

*Playmobil Antitrust Litig.*,
    35 F. Supp. 2d 231 (E.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Rapp v. Lester L. Burdick, Inc.*,
    336 Mass. 438 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Relafen Antitrust Litig.*,
    221 F.R.D. 260 (D. Mass., 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Rodriguez v. Fannie Mae*,
    268 F. Supp. 2d 87 (D. Mass. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Roeder v. Alpha Industries, Inc.*,
    814 F.2d 22 (1st Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Salinas v. United States*,
    522 U.S. 52 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Schlesinger Inv. Partnership v. Fluor Corp.*,
    671 F.2d 739 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Silverman v. Liberty Mut. Ins. Co.*,
    No. 01-2767-F, 2001 Mass. Super. LEXIS 255
    (Mass. Super Ct. July 11, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*South Cent. States Bakery Products Antitrust Litigation*,
    86 F.R.D. 407 (M.D. La. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

*Stewart v. Pershing Health Sys.*,
    182 F. Supp. 2d 856 (E.D. Mo. Feb. 13, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Swierkiewicz v. Sorema, NA*,
    534 U.S. 506, 514 (2002); *see also id.* at 511 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Szymanski v. Boston Mut. Life Ins. Co.*,
    56 Mass App. Ct. 367 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Tatro v. Manor Care, Inc.*,
    416 Mass. 763 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Terazosin Hydrochloride Antitrust Litigation*,
    220 F.R.D. 672 (S.D. Fla. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Thompson v. Lutheran Bhd.*,
    No. 01-2433, 2003 U.S. Dist. LEXIS 26513 (D. Minn. Oct. 23, 2003) . . . . . . . . . . . . . 16

*United Elec. Rado & Mach. Workers of Am. v. 163 Pleasant St. Corp.*,
    987 F. 2d 39 (1st Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Swiss American Bank, Ltd.*,
    191 F.3d 30 (1st Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Vartanian v. Monsanto Co.*,
    14 F.3d 697 (1st Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Vitamins Antitrust Litigation*,
    270 F. Supp. 2d 15 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-20

*Weld v. Glaxo Wellcome, Inc.*,
    434 Mass. 81 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Wiener v. Wampanoag Aquinnah Shellfish Hatchery Corp.*,
    223 F. Supp. 2d 346 (D. Mass. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Williams Corp. v. Kaiser Sand & Gravel Corp.*,
No. C-91-4028, 1992 U.S. Dist. LEXIS 16947 (N.D. Cal. Oct. 9, 1992) . . . . . . . . . . . 10

*Zemp v. Boeing Vertol Co.*,
No. 87-1884, 1987 U.S. Dist. LEXIS 6840 (E.D. Pa. July 28, 1987) . . . . . . . . . . . . . . 6

## **STATUTES**

Mass R. Civ. P. 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiff Bensley Construction, Inc. ("Plaintiff" or "Bensley"), by and through its undersigned counsel, submits this memorandum of law in opposition to the motions to dismiss filed on July 8, 2005 by defendants Liberty Mutual Group, Inc. ("LMG"), Liberty Mutual Insurance Company ("LMIC"), Liberty Mutual Fire Insurance Company ("LMFIC"), Employers Insurance Company of Wausau ("EICW"), and St. James Insurance Company, Ltd. ("St. James") (collectively, the "Liberty Defendants").[1]

Plaintiff commenced this action on February 17, 2005, by filing a Complaint in the Superior Court for Essex County, Massachusetts. On May 16, 2005, Plaintiff filed a First Amended Class Action Complaint (the "Amended Complaint") with the Essex Superior Court pursuant to Mass R. Civ. P. 15(a). Plaintiff subsequently served the Amended Complaint upon the defendants, and thereafter the Liberty Defendants filed motions to dismiss the Amended Complaint in Essex County Superior Court on June 14, 2005.

The Amended Complaint did not bring any count under a federal statute. Rather, Plaintiff seeks relief solely pursuant to Massachusetts law. (Amd. Compl. ¶¶ 2, 48, Counts I-VI). Nevertheless, on June 15, 2005, defendants Marsh & McClennan Companies, Inc. and Marsh, Inc. (collectively, "Marsh"), filed a Notice of Removal (the "Notice") with this Court, claiming that diversity jurisdiction lies. Marsh argues that the diversity provisions of the Class Action Fairness Act ("CAFA") apply to this case because, although it was filed prior to the enactment of

---

[1] Plaintiff submits this memorandum as a combined response to the three separate motions to dismiss filed by the Liberty Defendants. This joint memorandum is appropriate because the arguments made by each of the Liberty Defendants are virtually identical, with a few exceptions where noted herein. The memorandum of law in support of LMG's motion to dismiss shall be referenced herein at "LMG Mem. at ___." St. James' memorandum will be referenced as "St. James Mem. at ___." The memorandum submitted by defendants LMIC, LMFIC and EICW shall be referenced as "LMIC Mem. at ___."

that statute, it was *removed* after enactment.  (Notice ¶¶ 28-37).  Marsh also argued that the

matter met the pre-CAFA standards for diversity jurisdiction.  Subsequent to removal, on July 8,

2005, the Liberty Defendants re-filed their motions to dismiss in this Court.

On July 21, 2005, Plaintiff filed its motion to remand this action to Massachusetts state

court (Dkt. No. 51), and an accompanying memorandum of law (Dkt. No. 52) (the "Remand

Memorandum").  First, Plaintiff pointed out that Marsh's argument for the application of CAFA

has been rejected in at least ten decisions by federal courts, including the U.S. Courts of Appeal

for the Seventh and Tenth Circuits.  (Remand Mem. at 3-10).  In addition, Plaintiff established

that the pre-CAFA requirements for diversity jurisdiction were not met, not only because Marsh

did not establish that the claims of the named plaintiff exceeded $75,000, but also because the

parties were not completely diverse.  *Id.* at 10-19.

The Liberty Defendants have moved to dismiss this matter as against them, and these

motions should be denied.  As an initial matter, because the subject matter jurisdiction of this

Court is in dispute, it would be inappropriate for this Court to rule on the Liberty Defendants'

motions to dismiss, or to take any other action in the case, prior to the Court's ruling on

Plaintiff's motion to remand.  Subject matter jurisdiction is a threshold issue that must be

decided prior to a court taking any other action on a case.  *Steel Co. v. Citizens for a Better*

*Environment*, 523 U.S. 83, 94 (1998).  Consequently, this Court must first rule on the pending

motion to remand, which will likely result in remand of this action to state court.[2]

---

[2] As explained in Plaintiff's motion to remand, because the Class Action Fairness Act does not apply to this matter, and because Defendants are utterly unable to establish the jurisdictional amount in controversy absent their completely inappropriate aggregation of class members' claims, this action clearly must be remanded to the Essex County Circuit Court.  (*See generally*, Remand Mem.).  This result is mandated *even if* the court should find that the Liberty Defendants have been "fraudulently joined," although Plaintiff also completely refuted this argument.  *Id.* at 13-18.

Even if the Court were to rule on the motions to dismiss at this time, they should be denied. First and foremost, the motions are largely mooted by Plaintiff's recent proposed Second Amended Complaint, which would substitute Rehab Seating Systems, Inc. ("Rehab Seating") as representative plaintiff. The gravamen of the Liberty Defendants' motions is that Bensley did not purchase insurance directly from them, but rather from different defendants. Rehab Seating, however, did purchase insurance from the Liberty Defendants. Specifically, Rehab Seating purchased Insurance Products at inflated prices within Massachusetts, including Workers Compensation and Employers Liability Policies, from LMFIC, LMIC, and affiliates of LMG. (2d Amd. Compl. ¶ 12).[3]

Even if this Court were to disallow Plaintiff's motion for leave to file the Second Amended Complaint, and decided the Liberty Defendants' motions to dismiss based upon Bensley's purchases, the motions should still be denied. As stated above, the Liberty Defendants' motions focus primarily on the fact that Bensley did not purchase insurance directly from them. This argument does not warrant dismissal, however, as it misconstrues the theory of this case. Plaintiff alleges an industry-wide conspiracy to inflate the price of insurance products across the U.S., including Massachusetts, through the use of "Contingent Commission Agreements," which corrupted the entire marketplace for insurance. As explained below, Plaintiff more than adequately alleged the Liberty Defendants' role in this conspiracy, including facts regarding specific Contingent Commission Agreements entered into by these defendants, and governmental investigations into the Liberty Defendants' role in the Contingent Commission

---

[3] Rehab Seating also purchased Insurance Products during the class period at inflated prices within Massachusetts, including Commercial Property and Commercial General Liability policies, from Defendant St. Paul Travelers and/or its affiliates. (2d. Amd. Compl. ¶ 13).

scandal.  The Liberty Defendants, as co-conspirators, are liable for all acts of the other co-conspirators, and therefore the claims against them cannot be dismissed, even if the original plaintiff, Bensley, did not purchase insurance directly from them.

In addition, as explained further below, as to the specific counts of the complaint, the Liberty Defendants' arguments simply do not warrant dismissal.  For example, the Liberty Defendants claim that Plaintiff's claim for Unjust Enrichment cannot be sustained in the absence of a valid contract, and that this claim can only apply to an action for partial performance.  This is a misstatement of the law.  As explained below, numerous courts, including within Massachusetts, have sustained unjust enrichment claims under circumstances similar to those alleged here, even where no contract exists.

In addition, the Liberty Defendants claim that Plaintiff's count for Aiding and Abetting a Breach of Fiduciary Duty cannot exist unless the Liberty Defendants themselves owe Plaintiff a fiduciary duty.  This assertion is nonsensical, as this claim is based on allegations that the Liberty Defendants aided a breach of the ***Broker Defendants'*** fiduciary duty to Plaintiff and the class.  Consequently, the absence of a separate fiduciary duty owed by the Liberty Defendants to Plaintiff – an absence that Plaintiff does not concede - does not bar this claim.

Defendant St. James argues for dismissal based on a lack of personal jurisdiction.  However, as explained herein, based on the allegations of the complaint, St. James is subject to personal jurisdiction in Massachusetts under the conspiracy theory of jurisdiction. Even if dismissal were granted on this basis, however, Plaintiff must be allowed to conduct jurisdictional discovery to determine St. James' contacts with the Commonwealth.

**ARGUMENT**

I.    **THIS COURT MUST DECIDE THE PENDING MOTION TO REMAND PRIOR TO RULING ON THE LIBERTY DEFENDANTS' MOTIONS TO DISMISS**

As stated above, on July 21, 2005, Plantiff filed its motion to remand this matter to the Essex County Superior Court.  Because the subject matter jurisdiction of this Court is in question, as the Supreme Court has held, it would be inappropriate for this Court to take any action on the Liberty Defendants' Motion to Dismiss, or for that matter any action at all, until the remand motion is ruled upon.  Subject matter jurisdiction is a threshold issue that must be determined first, before the court takes any other action in the case.  "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact . . ."  *Steel Co.*, 523 U.S. at 94 (internal quotation marks and citations omitted); *Danca v. Private Health Care Systems, Inc.*, 185 F. 3d 1, 4 (1st Cir. 1999) ("[a] threshold issue in this case, as in every case, is subject matter jurisdiction."); *Rodriguez v. Fannie Mae*, 268 F. Supp. 2d 87, 89 (D. Mass. 2003) ("The 'threshold issue' in removal matters such as this is subject matter jurisdiction.") (Nieman, M.J.) (citing *Danca*); *Wiener v. Wampanoag Aquinnah Shellfish Hatchery Corp.*, 223 F. Supp. 2d 346, 349 (D. Mass. 2002) (Woodlock, J.) ("I must confront at the threshold, the issue . . . whether removal from state court, under 28 U.S.C. § 1441, was proper."); *Giannetti v. Mahoney*, 218 F. Supp. 2d 8, 10 (D. Mass. 2002) (Nieman, M.J.) ("The 'threshold issue' in removal matters such as this is subject matter jurisdiction.") (citing *Danca*). In a recent decision remanding a case to state court, Judge Lindsay cited this principle, noting, "[i]t is well settled that a federal court must determine any threshold issue of subject-matter

jurisdiction *before conducting any further proceedings in an action pending before the court.*"
*Auerbach v. General Motors Corporation*, Civil Action No. 01-11723-RCL (D. Mass. July 10, 2003) (emphasis added).[4]

Here, because a motion to remand for lack of subject matter jurisdiction is pending, this Court must first decide that motion before considering the Liberty Defendants' motions to dismiss. *See John S. Clark Co. v. Travelers Indem. Co.*, 359 F. Supp. 2d 429, 435, 442 (M.D.N.C. 2004) (where motion to remand and motion to dismiss were pending simultaneously, court first granted motion to remand and denied motion to dismiss as moot, recognizing that "[t]he existence of subject matter jurisdiction is a threshold issue."); *Stewart v. Pershing Health Sys.*, 182 F. Supp. 2d 856, 863 (E.D. Mo. Feb. 13, 2001) (same); *Zemp v. Boeing Vertol Co.*, No. 87-1884, 1987 U.S. Dist. LEXIS 6840, at *2 n.3 (E.D. Pa. July 28, 1987) ("Because the motion to remand presents the threshold issue of this court's subject matter jurisdiction, it will be decided before [the motions to dismiss filed by three of the defendants]").

## II.    EVEN IF IT WERE APPROPRIATE TO RULE ON THE LIBERTY DEFENDANTS' MOTIONS TO DISMISS AT THIS TIME, THOSE MOTIONS SHOULD BE DENIED

### A.    The Relevant Legal Standards

On a motion to dismiss, the court "must accept the allegations of the complaint as true," *Vartanian v. Monsanto Co.*, 14 F.3d 697, 700 (1st Cir. 1994), and "draw all reasonable inferences from the particular allegations in the plaintiff's favor." *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 78 (1st Cir. 2002). The Supreme Court has held that "[a] complaint should be dismissed under Rule 12(b)(6) only if it is clear that no relief could be granted under any set of

---

[4] Attached hereto as Exhibit "A."

facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema, NA*, 534 U.S. 506, 514 (2002); *see also id.* at 511 ("When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.") (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (internal quotation marks omitted)). *See also Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, 25 (1st Cir. 1987) (stating that a court may grant dismissal only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

    **B.**    **The Liberty Defendants' Motions To Dismiss Are Largely Mooted By The Recent Proposed Substitution Of The Representative Plaintiff**

    The gravamen of the Liberty Defendants' motions to dismiss is that Bensley had no direct contractual relationship with these defendants. (LMG Mem. at 7-9; 10; St. James Mem. at 4, 8-12; LMIC Mem. at 3, 4, 7-10). As explained below, such a relationship is not necessary in the context of this action as it is alleged. Nevertheless, any concerns raised by this issue are erased by the substitution of Rehab Seating as the representative plaintiff in this matter.

    Rehab Seating purchased Insurance Products, as that term is defined in the Complaint, at inflated prices within Massachusetts, including Workers Compensation and Employers Liability Policies from Defendants Liberty Mutual Fire Insurance Co., Liberty Mutual Insurance Company and affiliates of Defendant Liberty Mutual Group, Inc., during the Class Period. (2d Amd. Compl. ¶ 12). In addition, Rehab Seating also purchased Insurance Products at inflated prices within Massachusetts, including Commercial Property and Commercial General Liability

policies, from Defendant St. Paul Travelers and/or its affiliates, during the Class Period. *Id.* ¶ 13.

Consequently, the Liberty Defendants' claims that the complaint should be dismissed due to a

lack of a direct sales relationship with Bensley are mooted, at least as to LMIC, LMG and

LMFIC.

     **C.     Even If Bensley Remained As Representative Plaintiff, The Motions To
Dismiss Should Still Be Denied**

          **1.     Plaintiff Has Sufficiently Pled the Liberty Defendants' Participation
In the Conspiracy Alleged in the Complaint**

Even if the Court were to deny Plaintiff's motion for leave to file the Second Amended

Complaint, the Liberty Defendants' motions to dismiss must still be denied.

The Liberty Defendants first claim that there is a "paucity" of factual allegations against

them in the Amended Complaint, and that Plaintiff alleged only legal conclusions without

"supporting facts." (LMG Mem. at 2-3; St. James Mem. at 2, 4; LMIC Mem. at 2-3). The

Liberty Defendants apparently would have this Court believe that they have never been

implicated in the contingent commission scandal, and that Plaintiff pulled its allegations out of

thin air. Plaintiff, in fact, provided *detailed* information regarding the Liberty Defendants'

known conduct and described their connection to the conspiracy alleged.[5] The Amended

Complaint, and the Second Amended Complaint, allege that the Liberty Defendants have been

active participants in an industry-wide conspiracy to raise the price of insurance, and supports

these allegations with references to other pending lawsuits and government investigations

targeting the Liberty Defendants. (Amd. Compl. ¶ 22). More specifically, it alleges that the

---

[5] In addition, since the Liberty Defendants were included in the definition of the "Insurer Defendants," every
allegation directed toward this group is by definition directed at the Liberty Defendants.

Liberty Defendants entered into illegal and unethical Contingent Commission Agreements and/or participated in bid-rigging with various insurance brokers. *Id.* It further identifies facts regarding specific Contingent Commission Agreements to which the Liberty Defendants were a party, including the fact that Liberty was named in an internal communication at Willis (one of the Broker Defendants) as one of the insurers receiving an unfair competitive advantage due to its Contingent Commission Agreement. *Id.* Liberty also entered into a Contingent Commission Agreement with defendant AON Corporation, the world's largest reinsurance broker, which has been sued by, among others, the New York Attorney General for its participation in the contingent commission scandal. *Id.* Defendant LMG has also been subpoenaed by the Connecticut and New York Attorneys General in its investigations of contingent commission practices in the insurance industry, and the Massachusetts Attorney General has also begun an investigation into Liberty's Contingent Commission Agreements.[6] *Id.*

The fact that Bensley did not purchase insurance from the Liberty Defendants also does not warrant dismissal. This argument misconstrues the theory of Plaintiff's case. The Amended Complaint (as does the Second Amended Complaint) centers on allegations that Plaintiff and class members purchased Insurance Products issued by the Insurer Defendants (a term explicitly defined to include the Liberty Defendants) at prices that were inflated due to a wide-ranging conspiracy among the Insurer Defendants and the Broker Defendants, which "corrupted" the "marketplace for insurance." (Amd. Compl. ¶¶ 10, 55, 68-69, 103-106, 111-114). These practices "affected practically every line of insurance business" including reinsurance." *Id.* ¶ 69.

---

[6] The Liberty Defendants also imply that they may not be sued because no Liberty Defendant officer or employee has pled guilty to criminal conduct. (LMG Mem. at 3; St. James Mem. at 4; LMIC Mem. at 3). Obviously, a criminal guilty plea is not a prerequisite to a civil action.

The Amended Complaint further alleged that:

> Any single Broker Defendant could not continue to utilize these arrangements
> unless it knew and had the understanding that its competing brokers were likewise
> using them and that insurers were acquiescing in and cooperating with their use.
> Individual insurers likewise agreed to these arrangements with the knowledge and
> understanding that other competing insurers agreed to them as well.

*Id.* ¶ 65.  The Amended Complaint also contains numerous allegations further describing the

conspiracy that ties the defendants together.  *Id.* ¶¶ 3, 6, 8-10 , 53-55, 62-64, 68.

Given these allegations, the Liberty Defendants are properly named as co-conspirators.  It

is black letter law that a conspirator is liable for the acts of its co-conspirators.  *Salinas v. United*

*States*, 522 U.S. 52, 64 (1997) ("[S]o long as they share a common purpose, conspirators are

liable for the acts of their co-conspirators.").  Consequently, where a plaintiff alleges a

conspiracy to inflate prices, he or she may bring a claim against all of the defendants involved as

long as he or she purchased the price-inflated product(s) from at least one of the conspiring

defendants.  *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 243 (E.D.N.Y. 1998) ("Where

the plaintiffs have alleged a single conspiracy to artificially inflate prices, a representative

plaintiff may satisfy the adequacy requirement without having purchased products from all of the

defendants . . .") (quoting *In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374, 381 (S.D.N.Y.

1996)); *Williams Corp. v. Kaiser Sand & Gravel Corp.*, No. C-91-4028, 1992 U.S. Dist. LEXIS

16947, at \*12-13 (N.D. Cal. Oct. 9, 1992) (holding, in an action alleging a price-fixing

conspiracy by several defendants, "there is no requirement that a class representative must have

purchased from all defendants joined in an action . . .") (citing 1 Newberg on Class Actions, §§

3.27 at 211; 3.18 at 183 (2d ed. 1985)); *In re South Cent. States Bakery Products Antitrust*

*Litigation*, 86 F.R.D. 407, 418 (M.D. La. 1980) ("In an antitrust price fixing case in which the

class representative has alleged a broad conspiracy, courts have not required . . . that the representative have purchased from all of the defendants . . .").

This analysis includes LMG, which argues that all counts against it must be dismissed because it is a holding company that does not sell insurance. (LMG Mem. at 4). LMG is alleged to have conspired with the other Insurer and Broker Defendants in furtherance of the contingent commission scheme alleged, and can therefore be held liable for the acts of its co-conspirators. (*E.g.* Amd. Compl. ¶¶ 2, 8, 22, 62-64). In addition, defendants cannot dispute that it is LMG that has been subpoenaed by the Connecticut and New York Attorneys General concerning the Liberty Defendants participation in the contingent commission scandal. Consequently, LMG cannot be excluded from all liability simply because it does not itself issue insurance.[7]

**2.     Plaintiff's Claim for Unjust Enrichment Must Be Sustained**

Plaintiff's claim for unjust enrichment must be sustained. The Liberty Defendants have mis-stated the scope of an action for unjust enrichment under Massachusetts law, stating that it requires the existence of a contract, and that it is only "a theory of recovery to be utilized when a party has performed according to a contract substantially but not completely." (LMG Mem. at 10; St. James Mem. at 12; LMIC Mem. at 10). As mentioned above, this argument is mooted by the existence of contracts between Rehab Seating and the Liberty Defendants, but in any event,

---

[7] Under Massachusetts law, the joinder of the Liberty Defendants is also appropriate under the "juridical links" doctrine. *Weld v. Glaxo Wellcome, Inc.*, 434 Mass. 81, 89-90 (2001). As recognized by the Supreme Judicial Court of Massachusetts in *Weld*, "[t]here are several types of connective links that courts have determined are sufficient to permit a plaintiff . . . to represent a class against individual multiple defendants (as distinguished from a defendant class), ***where not all of the defendants had direct contact with the named plaintiff***." *Id.* at 89-90 (2001) (emphasis added). The juridical links doctrine is a procedural device that "permits collective adjudication of related claims." *Weld,* 434 Mass. at 90 (citing *Kabatchnick v. Hanover-Elm Bldg. Corp.*, 331 Mass. 366, 369, 119 N.E.2d 169 (1954)). The analysis is analogous, but not identical to that required under Mass. R. Civ. P. 20, governing permissive joinder. *Id.*

this assertion is dead wrong.  Unjust enrichment is not nearly so limited:

> Although claims for unjust enrichment often accompany and supplement those for
> breach of contract, they may also -- as here -- accompany and supplement those
> for tortious injury.  See Restatement (Third) of Restitution § 3 ("A person who
> interferes with the legally protected rights of another, acting without justification
> and in conscious disregard of the other's rights, is liable to the other for any profit
> realized by such interference.").

*In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 279-280 (D. Mass., 2004) (certifying unjust

enrichment claims of a class of purchasers of Relafin under Massachusetts law, where price of

drug was alleged to have been artificially inflated).

Moreover, a claim for unjust enrichment *does not* require the existence of a contract.

*Interstate Litho Corp. v. Brown*, 255 F.3d 19, 31 (1st Cir. 2001) ("The right to recover in an

action for money had and received does not depend upon privity of contract, but on the

obligation to restore that which the law implies should be returned, where one is unjustly

enriched at another's expense.") (quoting *Flower v. Suburban Land Co.*, 123 N.E.2d 218, 221

(Mass. 1954)); *Dines v. Liberty Mut. Ins. Co.*, 28 Mass. App. Ct. 195, 198 (Mass. App. Ct. 1990)

(sustaining unjust enrichment claim where no contract existed); *McDonnell v. McDonnell*, No.

01-3421, 2005 Mass. Super. LEXIS 221, at *10 (Mass. Super Ct. Apr. 29, 2005) (recognizing

that claim for unjust enrichment is appropriate in the absence of an enforceable contract).

More specifically, courts have recognized claims for unjust enrichment in circumstances

similar to those presented here, where class members suffered as a result of a conspiracy to

inflate prices, even where the plaintiff did not deal directly with the defendant.  *Relafen Antitrust*

*Litig.*, 221 F.R.D. at 288 (certifying unjust enrichment claim under Massachusetts law for class

of purchasers of a drug subject to a price-fixing agreement); *In Re: Terazosin Hydrochloride*

*Antitrust Litigation*, 220 F.R.D. 672, 697-98 (S.D. Fla. 2004) (certifying class of consumer

indirect purchasers claiming defendant drug manufacturer was unjustly enriched by illegally

inflated prices for its product); *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 671

(E.D. Mich. 2000) (holding that "whether or not the benefit is directly conferred on the defendant

is not the critical inquiry; rather, the plaintiff must show that his detriment and the defendant's

benefit are related and flow from the challenged conduct").

    The single case cited by the Liberty Defendants on this point does not, as they claim, state

that unjust enrichment is not an independent cause of action.  (LMG Mem. at 10; St. James Mem.

at 12; LMIC Mem. at 10).  Rather, the Court appears to be saying that the plaintiff's complaint in

that particular case did not raise unjust enrichment as an independent cause of action.  *See Lopes*

*v. Commonwealth*, 442 Mass. 170, 179 (Mass. 2004).  In addition, in a case decided subsequent

to *Lopes*, the Supreme Judicial Court recognized a cause of action for unjust enrichment on a

basis other than the existence of a contract.

> Harrington claims that Malonis's failure to allege Harrington's promise to pay in
> the complaint now bars him from asserting the parties' understanding of this
> promise as a basis for recovery.  This is incorrect.  We have considered the
> reasonable expectations of the parties in the context of Malonis's (asserted) claim
> of unjust enrichment, on a theory of quasi contract, that is implied in law "for
> reasons of justice, ***without any expression of assent***."  Our decision does not rest
> on traditional contract principles or any (unasserted) related claims.

*Malonis v. Harrington*, 442 Mass. 692, 698 n.8 (2004) (emphasis added).  As a result, Plaintiff's

claim for unjust enrichment must be sustained.

### 3. Plaintiff's Claim for Aiding and Abetting a Breach of Fiduciary Duty Must be Sustained

Plaintiff's claim for Aiding and Abetting a Breach of Fiduciary Duty must also be sustained. The Liberty Defendant do not deny that this cause of action is recognized in Massachusetts, nor could they. *Cacciola v. Nellhaus*, 49 Mass. App. Ct. 746, 752 (Mass. App. Ct. 2000) ("Liability arises when a person [actively] participates in a fiduciary's breach of duty . . . such that he . . . could not reasonably be held to have acted in good faith.").

This claim alleges that the Insurer Defendants (including the Liberty Defendants) and the Broker Defendants "knowingly and intentionally ***aided and abetted the other's breaches of fiduciary duty***" by, *inter alia*: (1) entering into undisclosed Contingent Commission Agreements, thereby knowingly creating an obvious conflict of interest between Plaintiff and the Class and each Defendant Class; (2) the Insurer Defendants' submission of false bids in furtherance of bid-rigging or customer allocation agreements; and (3) failing to disclose to Plaintiff and Class members the existence of the Contingent Commission Agreements, bid-rigging, and/or customer allocation agreements described herein." (2d Amd. Compl ¶ 152) (emphasis added).

The Liberty Defendants' sole argument for dismissal of this claim is that if no fiduciary duty exists between the Liberty Defendants and Plaintiff, the Liberty Defendants are not liable under this count. (LMG Mem. at 6; St. James Mem. at 8; LMIC Mem. at 6). The Liberty Defendants cite no authority whatsoever for this assertion, likely because this argument misconstrues the nature of the claim alleged. The Liberty Defendants are accused of aiding and abetting ***the Broker Defendants'*** breach of fiduciary duty to Plaintiff, a duty which the Liberty Defendants do not deny exists.

To hold a defendant liable for aiding and abetting a breach of fiduciary duty, it is not necessary for that defendant itself have an independent fiduciary duty to the plaintiff. "The elements of an aiding and abetting claim are: (1) existence of a fiduciary relationship, (2) breach of the fiduciary's duty, and (3) knowing participation in that breach by the ***nonfiduciary*** defendants." *Brandt v. Hicks, Muse & Co. (In re Healthco Int'l, Inc.)*, 208 B.R. 288, 309 (Bankr. Mass. 1997) (emphasis added). Plaintiff has alleged the existence of a fiduciary relationship with the Broker Defendants (*E.g.* 2d Amd. Compl. ¶¶ 5, 152), the breach of that duty (*E.g. Id.* ¶¶ 134-142), and the Liberty Defendants' knowing participation in that breach. *E.g. Id.* ¶¶ 2, 22, 3, 152. LMG asserts that "any disclosure requirements" apply only to the Broker Defendants, but this claim also misses the point. (LMG Mem. at 6; St. James Mem. at 8; LMIC Mem. at 6). The Liberty Defendants actively participated and assisted the Broker Defendants, specifically including Willis and Aon Corporation, in breaching their duty to disclose the fees it was receiving from the Insurer Defendants. Had the Liberty Defendants (along with the other Insurer Defendants), not participated in the Contingent Commission agreements and other conduct alleged in the complaint, the Broker Defendants would have had nothing to disclose. This certainly constitutes "knowing participation" in the breach of the Broker Defendants' fiduciary duty. Consequently, this claim has been adequately pled against the Liberty Defendants and the motions to dismiss as to this count must be denied.

### 4. Plaintiff's Claims for Breach of Contract and The Covenant of Good Faith and Fair Dealing Must Be Sustained

The Liberty Defendants seek to dismiss Plaintiff's claims for Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing ***solely*** based on the lack of a contract

between Bensley and the Liberty Defendants.  (LMG Mem. at 7-9; St. James Mem. at 11-12;

LMIC Mem. at 7-10).  As explained above, this argument is mooted by the substitution of Rehab

Seating as the representative plaintiff, at least as to defendants LMIC, LMG and LMFIC.

### 5.    Plaintiff's Claim For Breach of Fiduciary Duty Must be Sustained

The Liberty Defendants claim that Count I, for breach of fiduciary duty, cannot be

sustained against them because an insurer does not owe the insured a fiduciary duty.  (LMG

Mem. at 5; St. James Mem. at 7-8; LMIC Mem. at 5-6).  This statement is not accurate, however,

as this claim has been recognized in the Commonwealth against an insurer when the situation

warrants it.  *Silverman v. Liberty Mut. Ins. Co.*, No. 01-2767-F, 2001 Mass. Super. LEXIS 255, at

*18-19 (Mass. Super Ct. July 11, 2001) (holding that defendant insurer -- LMIC -- owed its

policyholders a fiduciary duty in connection with inadequate disclosures during its

demutualization process).

Massachusetts courts, therefore, appear to analyze this question on a case-by-case basis,

rather than applying a blanket rule that an insurer never owes its policyholders a fiduciary duty.[8]

"It is axiomatic that "a complaint should not be dismissed merely because the court doubts that a

plaintiff will prevail in the action." *Thompson v. Lutheran Bhd.*, No. 01-2433, 2003 U.S. Dist.

LEXIS 26513, at *9-10 (D. Minn. 2003) (quoting *Bramlet v. Wilson*, 495 F.2d 714, 716 (8th Cir.

1974)).  Consequently, courts do not grant motions to dismiss on arguments such as that offered

by the Liberty Defendants here, where the rule of law does not present an absolute bar to a claim.

*Thompson*, 2003 U.S. Dist. LEXIS 26513, at *10 (denying motion to dismiss where plaintiff

_____

[8]  The Liberty Defendants also move to dismiss Count II, for Breach of Fiduciary Duty - Broker Defendants.  (*E.g.* St. James Mem. at 7 n.2).  However, as indicated by the Count's title, this Count was not directed at Insurer Defendants such as the Liberty Defendants.

alleged a breach of fiduciary duty by an insurer). Notably, ***none of the cases offered by the Liberty Defendants were decided on a motion to dismiss***. (LMG Mem. at 5, citing *Fay v. Aetna Life Ins. and Annuity Co.,* 307 F. Supp. 2d 284 (D. Mass. 2004) (summary judgment); *Szymanski v. Boston Mut. Life Ins. Co.*, 56 Mass App. Ct. 367 (2002) (summary judgment); *Rapp v. Lester L. Burdick, Inc*., 336 Mass. 438 (1957) (decision on appeal following a bench trial)). Consequently, dismissal of this count would be inappropriate.

> **6.     St. James' Motion to Dismiss Based on Personal Jurisdiction Should Be Denied, as Plaintiff Has Not Yet Had an Opportunity for Discovery on this Issue**

St. James claims that the Amended Complaint must be dismissed as to it due to a perceived lack of personal jurisdiction, claiming that St. James does not sell insurance within Massachusetts and otherwise does not have significant Massachusetts contacts.[9] (St. James Mem. at 5-6). However, personal jurisdiction over the participants in the conspiracy alleged herein, including St. James, is appropriate under the conspiracy theory of jurisdiction. Under this theory, "[s]o long as any one co-conspirator commits at least one overt act in furtherance of the conspiracy in the forum jurisdiction, there is personal jurisdiction over all members of the conspiracy." *Jung v. Ass'n of Am. Med. Colleges*, 300 F. Supp. 2d 119, 141 (D.D.C., 2004) (citing *Dooley v. United Technologies Corp.*, 786 F. Supp. at 65, 78 (D.D.C. 1992)). "In this context, plaintiffs must allege (1) the existence of a conspiracy; (2) the nonresident's participation in or agreement to join the conspiracy; and (3) an overt act taken in furtherance of the conspiracy

---

[9] St. James also claims that this action must be dismissed due to insufficient service of process. (St. James Mem. at 5). Such dismissal is not appropriate where a plaintiff has made a "good faith" effort to serve the defendant. Mass. R. Civ. P. 4(j). Plaintiff has undertaken such an effort here, twice attempting to serve St. James. (*See* accompanying Affidavit of Kenneth G. Gilman, Exs. A and B). However, even if dismissal is granted on this basis, it must be "without prejudice." *First Nat'l Bank v. Ibarra*, 47 Mass. App. Ct. 660, 661 n.1 (quoting Mass. R. Civ. P. 4(j)).

within the forum's boundaries." *Id.* This theory has been applied and recognized in Massachusetts.[10] *Greater Newburyport Clamshell Alliance v. Public Service Company of New Hampshire*, No. 83-0066-MA, 1983 U.S. Dist. LEXIS 16694, at *4-6 (D. Mass. 1983).

Here, Plaintiff has pled the existence of an industry-wide conspiracy to inflate insurance premiums.  (Amd. Compl. ¶¶ 10, 55, 68-69, 103-106, 111-114).  In addition, Plaintiff has also pled the Liberty Defendants' participation in this conspiracy, including St. James.  *Id.* ¶ 22.  Finally, as described above, Plaintiff has demonstrated overt acts in furtherance of the conspiracy such as the sale of the insurance policies purchased by Rehab Seating.  *Id.* ¶¶ 12-13.

The conspiracy theory of jurisdiction has also been applied in the context presented here, a conspiracy to inflate prices.  *Jung*, 300 F. Supp. 2d at 141 (applying conspiracy theory of jurisdiction to alleged conspiracy to restrain competition in the recruitment, hiring, employment and compensation of resident physicians); *In Re: Vitamins Antitrust Litigation*, 270 F. Supp. 2d 15, 28-32 (D.D.C. 2003) (applying conspiracy theory of jurisdiction under law of Illinois, Kansas, and Minnesota to price-fixing conspiracy).  Consequently, it is appropriate for this Court to apply the conspiracy theory of jurisdiction to Defendants.

However, even in the event the Court decides that St. James is not subject to a conspiracy theory of jurisdiction, Plaintiff must be allowed to conduct discovery to determine the extent of St. James' contacts with Massachusetts.  Massachusetts courts routinely defer decision on a motion to dismiss for lack of personal jurisdiction until after reasonable discovery directed at that issue.  *See, e.g., Tatro v. Manor Care, Inc.*, 416 Mass. 763, 764 (1994) (noting that "[a] judge in

---

[10]  Although some Massachusetts federal district courts have denied personal jurisdiction under the conspiracy theory, it had not been rejected outright by any court, federal or state, in Massachusetts.  *See Catrone v. Ogden Suffolk Downs*, Inc., 647 F. Supp. 850, 860 (D. Mass. 1986) ("The First Circuit has neither adopted nor foreclosed the conspiracy theory of jurisdiction . . .")

the Superior Court allowed discovery 'limited to the essential facts relevant to the issue of personal jurisdiction'"); *Good Hope Industries, Inc. v. Ryder Scott Co.*, 378 Mass. 1, 13 (1979) ("The parties engaged in discovery limited to the jurisdictional issue, and filed affidavits, depositions, and exhibits prior to argument on the motion'); *Burke v. Migday*, 2001 Mass. Super. LEXIS 338, at *4 (Mass. Super. Ct. Aug. 20, 2001) (where court "allowed the parties to engage in discovery limited to the issue of personal jurisdiction" before deciding motion to dismiss); *Giles v. Gill*, 1996 Mass. Super. LEXIS 189, at *5-6 (Mass. Super. Ct. Oct. 15, 1996) (motion to dismiss for lack of personal jurisdiction denied without prejudice to renewal after close of discovery).

So essential is such jurisdictional discovery to a fair consideration of a defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(2), the cognate federal rule, that federal courts have held that a refusal to permit such discovery can be an abuse of discretion. *See, e.g., United States v. Swiss American Bank, Ltd.*, 191 F.3d 30, 45 (1st Cir. 1999) ("A timely and properly supported request for jurisdictional discovery merits solicitous attention"); *United Elec. Rado & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 987 F. 2d 39, 47-48 & n.18 (1st Cir. 1993) ("we note that if, on the record before it, the district court decided the personal jurisdiction issue adversely to plaintiffs without at least affording them the opportunity to respond to [the defendant's] argument and/or to request discovery, we almost certainly would have declined to affirm the district court's judgment and held the ruling to be an abuse of discretion"); *Boit v. Gar-Tech Products, Inc.*, 967 F.2d 671, 681 (1st Cir. 1992) ("Indeed, if [the plaintiffs] requested that the district court defer ruling on [the defendant's Rule 12(b)(2)] motion pending further discovery, it might have been an abuse of discretion to deny the request"). *See also In re Vitamins Antitrust*

00005578.WPD ; 1                                    19

*Litig.*, 94 F. Supp. 2d 26, 35 (D.D.C. 2000) (holding that plaintiffs were entitled to jurisdictional discovery prior to ruling on motion to dismiss); *Jung v. Association of American Medical Colleges*, 300 F. Supp. 2d 119, 140-43 (D.C. Cir. 2004) (noting plaintiff's right to take jurisdictional discovery).

Here, St. James claims that Plaintiff "is incapable of identifying facts that support the exercise of jurisdiction of this court over St. James." (St. James Mem. at 6). Even if true, this only supports Plaintiffs' need for discovery on this issue. Because the SJC "has interpreted the state's long-arm statute 'as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States[,]'" *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002), quoting *"Automatic" Sprinkler Corp. Of Am. v. Seneca Foods Corp*., 361 Mass. 441, 443 (1972), and because due process principles permit the exercise of specific jurisdiction based on the imputed state contacts of an agent, see, e.g., *Daynard,* 290 F.3d at 53-60 (interpreting Massachusetts law); *In re Vitamins Antitrust Litigation*, 94 F. Supp.2d at 32-33 (interpreting Illinois law), Plaintiff is entitled to conduct discovery on this score in order to shoulder its burden of establishing personal jurisdiction.[11]

## CONCLUSION

For all of the foregoing reasons, a ruling on the Liberty Defendants' Motions to Dismiss should be DENIED, or alternatively, a ruling on these motions should be deferred until after the

---

[11]  In the event the court grants the motions to dismiss, Plaintiff requests leave to replead in order to correct any deficiencies in the Second Amended Complaint. In re Cytyc Corp. Sec. Litig. NO. 02-12399, 2005 U.S. Dist. LEXIS 6166, at *107-8 (March 1, 2005) (granting leave to replead after motion to dismiss granted, even after case was approaching three year mark) (citing *Guerra v. Teradyne, Inc*., 2004 WL 1467065 (D.Mass. Jan. 16, 2004)); *CCBN.com, Inc. v. Thomson Fin., Inc.*, 270 F. Supp. 2d 146, 152 (D. Mass. 2003) (granting leave to replead claim for aiding and abetting breach of fiduciary duty after claim had been dismissed). *See also Schlesinger Inv. Partnership v. Fluor Corp.*, 671 F.2d 739, 741 (2d Cir. 1982) (citing "liberal policy" of the Federal Rules in granting leave to replead so that plaintiff could "flesh out" allegations).

Court's ruling on Plaintiff's pending motion to remand.

DATED: July 27, 2005

Respectfully submitted,

**GILMAN AND PASTOR, LLP**

By:   /s/ Kenneth G. Gilman
      Kenneth G. Gilman, BBO #192760
      Douglas M. Brooks, BBO #058850
      Douglas J. Hoffman, BBO #640472
      60 State St., 37th Floor
      Boston, MA 02109
      Tel: (617) 742-9700
      Fax: (617) 742-9701

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JEFF AUERBACH, and | ) | |
| ANN DITONDO, on behalf of | ) | |
| themselves and all others | ) | |
| similarly situated, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 01-11723-RCL |
| | ) | |
| GENERAL MOTORS | ) | |
| CORPORATION, | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR REMAND

LINDSAY, District Judge.

This is an action filed by Jeff Auerbach and Ann Ditondo (the "Plaintiffs") on behalf of

Massachusetts residents who purchased Chevrolet Malibu vehicles for model years 1997 through 2001

(the "Class"). The plaintiffs originally filed this action against General Motors Corporation ("GM" or

the "Defendant") in Middlesex Superior Court. GM subsequently removed the action to this court

pursuant to 28 U.S.C. §§1441 and 1446, asserting diversity jurisdiction under 28 U.S.C. §1332. The

plaintiffs have moved for a remand of the action and contend that this court lacks jurisdiction because

the dispute does not satisfy the $75,000 jurisdictional amount under 28 U.S.C. §1332. The motion to

remand is GRANTED.

**Discussion**

It is well settled that a federal court must determine any threshold issue of subject-matter

jurisdiction before conducting any further proceedings in an action pending before the court. *See, e.g.,*

*Steel Company Citizens for a Better Environment*, 523 U.S. 83, 94 (1998); *Danca v. Private*

*Health Care Systems, Inc.*, 15 F.3d 1, 4 (1st Cir. 1999).  Federal courts have original jurisdiction

over civil actions in which the matter in controversy exceeds the sum or value of $75,000, exclusive of

interest and costs, and is between citizens of different states.  28 U.S.C. §1332(a).  The parties in this

matter do not dispute diversity of citizenship.[1]  Consequently, the only question before the court is

whether the amount in controversy exceeds $75,000 as required for diversity jurisdiction.[2]

The party seeking to litigate in federal court bears the burden of establishing federal subject

matter jurisdiction.  *See McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178,

189 (1936).  Generally, the plaintiff's allegation of the damages is controlling if the claim is appears to

be in good faith.  *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938).

Where a damages allegation is challenged, however, the court must examine whether, "from the face of

the pleadings," it is apparent to a legal certainty that the plaintiff could not recover, or was never entitled

to recover, the amount claimed.  *See id.* at 289; *Dep't of Recreation and Sports v. World Boxing

Ass'n*, 942 F.2d 84, 88 (1st Cir. 1991).  The court must look to the circumstances at the time the

complaint was filed in order to determine whether a party has met the amount-in-controversy

requirement.  *See Spielman v. Genzyme Corp.,* 251 F.3d 1, 5 (1st Cir. 2001); *Coventry Sewage

Ass'n v. Dworkin Realty Co.,* 71 F.3d 1, 4 (1st Cir. 1995).  Specifically, the First Circuit has held that

courts should examine the plaintiffs' claims "from the face of the complaint at the time the petition for

---

[1] The parties stipulate that the plaintiffs are citizens of Massachusetts and that GM is a corporation organized and existing under the laws of Delaware, maintaining a principal place of business in Michigan.  *See* Defendant's Notice of Removal ¶2.

[2] Although the plaintiffs filed this action as a class action, the class has not been certified yet. The First Circuit, however, has held that, "[d]uring the period between the commencement of a suit as a class action and the court's determination that it may be so maintained, the suit should be treated as a class action." *See Doucette v. Ives*, 947 F.2d 21, 30 (1st Cir. 1991).  Thus, for the purposes for analyzing the amount in controversy, I will treat the Class identified by the plaintiffs as if it has been certified.

removal was filed." *See Ching v. Mitre Corp.*, 921 F.2d 11, 13 (1st Cir. 1990).  Thus, jurisdiction

must be rooted in the pleadings as they existed at the time of removal, and "subsequent changes ... in

the amount in controversy neither confer nor devest [sic] it." *See Thresleff v. Harvard Trust Co.*, 154

F.2d 732, 732 n.1 (1st Cir. 1946).  In this instance, the defendant GM bears the burden of

demonstrating that removal to this court was proper.  *See Dep't of Recreation and Sports,* 942 F.2d

at 88.

 At the time of removal, the original complaint (the "Complaint") contained a single count

alleging fraudulent concealment. *See* Complaint at 8.  Twelve days *after* the defendant removed,

however, the plaintiffs amended the Complaint to include a second count alleging unfair and deceptive

trade practices under Mass.Gen.L. ch.93A, directed to GM's manufacturing, designing and testing

practices for Malibus.[3] *See* First Amended Complaint (the "Amended Complaint") at 11. Although the

parties have proceeded on the basis of the Amended Complaint, I am required to assess the question of

the jurisdictional amount based on the claims at the time of removal, or in other words, as they are

pleaded in the Complaint.

 The parties' pleadings acknowledge that damages in class actions may not be aggregated for

the purpose of calculating the jurisdictional amount.  *See Snyder v. Harris*, 394 U.S. 332, 339-40

(holding that aggregation is only permitted where parties seek to enforce a single right or title in which

they have a common and undivided interest); *Zahn v. International Paper Co.*, 414 U.S. 291, 301

(1973) (ruling that courts may not exercise supplemental jurisdiction over the claims of class action

plaintiffs who do not individually meet the jurisdictional minimum).  Each individual plaintiff must

---

[3]The defendant removed on October 5, 2001.  The plaintiffs filed the Amended Complaint on October 17, 2001.

therefore satisfy the jurisdictional amount for a federal court properly to have jurisdiction over a diversity action.

In the Complaint, the plaintiffs and the Class requested relief that included enjoining GM from "pursuing the policies, acts and practices described in [the] Complaint" and "enjoining GM from engaging in deceptive advertising regarding the Malibus." *See* Complaint at 10. The only policy, act or practice alleged to have been wrongful in the Complaint was the fraudulent concealment of defective brakes in Malibu vehicles. The injunctive relief sought, therefore, was confined to a request in substance that GM be prohibited from concealing the deceptive brakes in Malibus. The plaintiffs also requested the disgorgement or imposition of a constructive trust upon GM's excess profits from the sale of defective Malibus, damages related to any unlawful act or practice committed by the defendant, and litigation-related damages for the plaintiffs and the Class. *See id.* The named plaintiffs, Auerbach and DiTondi, claimed, however, damages only for the repair and replacement of the Malibu brakes in their vehicles - - damages totaling $800 and $300, respectively. *See* Am. Comp. ¶¶ 9-10. While the defendant has submitted an affidavit asserting that the injunctive relief commensurate with count II of the Amended Complaint exceeds $75,000, the defendant has not asserted that the plaintiffs' claim that damages for count I do not meet the jurisdictional amount requirement.

I note in passing that district courts in New York and Texas have remanded related cases against GM on the grounds that the plaintiffs' claims similarly did not satisfy the requisite jurisdictional amounts. *See Post v. General Motors Corp.*, No. 01 civ. 9410, 2002 WL1203847; *Garza v. General Motors Corp.*, No. DC-01-231 (Dist. Ct. Duval County, Tex.). The complaints in both cases were substantially similar to the Complaint in the matter at hand, alleging deceptive trade

4

practices and fraudulent concealment by GM.  The court does not decide (because there is no need to

decide) whether the claims of each individual plaintiff, as pleaded in the Amended Complaint, would

satisfy the jurisdictional amount.  It is enough to say that the complaint, as it existed at the time of

removal, did not assert damages meeting the jurisdictional requirement.  For that reason, the matter to

remove this case to the Middlesex Superior Court is GRANTED.

So ordered.

/s/ REGINALD C. LINDSAY_____
United States District Judge

DATED: