# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

BENSLEY CONSTRUCTION, INC.,
on its own behalf and on behalf
of all others similarly situated,

      Plaintiff,

      v.

MARSH & MCLENNAN
COMPANIES, INC., et al.

      Defendants.

Civil Action No. 05 11249 GAO

## NOTICE OF SUPPLEMENTAL AUTHORITY
## IN FURTHER SUPPORT OF PLAINTIFF'S MOTION TO REMAND

Plaintiff Bensley Construction, Inc., through its undersigned counsel, hereby gives notice that it is filing, in support of its pending motion to remand, three recent decisions by federal courts rejecting an argument raised here by defendants in support of federal jurisdiction, and states as follows:

1.    The relaxed jurisdictional provisions of the Class Action Fairness Act ("CAFA") apply to any case "commenced" on or after February 18, 2005.  P.L. 109-2 § 9.

2.    Removal of this case was based in part on an argument that CAFA applies to this case, even though it was filed in state court prior to CAFA's effective date.  The removing defendants claimed that a case is first "commenced" for CAFA's purposes when it is removed to federal court, and since Defendants removed this matter after CAFA's effective date, they claim that CAFA is applicable.  (Notice of Removal ¶ 36).

00005898.WPD ; 1

3.      As Plaintiff demonstrated in its Memorandum of law in Support of Motion to Remand, every federal court to consider this argument has rejected it.  (Remand Mem., Dkt. No. 52, at 3-8) (citing cases).

4.      Since the day that Plaintiff filed its motion to remand, courts have continued to reject defendants' argument for the application of CAFA.  Plaintiff submits herewith three additional decisions rejecting this argument, including two from the U.S. Court of Appeals for the Seventh Circuit and one from this District.

5.      In *Natale v. Pfizer Inc*., Nos. 05-10590, 05-10591, 2005 U.S. Dist. LEXIS 15350 (D. Mass. July 28, 2005) (copy attached hereto as Ex. "A"), Chief Judge William Young, after reviewing the legislative history of CAFA and the numerous federal court decisions on the issue, rejected defendants' argument for the application of CAFA, stating: "a case is 'commenced' for purposes of the Class Action Fairness Act when it is filed with the state court."  *Id.* at 39-40. Given the numerous prior decisions rejecting this argument, Judge Young apparently strongly considered awarding the plaintiff his costs of responding to the removal argument.  *Id.* at *53 ("[The request for costs] gives this court reason to pause. . . . Pfizer's argument has been repeatedly, this being at least the fourth time, rejected by the federal courts.").

6.      In *Pfizer v. Lott*, No. 05-8013, 2005 U.S. App. LEXIS 16036 (7th Cir. Aug. 4, 2005) (copy attached hereto as Exhibit "B"), under circumstances identical to those present here, the Seventh Circuit re-affirmed that the case, filed in state court before CAFA's effective date, was "commenced" at that time.  *Id.* at *4 ("While it is true that the proceeding in federal court was 'commenced' by the filing of the removal petition, that filing was not the beginning of the suit.").  Consequently, the Court did not apply CAFA to this case.

7.     In *Schorsch v. Hewlett-Packard Co.*, No. 05-8017, 2005 U.S. App. LEXIS 16465 (7th Cir. Aug. 8., 2005) (copy attached hereto as Ex. "C"), the Court held that removal of a case filed in state court prior to CAFA's effective date was not subject to the statute, and also that an amendment to the class definition subsequent to CAFA's effective date did not "recommence" a new action that would somehow be subject to CAFA. *Id.* at *9 ("[W]e reiterate, that creative lawyering will not be allowed to smudge the line drawn by the 2005 Act: class actions 'commenced' in state court on or before February 18, 2005, remain in state court."). In addition, the Seventh Circuit invited the plaintiff to request reimbursement of the additional legal expenses necessitated by the defendant's improper removal. *Id.* at *9 ("Defendants should recognize that 28 U.S.C. § 1447(c) makes an award of attorneys' fees the norm for improper removal.").

8.     As officers of the Court, all attorneys have an obligation to inform the Court of developments in the law which affect pending matters. In performance of that obligation and of the obligation to zealously represent their clients before the Court, undersigned counsel are compelled to call the Court's attention to these decisions.

DATED: August 11, 2005

Respectfully submitted,

**GILMAN AND PASTOR, LLP**

By:     /s/ Kenneth G. Gilman
Kenneth G. Gilman, BBO #192760
Douglas M. Brooks, BBO #058850
Douglas J. Hoffman, BBO #640472
60 State St., 37th Floor
Boston, MA 02109
Tel: (617) 742-9700
Fax: (617) 742-9701

104NX6

Print Request:  LEXSEE

Time of Request: August 11, 2005  05:33 PM EDT

Number of Lines: 951
Job Number:  1861:56543436

Client ID/Project Name: 8385

Note:




Research Information:

Lexsee 2005 U.S. Dist. LEXIS 15350




Send to:  HOFFMAN, DOUGLAS
          GILMAN AND PASTOR
          60 STATE ST FL 37
          BOSTON, MA 02109-1800

LEXSEE 2005 U.S. DIST. LEXIS 15350

**JERRY NATALE, On Behalf of Himself and All Others Similarly Situated, Plaintiff, v.
PFIZER INC. Defendant, SHERRY KWAAK, On Behalf of Herself and All Others
Similarly Situated, Plaintiff, v. PFIZER INC. Defendant.**

**CIVIL ACTION NO. 05-10590-WGY, CIVIL ACTION NO. 05-10591-WGY**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

*2005 U.S. Dist. LEXIS 15350*

**July 28, 2005, Decided**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff class representatives filed separate class action lawsuits against defendant pharmaceutical corporation in a Massachusetts state court. The corporation removed the two actions to federal court, pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2 (2005). The representatives filed motions to remand the two actions to the state court.

**OVERVIEW:** The representatives claimed that the corporation engaged in misleading advertising. The corporation contended that removal to federal court was proper under the Class Action Fairness Act of 2005, Pub. L. No. 109-2. The representatives countered that removal was improper because their actions were filed in the state court before the Act was enacted. One representative also alleged that diversity jurisdiction under *28 U.S.C.S. § 1332*(a) did not exist. The court found that (1) the Act did not apply as the cases were commenced when they were filed with the state court before the Act was enacted; (2) diversity jurisdiction was improper in one case as the representative did not seek disgorgement of all profits but rather only the benefit conferred upon the corporation by the representative and the class members; (3) an award of fees and costs was improper as the corporation's legal argument and position were fairly supportable or at least worthy of judicial consideration in that the interpretation of the Act was less than clear; and (4) the issue warranted a *28 U.S.C.S. § 1292*(b) interlocutory appeal and certification to the United States Court of Appeals for the First Circuit.

**OUTCOME:** The court found that the motions to remand would have been allowed; however, given that the matters involved a controlling issue of law, the court certified a question to the United States Court of Appeals for the First Circuit. If the corporation were to opt not to pursue an appeal or if the circuit court were to decline to exercise its discretion, then the court would promptly remand the matters to the state court.

**CORE TERMS:** removal, class action, Class Action Fairness Act, disgorgement, diversity jurisdiction, federal jurisdiction, lawsuit, commence, amount in controversy, certification, civil action, aggregation, legislative history, unpublished opinion, commencement, persuasive, date of filing, question of law, jurisdictional, conferred, quotation, interpreting, diversity, statutory interpretation, undivided interest, effective date, interstate, bipartisan, interlocutory appeal, statutory language

**LexisNexis(R) Headnotes**

*Civil Procedure > Class Actions > Prerequisites*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Action*
*Civil Procedure > Removal > Basis for Removal*
*Civil Procedure > Removal > Removal Proceedings*
*Governments > Legislation > Effect & Operation > Operability*
[HN1] The Class Action Fairness Act of 2005, Pub. L. No. 109-2, § 9 (2005), provides that the Act applies to any case commenced on or after February 18, 2005, the date of enactment, of the new federal class action law. Pub. L. No. 109-2.

*Civil Procedure > Class Actions > Prerequisites*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Action*
*Civil Procedure > Pleading & Practice > Filing of Complaint*
*Civil Procedure > Removal > Removal Proceedings*
[HN2] A removed action is commenced as of the date of filing in the state court.

*Civil Procedure > Class Actions > Prerequisites*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Action*

***Civil Procedure > Removal > Basis for Removal***
***Civil Procedure > Removal > Removal Proceedings***
[HN3] Among other things, the Class Action Fairness Act of 2005, Pub. L. No. 109–2 (2005), amends *28 U.S.C.S. § 1332,* in pertinent part, to establish original subject matter jurisdiction in federal courts over class actions, and amends *28 U.S.C.S. § 1453,* to allow removal jurisdiction from state courts in those cases in which (1) the class consists of at least 100 proposed members; (2) the matter in controversy is greater than $5,000,000 after aggregating the claims of the proposed class members, exclusive of interest and costs, Pub. L. No. 109–2, § 4, and (3) in pertinent part, any member of a class of plaintiffs is a citizen of a different state from any defendant.

***Civil Procedure > Class Actions > Prerequisites***
***Civil Procedure > Jurisdiction > Diversity Jurisdiction***
***Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Action***
***Civil Procedure > Removal > Basis for Removal***
***Civil Procedure > Removal > Removal Proceedings***
[HN4] The primary mechanisms, in the Class Action Fairness Act of 2005, Pub. L. No. 109–2 (2005), for expanding jurisdiction both (1) replaces the strict complete diversity requirement with a lenient rule now granting jurisdiction if any diversity exists between plaintiffs and defendants and (2) allows for the claims to be aggregated when calculating and satisfying the $75,000 amount in controversy required. Still, not all class actions may be heard in federal court subsequent to the Act. Some class actions may yet be heard in state court — those class actions in which all parties reside in the same state, those with fewer than 100 plaintiffs or with less than $5 million at issue, those where a state government is the main defendant, those against a company in its home state if two–thirds or more of the plaintiffs are residents of such state, and those involving local matters. Pub. L. No. 109–2, § 4 (2005) (amending section *28 U.S.C.S. § 1332).*

***Civil Procedure > Class Actions > Prerequisites***
***Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Action***
***Civil Procedure > Removal > Basis for Removal***
***Civil Procedure > Removal > Removal Proceedings***
***Governments > Legislation > Effect & Operation > Operability***
[HN5] See Pub. L. No. 109–2, § 9 (2005).

***Civil Procedure > Class Actions > Prerequisites***
***Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Action***
***Civil Procedure > Removal > Basis for Removal***
***Civil Procedure > Removal > Removal Proceedings***
[HN6] The Class Action Fairness Act of 2005, Pub. L. No. 109–2 (2005), modifies the standard rules for removal un-

der the Federal Rules of Civil Procedure. Pub. L. No. 109–2, § 4 (2005) (amending *28 U.S.C.S. § 1453,* the removal statute pertaining to class action lawsuits).

***Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Action***
***Civil Procedure > Removal > Basis for Removal***
***Civil Procedure > Removal > Postremoval Remands***
***Civil Procedure > Removal > Removal Proceedings***
***Evidence > Procedural Considerations > Burdens of Proof***
[HN7] Under the Class Action Fairness Act of 2005, Pub. L. No. 109–2 (2005), the burden of removal is on the party opposing removal to prove that remand is appropriate.

***Civil Procedure > Appeals > Appellate Jurisdiction > Interlocutory Orders***
***Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Action***
***Civil Procedure > Removal > Basis for Removal***
***Civil Procedure > Removal > Postremoval Remands***
***Civil Procedure > Removal > Removal Proceedings***
[HN8] Pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109–2 (2005), any individual defendant may, without the approval of the other defendants, remove a class action more than one year after the filing of the case in state court, including a defendant who is a citizen of the state in which such action was filed. *28 U.S.C.S. §§ 1441*(b), *1446*(b), and *1453*(b). Furthermore, parties are now granted an appeal of a decision on a motion to remand a case removed to federal court; the decision to allow such appeal is left to the discretion of the courts of appeals.

***Governments > Legislation > Interpretation***
[HN9] The cardinal maxim of statutory interpretation is that a court is to refer to the legislative intent should any ambiguity exist.

***Civil Procedure > Class Actions > Prerequisites***
***Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Action***
***Civil Procedure > Pleading & Practice > Filing of Complaint***
***Civil Procedure > Removal > Basis for Removal***
***Civil Procedure > Removal > Removal Proceedings***
[HN10] A case is commenced for purposes of the Class Action Fairness Act of 2005, Pub. L. No. 109–2 (2005), when it is filed with a state court.

***Civil Procedure > Costs & Attorney Fees > Attorney Fees***
***Civil Procedure > Costs & Attorney Fees > Litigation Costs***
***Civil Procedure > Removal > Postremoval Remands***
[HN11] *28 U.S.C.S. § 1447*(c) allows a district court to order a defendant to pay just costs and any actual expenses,

including attorney fees incurred as a result of a removal.

***Civil Procedure > Appeals > Appellate Jurisdiction > Interlocutory Orders***
***Civil Procedure > Costs & Attorney Fees > Attorney Fees***
***Civil Procedure > Costs & Attorney Fees > Litigation Costs***
***Civil Procedure > Removal > Postremoval Remands***
[HN12] See *28 U.S.C.S. § 1292*(b).

***Civil Procedure > Appeals > Appellate Jurisdiction > Certified Questions***
***Civil Procedure > Appeals > Appellate Jurisdiction > Interlocutory Orders***
[HN13] Pursuant to *28 U.S.C.S. § 1292*(b), only rare cases will qualify for the statutory anodyne; indeed, it is apodictic in the First Circuit that interlocutory certification of this sort should be used sparingly and only in exceptional circumstances, and where the proposed intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority.

***Civil Procedure > Appeals > Appellate Jurisdiction > Certified Questions***
***Civil Procedure > Appeals > Appellate Jurisdiction > Interlocutory Orders***
[HN14] *28 U.S.C.S. § 1292*(b) certification should be used sparingly and only in exceptional circumstances. Certain instances, however, warrant § 1292(b) certification.

**COUNSEL:** [*1] For Pfizer, Inc., (Defendant): William M. Cowan, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC, Boston, MA; Richard A. DeSevo, Kaye Scholer LLP, New York, NY; Dora L. Kripapuri, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC, Boston, MA; Thomas A. Smart, Kaye, Scholer LLP, New York, NY.

For Sherry Kwaak, (Plaintiff): Kenneth D. Quat, Concord, MA.

**JUDGES:** WILLIAM G. YOUNG, CHIEF JUDGE.

**OPINIONBY:** WILLIAM G. YOUNG

**OPINION:**

MEMORANDUM AND CERTIFICATION

YOUNG, C.J.

Jerry Natale, on behalf of himself and all others similarly situated ("Natale"), and Sherry Kwaak, on behalf of herself and all others similarly situated ("Kwaak"), challenge the removal of this case from state court and whether this Court, pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109–2 (2005) (the "Act") (amending

*28 U.S.C. §§ 1332*, *1453*), properly has jurisdiction over these matters. The motions to remand of Natale, Civ. Action No. 05–10590, and Kwaak, Civil Action No. 05–10591, will be treated identically here for discussion purposes. n1

[HN1] Section 9 of the Act provides that the Act applies to any case "commenced on or after [February 18, 2005,] the date of enactment," of [*2] the new federal class action law. Pub. L. No. 109–2 (emphasis added). The controlling issue to be decided by this Court is: under section 9 of the Class Action Fairness Act of 2005, is a civil action "commenced" on the date a class action complaint is filed by a plaintiff in the state court or on the date a case is removed by a defendant to the federal court? This Court answers this question as did the United States Courts of Appeals for the Seventh and Tenth Circuits and holds that [HN2] an action is commenced as of the date of filing in the state court.

**I. Relevant Facts and Procedural History**

**A. Natale v. Pfizer**

On February 14, 2005, Natale commenced this action by filing his state court class action complaint in the Massachusetts Superior Court sitting in and for the County of Middlesex ("Middlesex Superior Court"). Mem. in Supp. of Mot. to Remand [Civ. A. No. 05–10590 Doc. No. 10] at 3 ("Natale Mem."). Natale sought "certification of a statewide class consisting of all Massachusetts consumers who purchased Listerine(R) Antiseptic Mouthrinse [] between February 11, 2002 and the present." Id. The advertising statement that was the subject of the class action [*3] suit was: "Listerine as effective as Floss — Clinical studies prove it." Id. Natale argues that this statement "knowingly contained materially false and misleading misrepresentations, statements and omissions" and seeks to receive damages under a theory of common law fraud. Id.

> n1 Kwaak challenges Pfizer's alternate ground for removal in that case; this alternative argument will be discussed separately at the end of this memorandum.

On March 25, 2005, Pfizer filed, pursuant to the Act, a notice of removal with the United States District Court removing the civil action from the Middlesex Superior Court. Id. at 4. Pfizer asserts that federal diversity jurisdiction exists under the new Act and argues that, under section 9 of the Act, a case is commenced in federal court upon a timely removal to federal court rather than on the date of filing with the state court.

## B. Kwaak v. Pfizer

Kwaak filed her state class action complaint against Pfizer in the Middlesex Superior Court on January 13, 2005, and [*4] a first amended complaint on March 2, 2005. Mem. of Law in Supp. of Pl.'s Mot. to Remand [Civ. A. No. 05-10591 Doc. No. 11] at 3 ("Kwaak Mem."). Like Natale, Kwaak seeks "certification of a statewide class consisting of all Massachusetts consumers who purchased Listerine(R) Antiseptic Mouthrinse [] from June 1, 2004 through the present." Id. The Kwaak case focuses on the same allegedly misleading misrepresentation — "Listerine(R) as effective as Floss — Clinical studies prove it" — as does Natale's claim. Id. Kwaak seeks damages for herself and the class under the theory of unjust enrichment and under the Massachusetts consumer protection act. Id.; *Mass. Gen. Laws ch. 93A, § 2.*

On March 25, 2005, Pfizer filed a notice of removal with the district court again arguing that federal diversity jurisdiction exists pursuant to the removal provisions of the Act because "commence" means removal to the federal court. Kwaak Mem. at 4. In Kwaak's matter, Pfizer argues in the alternative that federal diversity jurisdiction exists because Kwaak's "request for relief in the form of disgorgement among all class members is a common and undivided interest' [*5] in excess of $75,000, exclusive of interest and costs." Id.

The parties presented oral argument on June 13, 2005 as to whether this Court has jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005. This Court took the matter under advisement properly to consider and interpret the Act as applied to these matters. Tr. of Mot. Hr'g of June 13, 2005 at 13.

## II. Class Action Fairness Act of 2005

### A. General Overview of the Act

The Class Action Fairness Act of 2005 was passed by Congress and signed into law by President George W. Bush on February 18, 2005. n2 Pub. L. 109-2 (2005). Its enactment was heralded as a product of bipartisan efforts. n3 Yet, the Act was the subject of much controversy and debate. n4 See 151 Cong. Rec. H643-01, H643 (daily ed. Feb. 16, 2005) (statement of Rep. Gingrey) (noting that "even with such bipartisan support . . . there are differences of opinion on how to reform our class action system."); Rick Knight, The Class Action Fairness Act of 2005: A Perspective, 52 Fed. Law. 46 (June 2005) ("Despite the roiling public brouhaha surrounding this and other — so-called national litigation — reform, the jury [*6] is likely to be out on [the Act] . . . for years to come.").

n2 The Act passed in the Senate on February

10, 2005 by a vote of 72-26, and passed in the House on February 17, 2005 by a vote of 279-149. William Branigin, Congress Changes Class Action Rules, Wash. Post, Feb. 17, 2005, available at http://www.washingtonpost.com/wp-dyn/articles/A32674-2005Feb17.html; Senate Roll Call Votes 109th Cong., 1st Sess., Vote Summary On the Passage of the Bill S.5 (Feb. 10, 2005), available at

http://www.senate.gov/legislative/LIS/roll_call_lists/roll_call_v gress=109&session=l&vote=00009.

The state of litigation in this country is said by some to have called for reform for years as it has "seemingly run amok." Thomas F. Burke, Lawyers, Lawsuits, and Legal Rights, at 2 (Univ. of Cal. Press 2002) (writing that while some of the proliferating class action lawsuits in this country might read as "amusing vignettes," "a serious theme underlies these stories [as they are] parables about a fundamental breakdown in American society"). See also 151 Cong. Rec. H643-01, H648 (daily ed. Feb. 16, 2005) (statement of Rep. Gingrey) (noting that legislation similar to the Act, namely the Class Action Jurisdiction Act of 1998, the Interstate Class Action Jurisdiction Act of 1999, and the Class Action Fairness Acts of 2001 and 2003, were the subject of hearings, markups, debates, and successful votes in the 105th-108th Congresses); 151 Cong. Rec. H723-01, H726 (daily ed. Feb. 17, 2005) (statement of Rep. Sensenbrenner) ("Today marks the culmination of nearly a decade of legislative efforts to end systematic abuse of our Nation's class action system. We stand on the cusp of sending landmark legislation on civil-justice reform to the President that has been approved by increasing majorities each time it has been considered by the House in each of the last three Congresses . . . ."); id. (noting that the Act's "core provisions are similar to those passed . . . in the last three Congresses"); The Class Action Fairness Act of 2005, Dates of Consideration and Passage, S. Rep. 109-14, 2005 U.S.C.C.A.N. 3, 3-4 (reviewing the history of attempted tort reform legislation between 1999 and 2005).

[*7]

n3 This sentiment was echoed by President Bush when signing the bill into law. See President Signs Class-Action Fairness Act of 2005, Remarks of President George W. Bush (Feb. 18, 2005), available at

http://www.whitehouse.gov/news/releases/2005/02/print/20050218-11.html ("Remarks of President Bush") ("The bill I'm about to sign is a model of effective, bipartisan legislation. By working together over several years, we have agreed on a practical way to begin restoring common sense and balance to America's legal system. . . . Congress showed what is possible when we set aside partisan differences and focus on . . . [doing] what's right for . . . the country."); 151 Cong. Rec. H643-01 (daily ed. Feb. 16, 2005) (statement of Rep. Gingrey) ("As demonstrated by the [Senate], there is bipartisan support for the measure. . . . In fact, the [Senate] passed this measure . . . with strong bipartisan support.").

n4 The Act has been described in a positive light as "President Bush's first major legislative victory [of his second presidential] term." Terry Carter, Class Action Climax — Legislation Will Create Problems, Opportunities for Plaintiffs Bar, 4 No.7 A.B.A. J. E-Rep. 1 (Feb. 18, 2005); Remarks of President Bush ("The Class-Action Fairness Act of 2005 marks a critical step toward ending the lawsuit culture in our country. The bill will ease the needless burden of litigation on every American worker, business, and family."). But see Class Action Fairness Act of 2005, available at www.dkosopedia.com/index.php/Class_Action_Fairness_Act_of_2005_(CAFA) (opining that the "primarily Republican-sponsored bill" runs counter to what conservatives' usually claim they seek — it increases the size and control of the federal government at the expense of state's rights.").

During congressional debates, the Act symbolized a battle between the common man and corporate behemoths. See 151 Cong. Rec. H723-01, H726 (daily ed. Feb. 17, 2001) (statement of Rep. Conyers) (noting that vis a vis the Act, the Republican "majority begins their assault on our Nation's civil justice system . . . . [and] attempt[s] to preempt State class actions."); 151 Cong. Rec. H643-01, H644 (daily ed. Feb. 16, 2005) (statement of Rep. McGovern) ("It looks as though the Republican leadership has finally gamed the system to the point where it appears that they will succeed in severely limiting the rights of many of the most vulnerable citizens in this country."); id. ("This bill . . . will limit fairness, it will limit justice, and it will ultimately hurt everyday Americans . . . . It closes the courthouse door in the face of people who need and deserve help."); id. (quoting a letter from fourteen state attorneys general of the opinion

that the Act "unduly limits the right of individuals to seek redress for corporate wrongdoing in their state courts" and "strongly recommending that the legislation not be enacted in its present form."); id. at H645 (emphasizing that the "AARP, AFL-CIO, Consumer Federation of America, Consumers Union, Leadership Conference on Civil Rights, NAACP and Public Citizen all oppose" the Act as passed); id. (statement of Rep. Markey) (arguing the Act is "all about . . . . protecting the country club members from the responsibility for the harm which they potentially inflict from their corporate perspectives on ordinary citizens within our society."); Mike France, How to Fix the Tort System, Bus. Week Online (Mar. 14, 2005), available at

http://www.businessweek.com/magazine/content/05_11/b3924[] (quoting Frederick M. Baron, the former President of the Association of Trial Lawyers of America ("ATLA") who asserts that "corporate America wants immunity from misdeeds through tort reform").

But see id. (stating that the "problem is, much of the discussion has been distorted by hyperbole from both sides"); 151 Cong. Rec. H723-01, H727 (daily ed. Feb. 17, 2001) (statement of Rep. Boucher) (emphasizing that the Act's changes are procedural in nature and that the legislation makes no changes to the substantive recovery rights of American citizens); Remarks of President Bush (stating, while referring to the coupon settlement and plain explanation provisions of the Act, that "the bill provides new safeguards to ensure that plaintiffs and class-action lawsuits are treated fairly"); The Class Action Fairness Act of 2005, Mondaq Bus. Briefing (May 4, 2005), available at 2005 WLNR 6993121 (highlighting the "consumer class action *bill of rights* designed to eliminate certain of the more flagrant perceived abuses of the class action device by the plaintiffs' bar" (internal quotations omitted)).

Representatives focused a portion of the debates on the failure to comport with normal procedures. See, e.g., 151 Cong. Rec. H723-01, H736 (daily ed. Feb. 17, 2005) (statement of Rep. Watt) (asserting that this session of the Congress has seemed to "dispense with regular order, deny committee consideration, and to leave Members with 1 to 2 minutes to hurriedly voice [their] concerns" with respect to the Act).

[*8]

The Act is expected by some to be "problematic."

Georgene M. Vairo, Class Action Fairness, Nat'l L.J., June 27, 2005 at 12. It was enacted to "address some of the most egregious problems in class action practice." The Class Action Fairness Act of 2005, Dates of Consideration and Passage, S. Rep. 109–14, 2005 U.S.C.C.A.N. 3, 6 (describing the legislation as a "modest, balanced step" and not a "panacea" in reform). [HN3] Among other things, the Act amends *28 U.S.C. § 1332*, in pertinent part, to establish original subject matter jurisdiction in federal courts n5 over class actions, and amends *28 U.S.C. § 1453*, to allow removal jurisdiction from state courts n6 in those cases in which (1) the class consists of at least 100 proposed members; (2) the matter in controversy is greater than $5,000,000 after aggregating the claims of the proposed class members, exclusive of interest and costs, Pub. L. 109–2, § 4, and (3) in pertinent part, n7 "any member of a class of plaintiffs is a citizen of a different state from any defendant." S. Rep. 109–14, 2005 U.S.C.C.A.N. at 28, 34 (emphasis added); see also Andree Sophia Blumstein, A New [*9] Road to Resolution — The Class Action Fairness Act of 2005, *41 Tenn. Bar J. 16 (Apr. 2005)* (noting that, after the passage of the Act, "bare-bones minimal diversity" is sufficient for purposes of federal diversity jurisdiction (internal quotation marks omitted)).

n5 In opposition to the Act, some have touted the scarcity of federal court resources. See Lorraine Woellert, Commentary: A Phony Cure — Shifting Class Actions to Federal Courts is No Reform, Bus. Week Online (Feb. 7, 2005), available at http://www.businessweek.com/magazine/content/05_06/b3919054_mz011.htm (writing that, " at a time when federal courts are already overburdened, [the Act] will make case backlogs even longer" and referring to the existing caution within the federal judiciary and the U.S. Judicial Conference); id. (noting that the Chief Justice of the United States William H. Rehnquist has himself warned of the existing budget constraints in a January 1, 2005 annual report); Letter from Leonidas Ralph Mecham, Secretary, Judicial Conference of the United States to the Hon. Orrin G. Hatch, Chair, Senate Committee on the Judiciary (Mar. 26, 2004), available at http://www.atla.org/homepage/fjc.pdf (ATLA website) (stating ATLA's position that "if Congress determines that certain class actions should be brought within the original and removal jurisdiction of the federal courts on the basis of minimal diversity of citizenship and an aggregation of claims, Congress should be encouraged to include sufficient limitations and threshold requirements so that federal courts are not unduly burdened and states' jurisdiction over

in-state class actions is left undisturbed"); id. (explaining that the judicial conference maintained with respect to this Act the same concerns as it had with the earlier, 1999 class action litigation reform, specifically that "the provisions would add substantially to the workload of the federal courts and are inconsistent with principles of federalism."); Congressional Budget Office Cost Estimate — Class Action Fairness Act of 2005 (Feb. 7, 2005) (as reported by the Senate Committee on the Judiciary on February 3, 2005) (estimating the costs of implementing the Act, which would include hearing "a few hundred additional cases . . . each year," "would cost the federal district courts about $7 million a year, subject to appropriation of the necessary funds" and "could also increase the need for additional district judges.").

But see S. Rep. 109–14, 2005 U.S.C.C.A.N. at 13 (noting that the influx of class action lawsuits filed in state courts are "stretching the resources of the state court systems"); id. at 15 (highlighting the limited resources of the state courts); id. at 48 (noting that state courts are "more burdened" than the federal courts and "have comparatively crushing caseloads"); id. at 55 (noting a state court judge is likely to have triple the number of cases of a federal judge at a given time).

[*10]

n6 See Woellert (reporting the view of corporate attorneys that state courts, particularly those in rural areas, are "judicial hellholes" and are "hostile jurisdictions [that] have stung" many American companies; see also S. Rep. 109–14, 2005 U.S.C.C.A.N. at 14–15 (stating that part of the reason for the increase of state court filed class action lawsuits is that certain magnet jurisdictions, such as Illinois' Madison, Cook, and St. Clair counties, are outcome-predictable and plaintiff-friendly, and further asserting that certain state court judges "are lax about following the strict requirements of *Rule 23*" and "lack the necessary resources to supervise proposed class settlement properly," and that this influx of class actions has "overwhelmed their dockets.")

The Act was described during debates as a remedy for overzealous plaintiffs' attorneys and an "attempt to put an end to the type of gaming engaged in by plaintiffs' lawyers to keep cases in State court." 151 Cong. Rec. H723-01, H726, H729 (daily ed. Feb. 17, 2005) (statement of Rep. Sensenbrenner)

("Class actions were originally created to efficiently address a large number of similar claims by people suffering small harms. Today they are too often used to efficiently transfer the large fees to a small number of trial lawyers, with little benefit to the plaintiffs."); Thomas A. Dickerson and Kenneth A. Manning, Summary of Article 9 Class Actions in 2004, N.Y.L.J., Apr. 24, 2005 (describing the enactment of the legislation "as a federal response to abuses, real and perceived, in the prosecution of class actions, primarily in certain pro–plaintiff state courts"). See generally Class Action Fairness Act — A Panel of Experts Discusses Whether the New Law Governing Class Actions is a Needed Fix or a Bad Idea, Nat'l L.J., May 16, 2005, at 18 (describing the various reasons for the passage of the Act, with some panelists ardent in support of the Act with another prepared to have "a full-blown tantrum" in staunch opposition to the Act due, in part, to federalism concerns).

The passage of the Act marked a defeat for ATLA, with its substantial lobbying budget and a particularly marked interest in preventing tinkering with class action procedures. Burke at 46–47 (noting that ATLA has "one of the wealthiest political action committees in the nation" and that, given its low membership and "poor public image," it "chose an insider approach to influencing Congress."). Burke describes plaintiffs attorneys' self–image as "'equalizers' who roam through American society looking for injustice, taking the side of victimized individuals against large, uncaring institutions." Id. at 48.

[*11]

n7 Additional provisions are included in the Act to provide for diversity in matters involving parties that are foreign states or citizens.

As described by Senator Arlen Specter on behalf of the Senate Judiciary Committee:

One of the primary historical reasons for diversity jurisdiction "is the reassurance of fairness and competence that a federal court can supply to an out–of–state defendant facing suit in state court." Because interstate class actions typically involve more people, more money, and more interstate commerce ramifications than any other type of lawsuit, the Committee firmly believes that such cases properly belong in federal court. To that end,

this bill (a) amends *section 1332* to allow federal courts to hear more interstate class actions on a diversity jurisdiction basis, and (b) modifies the federal removal statutes to ensure that qualifying interstate class actions initially brought in state courts may be heard by federal courts if any of the defendants so desire.

S. Rep. 109–14, 2005 U.S.C.C.A.N. at 6, 7 (stating the judiciary committee's view [*12] that the diversity and removal statutes as they currently apply to class action lawsuits "have facilitated a parade of abuses, and are thwarting the underlying purpose of the constitutional requirement of diversity jurisdiction") (internal footnotes omitted, emphasis added).

[HN4] The primary mechanisms for expanding jurisdiction both (1) replaces the strict complete diversity requirement with a lenient rule now granting jurisdiction if any diversity exists between plaintiffs and defendants and (2) allows for the claims to be aggregated when calculating and satisfying the $75,000 amount in controversy required. Still, not all class actions may be heard in federal court subsequent to the Act. Some class actions may yet be heard in state court — those class actions in which all parties reside in the same state, those with fewer than 100 plaintiffs or with less than $5 million at issue, those where a state government is the main defendant, those against a company in its home state if two–thirds or more of the plaintiffs are residents of such state, and those involving local matters. Pub. L. 109–2, § 4 (amending section *28 U.S.C.A. § 1332*); S. Rep. 109–14, 2005 [*13] U.S.C.C.A.N. at 27, 29, 48 (describing the Act as "narrowly tailored" to "leave[] most legitimately local disputes in state court, while ensuring that large, interstate class actions like those typically brought in [state] magnet courts can be heard in federal court"). n8

n8 While these suits against Pfizer tend to have exactly the "national" flavor considered a purpose of federalizing certain class actions under the Act, S. Rep. 109–14, 2005 U.S.C.C.A.N. at 27, the obstacle to its application here — and an exceptionally decisive obstacle at that — is the effective date of the statute.

The dispute here arises out of the section 9 language that [HN5] "amendments made by this Act shall apply to any civil action commenced on or after the date of enactment." Pub. L. 109–2, § 9 (emphasis added). So the question arises: do federal courts have jurisdiction over cases commenced in state court prior to the passage of the Act but removed subsequent to its enactment? n9

n9 To be certain, this is not the only question that will arise as a result of the passage of the Act. "A similarly intriguing question is how to deal with an action filed before February 18, 2005, but dismissed without prejudice, so that a wholly new, amended complaint is filed after February 18, 2005?  As they say, stay tuned to see how courts will handle these transitional questions." Robert E. Bartkus, Back to the Future? Federal Class Action Reforms Leave Many Questions Unanswered, *180 N.J.L.J. 284*, Apr. 25, 2005.

[*14]

**B. Removal Provisions of the Act**

[HN6] The Act modifiest the standard rules for removal under the Federal Rules of Civil Procedure. Pub. L. 109–2, § 4 (amending *28 U.S.C. § 1453*, the removal statute pertaining to class action lawsuits); S. Rep. 109–14, 2005 U.S.C.C.A.N. at 10 (explaining that both removal jurisdiction and diversity jurisdiction seek to guarantee out–of–state defendants a neutral federal arena in which to be heard).

[HN7] Under the Act, the burden of removal is on the party opposing removal to prove that remand is appropriate. Berry v. American Express Publ'g Corp., et al., SA CV 05–302 AHS at 6–7 (S.D. Cal. 2005) (unpublished opinion), available at http://www.cacd.uscourts.gov/cacd/recentpubop.nsf/0/7855b691877dc bc388257022004e7c0f/   $FILE/SACV05–302AHS.pdf (hereinafter "Berry") (explaining that, with respect to the Act, "the Committee Report expresses a clear intention to place the burden of removal on the party opposing removal to demonstrate that an interstate class action should be remanded to state court." (emphasis added)); n10 id. at 8 (citing S. Rep. 109–14, 2005 U.S.C.C.A.N. at 41 ("It is the Committee's intention [*15] with regard to each of these exceptions that the party opposing federal jurisdiction shall have the burden of demonstrating the applicability of an exemption."); id. ("The named plaintiff(s) should bear the burden of demonstrating that a case should be remanded to state court.")).

n10 This opinion is not signed or dated by the court.

The amendments and expansion of federal diversity jurisdiction, including the expansion of removal of state actions, are "the most publicized changes associated with the . . . Act." Joseph M. Callow Jr., The Class Action Fairness Act of 2005: Overview and Analysis, 52 Fed. Law. 26 (May 2005). [HN8] Pursuant to the Act, any individual defendant may, without the approval of the other

defendants, remove a class action more than one year after the filing of the case in state court, including a defendant who is a citizen of the state in which such action was filed. *28 U.S.C. §§ 1441(b), 1446(b), 1453(b)*; see Guy V. Amoresano and Michael R. McDonald, Class [*16] Litigants Face Tougher Forum — Will Closer Scrutiny By Federal Judges Curb Costs? *180 N.J.L.J. 282*, Apr. 25, 2005 (noting that the Act removes these "impediments" to federal jurisdiction). Furthermore, parties are now granted an appeal of a decision on a motion to remand a case removed to federal court; the decision to allow such appeal is left to the discretion of the courts of appeals. Compare *28 U.S.C. § 1453(c)* (allowing a discretionary appeal to the court of appeals of a district court decision to remand a matter to state court and requiring that a court of appeals exercising such discretion and hearing such appeal must, generally, render an opinion in sixty days or less), with *28 U.S.C. § 1447(d)* (establishing that, with the exception of civil rights cases under *28 U.S.C. § 1443*, "an order remanding a case to the State court from which it was removed is not reviewable upon appeal or otherwise.").

**C. Discussion**

**1. Precedent from the Seventh and Tenth Circuits and District Courts Interpreting the "Commence" Language of Section 9 of the Act**

**a. Tenth Circuit**

This [*17] Court is persuaded by the Tenth Circuit's reasoned and concise analysis in *Pritchett v. Office Depot, Inc., 404 F.3d. 1232 (10th Cir. 2005)*, one of the first courts generally to consider this issue and the first circuit court to rule on this specific point. In Pritchett, the Tenth Circuit rejected an argument identical to the one Pfizer now makes, and held that timely removal to federal court does not constitute commencement for purposes of section 9 of the Act. *Id. at 1235, 1238.* Affirming the decision n11 of Judge Marcia S. Krieger of the United States District Court for the District of Colorado, *360 F. Supp. 2d 1176 (D. Colo. 2005)*, the Tenth Circuit considered, among other things, the traditional trend of narrowly construing removal statutes and general tenets of statutory construction, as well as the meaning of the word "commenced," the Act's legislative history, and legal precedent. *Pritchett, 404 F.3d. at 1235–1238.*

N11 Three days after the Tenth Circuit affirmed the decision, Office Depot settled the matter for $3,300,000 dollars. See Employment Practices Solutions News Briefs: Office Depot Loses CAFA Claim, Settles Class Action for $3.3 Million, available at http://www.epexperts.com/modules.php?op=modload&name=N ticle&sid=1772 (last visited July 26, 2005). This

perhaps lends a measure of credibility to the argument that corporations are more likely to settle class action suits heard in the state courts. See S. Rep. 109–14, 2005 U.S.C.C.A.N. at 21 (describing the "judicial blackmail" function of state–filed class action suits in pressuring defendants to settle claims, however unfounded or lacking in merit); Remarks of President Bush (extolling the virtues of the Act prior to signing it into law and noting in particular that prior to the promulgation of the Act, "trial lawyers were able to drag defendants from all over the country into sympathetic local courts, even if those businesses had done nothing wrong. [As such, m]any businesses decided it was cheaper to settle the lawsuits, rather than risk a massive jury award.").

[*18]

The Tenth Circuit stated initially that its statutory analysis began with the plain language of the statute and was then "governed by traditional rules of statutory construction and rules pertaining to federal jurisdiction." *Id. at 1235* (looking, initially, at the plain language of the statute). The court highlighted the "general federal rule that a lawsuit is commenced at a discrete moment in time: the filing of the original complaint in a court of competent jurisdiction." Id. (citing *Fed. R. Civ. P. 3*) (emphasis added). Despite the Congressional intent to expand federal jurisdiction to encompass class action suits, the Tenth Circuit explained that the statute should not be expanded beyond Congressional intent and, to that end, it "is well–established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of [the federal courts'] constitutional role as limited tribunals." Id. (citing *Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108–109, 85 L. Ed. 1214, 61 S. Ct. 868 (1941))*. It therefore stated that, "if there is ambiguity as to whether [*19] the instant statute confers federal jurisdiction over [a] case, [the court] is compelled to adopt a reasonable, narrow construction." *Pritchett, 404 F.3d. at 1235* (deciding that the plaintiff's construction was the reasonable one) (emphasis added).

In considering the Act's legislative history, the Tenth Circuit described such history as a helpful "interpretative" tool. Id. The original language of the statute, as introduced in the House, provided both for removal of cases "'commenced' on or after the enactment date and . . . . cases in which a class certification order is entered on or after the enactment date." *Id. at 1235–36* (citing H.R. 516, 109th Cong. § 7 (2005)) (emphasis added). The latter portion was later dropped from the Act, thus including only those cases commenced after enactment. *Id. at 1236* ("The Senate version and the final statute provided only

for application of the Class Action Fairness Act to civil actions commenced' on or after the date of the Act.") (citation omitted)). As the Tenth Circuit specified,

> It is thus clear that Congress initially started out with broader language that could [*20] have included a number of then–pending lawsuits in state courts. By excising the House provision, Congress signaled an intent to narrow the removal provisions of the Act to exclude currently pending suits.

Id. (emphasis added); see id. (citing 151 Cong. Rec. S1080 (daily ed. Feb. 8, 2005) (statement of Sen. Dodd) ("[The Act] does not apply retroactively, despite those who wanted it to. A case filed before the date of enactment will be unaffected by any provision of this legislation.") and 151 Cong. Rec. H753 (daily ed. Feb. 17, 2005) (statement of Rep. Goodlatte) ("Since the legislation is not retroactive, it would have absolutely no effect on the 75 actions already filed against Merck in the wake of the Vioxx withdrawal." (emphasis added)); accord id. (noting that while "ordinarily, individual floor statements are entitled to little weight, . . . here, where they are consistent with and cast light upon the meaning of a specific change in the language between an earlier version of the bill and the final Act, the statements confirm our construction of the Act." (emphasis added)).

Finally, the Tenth Circuit fittingly [*21] observed that public policy required an interpretation of "commenced" to mean the filing in state court rather than the timely removal to federal court. It stated:

> Where the language of a statute is arguably ambiguous, courts also look to public policy considerations to cast further elucidation on Congress' likely intent. Here, we are mindful of the fact that Defendant's argument, if accepted, could have serious consequences for both the federal judiciary and our colleagues on the state bench. Permitting the Act to apply to currently pending state suits would, in the words of the chairman of the Senate Judiciary Committee, "be extraordinarily disruptive of many State court proceedings."

*Id. at 1237* (internal citations omitted, emphasis added).

Pfizer attempts to discredit Pritchett by suggesting that a Tenth Circuit case is not binding on this Court and, further, that the defendants in Pritchett had sought removal in an untimely manner, namely after the "30 days after service of complaint" window had passed. This

Court, however, receives the *Pritchett* opinion as significant persuasive authority and, as discussed infra, does [*22] not believe that the timeliness of the removal from state court or the proximity in time to the enactment date are germane to this Court's interpretation of the statutory language. Further, in reading Pritchett, one discerns that the Tenth Circuit articulated in no uncertain manner its general interpretation of the "commence" language as to any and all proceedings filed with the State Court prior to the effective date of the Act.

> We are mindful of the fact that Congress' goal in passing this legislation was to increase access to federal courts, and we also recognize that the Senate report instructs us to construe the bill's terms broadly. But these general statements do not provide carte blanche for federal jurisdiction over a state class action any time the statute is ambiguous. While it is clear the Congress wished to expand federal jurisdiction, when that expansion is made effective is what is at issue in this case, and that is an issue we approach cautiously.

*Id. at 1237 n.6* (internal citations omitted, emphasis added).

**b. Seventh Circuit**

Recently, in Knudsen v. Liberty Mut. Ins. Co., Judge Frank H. Easterbrook, [*23] writing for the court, declared the Seventh Circuit's agreement with the Tenth Circuit's holding Pritchett. *411 F.3d. 805, 806 (7th Cir. 2005)* ("We agree with Pritchett v. Office Depot, Inc. that [section] 9 of the new Act must be taken seriously." (internal citation omitted)). Judge Easterbrook continued: n12

> n12 Judge Easterbrook observed that a determination of whether the Act applied was proper as "a federal court always has jurisdiction to determine its own jurisdiction." *Knudsen, 411 F.3d. at 808* (quoting *United States v. Ruiz, 536 U.S. 622, 628, 153 L. Ed. 2d 586, 122 S. Ct. 2450 (2002)*).

Deconstructionist tactics do not permit [section 9's] evasion. The defendant in Pritchett contended that the notice of removal itself commenced a new case (the one in federal court). Rebuffing that effort to sidestep the legislative decision, Pritchett concluded that a civil action is "commenced" for purposes

of [section] 9 when it is filed in state court and [*24] not when some later step occurs in its prosecution. n13 ]

Id. (internal citations omitted, footnote and emphasis added). The Seventh Circuit noted that "equating filing with commencement is the norm in civil practice" and "although there are a few exceptions . . . none applies here." Id. (making clear its view on removal as commencement, by stating that "a new development in a pending suit no more commences a new suit than does its removal") (emphasis added). n14

> n13 Judge Easterbrook did go a step further in the decision, indicating a slight broadening of the Seventh Circuit's appearingly narrow interpretation of this language. He wrote for the court:
>
> > [A] new claim for relief (a new "cause of action" in state practice), the addition of a new defendant, or any other step sufficiently distinct that courts would treat it as independent for limitations purposes, could well commence a new piece of litigation for federal purposes even if it bears an old docket number for state purposes. Removal practice recognizes this point: an amendment to the pleadings that adds a claim under federal law (where only state claims had been framed before), or adds a new defendant, opens a new window of removal. We imagine, though we need not hold, that a similar approach will apply under the . . . Act, perhaps modeled on *Fed. R. Civ. P. 15(c)*, which specifies when a claim relates back to the original complaint (and hence is treated as part of the original suit) and when it is sufficiently independent of the original contentions that it must be treated as fresh litigation.
>
> *Knudsen, 411 F.3d. at 807* (internal citations omitted, emphasis added). This language in Knudsen is being interpreted by attorneys as "strongly suggesting that there is a category of cases which, although filed in state court before February 18, 2005, may nonetheless become removable under [the Act] based on post–February 18th pleading amendments that add new defendants or new causes of action." See, e.g., O'Melveny & Myers LLP, Electronic Class Action Alert, Seventh Circuit Suggests that

Amended Complaints May Trigger Removal Under Class Action Fairness Act (June 9, 2005), available at http://www.omm.com/webdata/content/publications/client_alert_class_action_2005_06_09.htm. That issue is different from, and beyond the scope of, the matter here.

[*25]

n14 The Seventh Circuit stated that the case against Liberty Mutual Life Insurance "has been ongoing" and ruled that "Liberty Mutual Insurance Company cannot remove five years after this suit was commenced just because a nonparty corporate sibling has been mentioned in plaintiffs' latest papers."). *Id. at 806, 807-08* (explaining the distinguishable outcome should Liberty Mutual Fire Insurance Company have been newly-added as Liberty Mutual Fire Insurance Company "could enjoy a right to remove under the 2005 Act, for suit against it would have been commenced after February 18, 2005." (second emphasis added)).

### c. Pfizer Line of District Court Cases n15

n15 Other district courts have addressed the Act generally, but not specifically the "commence" language or the removal provisions. See *Fears v. Wilhelmina Model Agency, Inc., 2005 U.S. Dist. LEXIS 7961, No. 02-Civ. 4911 (HB), 2005 WL 1041134, slip op. at *4 (S.D.N.Y. May 5, 2005)* (unpublished opinion) (noting that, in the context of attorneys fees, the Act "evidenced congressional desire to reform the tort system and limit exorbitant attorneys' fees" and that Congress "unequivocally . . . expanded federal diversity jurisdiction."); Berry at 3-4 (discussing the burdens of proof as to jurisdictional questions and removal pre-and post-Act).

[*26]

A number of judges have already rejected Pfizer's previous attempts to urge the application of the Act to class actions in a procedural posture identical to the matter here. In Hankins v. Pfizer, Inc., CV 05-1797 ABC (C.D. Cal. Mar. 25, 2005) (unpublished opinion) (hereinafter "Hankins"), Judge Audrey Collins of the United States District Court of the Central District of California rejected Pfizer's attempt to remove the case to federal court under the new Act. Judge Collins first cited the "strong presumption" against removal jurisdiction generally. Id. at 3 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–89, 82 L. Ed. 845, 58 S. Ct. 586 (1938)).* She then continued to distinguish, *Hunt v. Transport Indem. Ins. Co., 1990 U.S. Dist. LEXIS 16555, No. 90-00041 ACK, 1990 WL 192483 (D. Haw. Jul. 30, 1990)* (unpublished opinion), also cited by Pfizer. Hankins at 3 ("Hunt is not controlling authority. In any event, if this Court were to adopt similar reasoning, this Court would construe [the Act] against removal such that the date of filing in state court controls, given the strong presumption against removal." (emphasis added)). This is persuasive; had Congress wished [*27] to have broadened the reach of the removal provisions, it could have done so explicitly. n16

n16 As noted supra, Congress actually narrowed the scope of the Act by specifically removing from the scope of the Act's removal jurisdiction provisions certain cases covered in the original House version — cases in which class certification was ordered on or after the enactment date.

In *Smith v. Pfizer, Inc., 2005 U.S. Dist. LEXIS 16290, 05-cv-0112-MJR (S.D. Ill. Mar. 24, 2005)* (unpublished opinion) (hereinafter "Smith"), Judge Michael Reagan, in the first of his two decisions on this issue, indicated that Pfizer's claim in the alternative — that the federal court had subject matter jurisdiction in light of the recent enactment of the Act — lacked merit. *Smith 2005 U.S. Dist. LEXIS 16290, at *16* ("The Court rejects Pfizer's argument that commenced' means the date the case reached federal court (i.e. the date a case was removed) rather than the date the complaint was filed. Both a plain reading of the statute and the legislative history [*28] of the bill indicate that the jurisdictional amendments were never intended to apply retroactively." (emphasis added)). In *Lott v. Pfizer, Inc., 2005 U.S. Dist. LEXIS 16291, 05-cv-0230-MJR (S.D. Ill. Apr. 7, 2005)* (unpublished opinion) (hereinafter "Lott"), Judge Reagan once again rejected Pfizer's attempt to argue removal was proper under the new class action act. Judge Reagan's strict interpretation of the Act is evident: n17

n17 This also lends support to the little weight this Court gives to Pfizer's argument that its timely removal of the case within "30 days of service" of the complaint should play a role in this Court's statutory interpretation. Considering the language of the Act together with the legislative history, this Court agrees with the district and circuit decisions in *Pritchett*, and the circuit decision in *Knudsen*, and believes there does not exist any indication for an exception for cases here, namely those filed with the state court prior to the enactment date but re-

moved by a defendant within thirty days after such filing, as urged by Pfizer at oral argument. Tr. at 6–7.

[*29]

The Court rejects Pfizer's argument based on the provisions of the Class Action Fairness Act. Those provisions apply only to civil actions commenced on or after the date the Act was enacted. Plaintiffs commenced this civil action by filing their complaint in [state court] on February 17, 2005. The Class Action Fairness Act was not "enacted" until the following day — February 18, 2005.

Id. 2005 U.S. Dist. LEXIS 16291, at *6 (ruling that a difference of as little as one day between the date of filing of a complaint and the Act's enactment date was insufficient to confer jurisdiction on federal courts) (emphasis added).

### d. Other District Court Cases

In Bush v. Cheaptickets, Inc., 2005 U.S. Dist. LEXIS 14583, CV05–2285 PA at 3 (C.D. Cal. May 9, 2005) (unpublished opinion) (hereinafter "Cheaptickets"), Judge Percy Anderson held that "commence" in every sense of the word means at the time a case "begins," namely, with the filing in state court. As Judge Anderson explained, "[a] lawsuit does not begin' on the date it is removed to federal court; it is already pending by that time." Id. at 3 (noting that Congress specifically narrowed the scope of the Act to eliminate federal jurisdiction [*30] over those cases in which classes were certified after the date of enactment) (emphasis added). In light of the legislative history and the language of the Act, Judge Anderson expressly agreed with the Tenth Circuit in Pritchett and held that federal subject matter jurisdiction was lacking.

In Sneddon v. Hotwire Inc., 2005 U.S. Dist. LEXIS 13257, No. C05–0951–53–SI, 2005 WL 1593593, slip op. at *3 (N.D. Cal. June 29, 2005), decided a few weeks ago, Judge Susan Illston likewise held that "commencement" means the date of filing a case in state court. Id. at *2 (noting that "all courts which have addressed this issue under [the Act] have [so] held"). Judge Illston expounded that "statutory definitions of commencement' support this view." Id. (noting that this comports with the meaning of the word in the Federal Rules of Civil Procedure as well as legislative history). "Serendipitously," noted Judge Illston, "logic also supports this view: since an action can only be commenced once, it cannot commence at the time of removal . . . ." Id. (citing Cheaptickets at 3) which noted that a case "is already pending" at the time of removal) (emphasis added).

In In re Expedia Hotel Taxes and Fees Litig., C05–0365C (W.D. Wash. Apr. 15, 2005) [*31] (involving the consolidation of cases), Judge John C. Coughenour likewise ruled that one ought defer to state law to define the word "commence," noting that this was consistent with Ninth Circuit precedent. Id. at 3 (acknowledging that Washington state law defines "commencement" as the time of filing).

### 2. Case Law Interpreting Congressional Use of the Word "Commence" in Other Jurisdictional Statutes

All of the cases that have considered the question before this Court have determined that a class action is commenced as of the date of filing with the state court. Pfizer urges this Court to consider courts' antecedent interpretations of the word "commence" in other jurisdictional statutes.

Pfizer argues that a "wealth of authority holds that a jurisdictional statute, applicable only to actions commenced on or after' the effective date, applies to actions removed to federal court after the effective date, even though the action was filed in state court before the effective date." Pfizer Notice of Removal [Civ. A. No. 05–10590 Doc. No. 1] at 5 (citing, among other cases, Cedillo v. Valcar Enters., 773 F. Supp. 932 (N.D. Tex. 1991), [*32] Hunt, and Lorraine Motors, Inc. v. Aetna Cas. & Sur. Co., 166 F. Supp. 319 (E.D.N.Y. 1958)); Pfizer Notice of Additional Supreme Court Authority [Civ. A. No. 05–10590 Doc. No. 17; Civ. A. No. 05–10591 Doc. No. 15] (emphasizing the June 23, 2005, Supreme Court decision in Exxon Mobil Corp. v. Allapattah Servs., Inc., 162 L. Ed. 2d 502, 125 S. Ct. 2611 (2005)) (holding that 28 U.S.C. § 1367, the statute governing supplemental jurisdiction, broadened the jurisdiction of the federal courts)).

Pfizer urges that the historical precedent establishes "clearly" that "commenced" means removal to federal court. Tr. at 2, 4 (urging repeatedly that "the majority of Courts" have interpreted "commence" to mean removal to federal court). Judge Krieger, in her proemial, pacesetting decision, cogently addressed this "historical interpretation of the word commence in jurisdictional statutes" — the argument now urged by Pfizer. n18 Pritchett, 360 F. Supp. 2d at 1177–1179 (reviewing the conflicting decisions in Abernathy v. Consolidated Cab Co., 169 F. Supp. 831 (D. Kan. 1959), Kieffer v. Travelers Fire Ins. Co., 167 F. Supp. 398 (D. Md. 1958), [*33] and Lorraine Motors, 166 F. Supp. 319, in connection with the 1958 amount in controversy amendments, and the conflicting decisions in Hunt, Sayers v. Sears, Roebuck and Co., 732 F. Supp. 654 (W.D. Va. 1990), Rhinehart v. Cincinnati Inc., 716 F. Supp. 7, 8 (E.D. Mich. 1989), and Nolan v. Boeing Co., 715 F. Supp. 152 (E.D. La. 1989), in connection with the 1988 amount in controversy amendments).

n18 Pfizer placed great emphasis on this reasoning during oral argument before this Court. Tr. at 1–4, 13–14.

Judge Krieger observed that the case law interpreting the word "commenced" was "ambiguous" at best. *Pritchett, 360 F. Supp. 2d at 1179.* She followed [HN9] the cardinal maxim of statutory interpretation that a court is to refer to the legislative intent should any ambiguity exist. Id. (citing *United States v. McNab, 331 F. 3d 1228, 1238 (11th Cir. 2003)* for the salient convention that a court, interpreting an [*34] unclear statute, may refer to statutory purpose, committee discussions and reports, accepted and attempted amendments, and statements during debates).

This Court also finds extremely persuasive the fact that the Tenth Circuit in Pritchett n19 explicitly distinguished Hunt and Lorraine Motors and rejected any analogy n20 between that line of cases and the matter before this Court:

Defendant argues that there are several district court opinions that adopt its broader view of commencement. Neither of these cases deal directly with the statute in question, which was passed only several weeks ago. Thus, the cases are relevant only by analogy. Even then, their persuasive value is diluted, as Plaintiff points out, by the presence of contemporaneous contrary authority from other federal district courts.

Moreover, the courts' reasoning in Lorraine Motors and Hunt actually supports Plaintiff's interpretation of the term "commenced." Although the courts were interpreting statutory language that is identical to the disputed provision in the instant case, there is a major difference between a statute that defines additional circumstances in which [*35] diversity of citizenship exists (such as the Class Action Fairness Act) and a statute that increases the amount–in–controversy requirement. The latter attempts to restrict federal court jurisdiction, while the former attempts to expand it. Both Hunt and Lorraine Motors rely heavily upon the principal that removal statutes are to be strictly construed, with all doubts resolved against removal. Thus, in those cases, interpreting the term "commenced" as referring to the filing of the removal petition would serve that aim by restricting the number of preexisting state claims that could be removed. In contrast,

such an interpretation here would actually permit broader federal court jurisdiction by increasing the number of removable actions. Given this, we remain convinced that "commenced" in the Act refers to the initial filing, not the removal date.

n19 While, as Pfizer's counsel ably argued, Pritchett may be factually distinguishable from this case, Tr. at 6–7, this Court must interpret the law impartially and objectively. The facts of individual cases do not affect the manner or outcome of its statutory interpretation.

[*36]

n20 The Tenth Circuit found no merit in the argument that Pfizer makes here, as case law exists directly opposing the argument that in jurisdictional cases a case is "commenced" upon removal to federal court. *Pritchett, 404 F.3d at 1237* (citing *Kieffer, 167 F. Supp. at 402* as "holding that action is commenced' on initial filing date in state court and declining to impose higher amount–in–controversy requirement imposed prior to removal" and *Rhinehart, 716 F. Supp. at 8* as holding the same).

*Pritchett, 404 F.3d at 1237–38* (citing *Kieffer, 167 F. Supp. at 402* and *Rhinehart, 716 F. Supp. at 8* and explicitly holding that a case is "commenced" on the date of filing with state court) (internal citations and footnotes omitted, emphasis added). As initially foreshadowed during oral argument, Tr. at 12, n21 this Court, after careful reflection and analysis, believes the more persuasive argument to be that of Natale and Kwaak, namely that such historical precedent addressed increases in the amount [*37] in controversy provisions of diversity jurisdiction rather than the scope of jurisdiction as this Court here considers.

n21 In its recent opinion in *Miara v. First Allmerica Fin. Life Ins. Co., — F. Supp. 2d.—, 2005 U.S. Dist. LEXIS 12163, 2005 WL 1463299 (D. Mass. June 16, 2005) at *39 n.57,* this Court emphasized the invaluable contribution and incalculable assistance provided to it in its administration of justice by United States Court Reporters, and in particular the court reporter assigned to this session.

**D. Conclusion**

As Judge Krieger stated:

> Several additional reasons . . . compel the Court's result here. First, the Court finds that such a conclusion gives the most natural reading to the plain meaning of the term "commenced" . . . .The most common definition of [the] word "commenced" refers to the beginning of an undertaking. This is the manner in which *Fed. R. Civ. P. 3* uses the word, defining that "a civil action is commenced by filing of a complaint [*38] with the court." To read the word "commenced" in the context of the Act to refer to the filing of a Notice of Removal would require a strained reading of the word in both the colloquial and legal sense.

> Second, the Court notes that although Lorraine Motors may reflect the general trend of authority with regard to the interpretation of the word "commenced" when Congress adjusts the amount in controversy requirement of *28 U.S.C. § 1332*, the reasoning of that line of cases is not helpful in this circumstance. A central theme underlying that line of reasoning is that the increase in the jurisdiction threshold represented a Congressional intent to successively restrict the scope of federal jurisdiction. Consequently, it was reasonable for these courts to interpret the term "commenced" in such a way as to give effect to that Congressional intent. Here, the general purpose of the Act is to broaden federal jurisdiction in class actions. The rationale giving effect to a Congressional intent to limit federal jurisdiction is thus not applicable. [n22]

n22 Judge Krieger also noted the "apparent paradox" created by interpreting the Act to broaden federal jurisdiction yet rejecting Lorraine Motors which, if one were to assume its interpretation of the word "commence," would likewise broaden jurisdiction. *Pritchett, 360 F. Supp. 2d at 1180 n.5*. This is reconciled and "that paradox vanishes once one recognizes that although Congress generally intended the Act to broaden federal jurisdiction, it also maintained a specific intention to apply the Act only prospectively." Id.

[*39]

*Pritchett, 360 F. Supp. 2d at 1180* (emphasis added in part).

This Court fully concurs with Judge Krieger, who summarized correctly "it offends reason to permit the removal of a case where the current requirements of diversity jurisdiction were not present at the time the case was first filed in state court." *Id.* (citing the holding in *Sayers, 732 F. Supp. at 656*) (internal quotations omitted, emphasis added); see Hankins at 3 ("Because the removing Defendants cannot rely on diversity conferred by [the Act], which was not enacted at the time the State action was filed, removing Defendants must demonstrate diversity jurisdiction according to *28 U.S.C. § 1332(a).*") (emphasis added). It also agrees that the ramifications of such a statutory interpretation would indeed be immense, and would defeat the purpose of having a "gradual, incremental flow of newly-filed class actions that would result from a purely prospective application of the Act." *Pritchett, 360 F. Supp. 2d at 1180*.

This Court rules that [HN10] a case is "commenced" for purposes of the Class Action Fairness Act when it is filed with [*40] the state court. This decision is supported by a "natural reading" of the statutory language n23 together with the lack of support in the legislative history demonstrating that the Act was to be in any way retroactive to a case already filed in the state court, no matter how close in time such filing was to the enactment of the new law. See *Lott 2005 U.S. Dist. LEXIS 16291, at *6* (holding that filing a class action in state court one day before the signing of the Act into law was sufficient to preclude the application of the Act)

n23 Berry at 6–7 (discussing the language of the Act, noting that "a statute cannot address all possible outcomes and situations, and language inevitably contains some imprecision; where the text does not provide a clear answer, a faithful interpretation of the statute necessarily involves more than the text itself . . . . If legislative intent is clearly expressed in Committee Reports and other materials, judicial disregard for the explicit and uncontradicted statements contained therein may result in an interpretation that is wholly inconsistent with the statute that the legislature envisioned . . . . The role of the Court is to faithfully implement the law as intended by the Legislature. In these circumstances, the legislative history is a proper tool of statutory interpretation.")

[*41]

## III. Kwaak's Motion to Remand on Pfizer's Alternative Grounds

Pfizer argues, in the alternative, that the plaintiffs' claims in the Kwaak matter satisfy the amount in controversy so as to establish diversity jurisdiction. Mem. in Opp'n to Remand to State Court [Civ. A. No. 05-10591 Doc. No. 12] at 14 ("Pfizer Mem."). Pfizer argues that Kwaak seeks disgorgement in excess of $75,000. Id. Though Pfizer argues that the law is "well settled" as to the aggregation of claims for purposes of fulfilling the amount in controversy requirement, Charles Alan Wright and Arthur Miller, among other commentators, indicate that "the rules relating to aggregating multiple claims to satisfy the amount in controversy requirement are in a very unsatisfactory state." 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3704 (3d ed. 2005) (emphasis added).

Kwaak argues that diversity jurisdiction pursuant to *28 U.S.C. § 1332(a)* is lacking. Kwaak Mem. at 12. She denies that the amount in controversy for purposes of diversity jurisdiction is satisfied here because the class members' individual claims can be aggregated [*42] and argues that "the Supreme Court has made crystal-clear that in class actions the claims of individual class members cannot be aggregated for the purpose of satisfying the amount in controversy' required for diversity jurisdiction, i.e., the requirement must be met by each individual member of the plaintiff class." Id. (citing *Snyder v. Harris, 394 U.S. 332, 336–337, 22 L. Ed. 2d 319, 89 S. Ct. 1053 (1969)*, and Zahn v. *International Paper Co., 414 U.S. 291, 300–301, 38 L. Ed. 2d 511, 94 S. Ct. 505 (1973)*) (emphasis added). Kwaak notes that the District of Massachusetts naturally conforms to this position. Id. (citing *Ciardi v. F. Hoffman–LaRoche Ltd., 2000 U.S. Dist. LEXIS 1483, No. Civ.A. 99–11936-GAO, 2000 WL 159320 at *2 (D. Mass. 2000) (O'Toole, J.)* (unpublished opinion), and *Hairston v. Home Loan and Inv. Bank, 814 F. Supp. 180, 181 & n.1 (D. Mass. 1993)* (Tauro, J.)).

Kwaak emphasizes that the exception allowing aggregation of claims applies where "members of a proposed class assert a single title or right, in which they have a common and undivided interest." Id. at 12–13 (citing *Zahn, 414 U.S. at 294*) (emphasis added). The Eleventh Circuit in Morrison v. [*43] Allstate Indem. Co., Kwaak highlights, stated that having a "common and undivided interest" is "rather uncommon, existing only when the defendant owes an obligation to the group of plaintiffs as a group and not to the individuals severally." *228 F.3d 1255, 1262 (11th Cir. 2000)* (emphasis added). In other words, emphasized the Eleventh Circuit, "if the claims are derived from rights that [class members] hold in group status, then the claims are common and undivided. If not,

the claims are separate and distinct." Id. (quoting *Eagle v. American Tel. and Tel. Co., 769 F.2d 541, 546 (9th Cir. 1985)*) (emphasis added).

Kwaak also notes that the creation of a common fund does not automatically render the plaintiffs' interests common. Kwaak Mem. at 13. As the Second Circuit has stated, "it is of course commonplace to collect class action damages wholesale, put the proceeds in a single fund, and distribute the proceeds retail upon a showing of specific entitlement in accordance with the judgment." Kwaak Mem. at 13 (quoting *Gilman v. BHC Sec., Inc., 104 F.3d 1418, 1427–1428 (2d Cir. 1997)* (emphasizing that the creation [*44] of such a fund "has nothing necessarily to do with whether the plaintiffs shared a pre-existing (pre–litigation) interest in the subject of the litigation")). As echoed by the Eleventh Circuit, "it is the nature of the right asserted, not that of the relief requested, that determines whether the claims of multiple plaintiffs may be aggregated." *Morrison, 228 F.3d at 1264* (emphasis added).

In light of this case law, Kwaak contends that "aggregation is therefore inappropriate in disgorgement cases where the claims of the class members arise from their individual transactions with defendant, such that they would be able to assert individual claims for relief." Kwaak Mem. at 13; *Gilman, 104 F.3d at 1426* (deeming aggregation inappropriate in a securities class action suit because the disgorgement claim was designed to recover "payments received in respect of their individual transactions, as accurately as that amount can be calculated" (emphasis added)); *In re Ford Motor Co./Citibank (South Dakota), N.A., 264 F.3d 952, 961 (9th Cir. 2001)* (rejecting aggregation of claims seeking disgorgement of billions of dollars for "ill-gotten [*45] benefits" arising out of the cancellation by defendants of a credit card rebate program, and narrowing the issue to "whether the plaintiffs' claims are consistent with a demand for damages based on their individual transactions with the defendants." (internal quotation marks, citation, and alteration omitted, emphasis added); *Gattegno v. Sprint Corp., 297 F. Supp. 2d 372, 378 (D. Mass. 2003)* (Keeton, J.) (rejecting, in a matter involving a common fund, the approach that the claims of wireless telephone customers alleging they were overcharged and stating "the focus should not be on the type of relief requested, but rather on the nature and value of the right asserted . . . . The issue turns not on whether the plaintiffs seek a common fund,' but on whether plaintiffs bring this case based in individual claims or in an indivisible, common claim." (internal citations omitted, emphasis added)); id. (noting that the claims were based on individual contracts with the defendant); *Pierson v. Source Perrier, S.A., 848 F. Supp. 1186, 1188 (E.D. Pa. 1994)* (noting, in a case seeking disgorgement for misrep-

resentations regarding [*46] bottled water products, that the determination rested on the "nature and value of the rights that [plaintiffs] have asserted" and that disgorgement is simply "a means of obtaining money damages"); see also *Morrison, 228 F.3d at 1264* (overturning a district court's decision to aggregate claims because, though an unjust enrichment claim, the claims resulted "from the defendants' alleged breach of individual insurance policies." (emphasis added)); Kwaak Mem. at 15–16 (collecting additional cases ruling aggregation inappropriate due to the existence of "separate and distinct" claims).

Kwaak convincingly argues here that plaintiffs here "were not defrauded as a group and did not overpay as a group." Id. at 16 (emphasis added). Each member of the class here "engaged in separate, distinct and individual purchases of a consumer product, each was entitled to sue defendant separately, and each can only recover to the extent of his or her loss." Id.; see also *Campbell v. General Motors Corp., 19 F. Supp. 2d 1260, 1268 (N.D. Ala. 1998)* (holding that "unjust enrichment remedies do not provide a generalized recovery of a fixed fund for the [*47] class. Instead each plaintiff is entitled to defendants' profits which resulted from the wrongdoing to that particular plaintiff.").

It is important to address one of Pfizer's primary arguments, namely that Kwaak seeks disgorgement of all profits rather than individual damages. Pfizer Mem. at 18–19. Kwaak successfully refutes these repeated assertions made by Pfizer. Kwaak's First Amended Complaint is explicit:

(1.) "Pfizer has sold millions of dollars in Listerine which it would not have otherwise sold had it made the proper disclosures, and it has been unjustly enriched at the expense of Plaintiff and the class members."

(2.) "Plaintiff and the class members have conferred a benefit on Pfizer, and Pfizer has knowledge of this benefit and has voluntarily accepted and retained the benefit conferred on it."

(3.) "Pfizer will be unjustly enriched if it is allowed to retain such funds [the "benefit" conferred by class members] and the Class is entitled to disgorgement of the amount by which Pfizer has been unjustly enriched."

Kwaak First Am. Compl. [Civ. A. No. 05–10591 Doc. No. 1 Attach. 1] PP 3, 71, 73 (emphasis added); Kwaak [*48] Reply Mem. [Civ. A. No. 05–10591 Doc. No. 14] at 6–7.

Pfizer relies heavily n24 on *Berman v. Narragansett Racing Asso., 414 F.2d 311, 315 (1st Cir. 1969)* (involving purse winners who, as a group, claimed they were entitled to a certain percentage of the money wagered), where the court held that the interest was "common and undivided" so as to make aggregation proper. Kwaak distinguishes Berman, Kwaak Mem. at 15, as did Judge Keeton in *Gattegno, 297 F. Supp. 2d at 378*. Judge Keeton correctly noted that Berman did not involve individual agreements between the class members and the defendants. Id. Rather, Berman involved a "purse agreement" to pay annually, in the aggregate, "to the group of owners whose horses win purses." *414 F.2d at 313, 315* (noting that "no contractual rights [were] created between the defendants and the individual pursewinners" (emphasis added)).

> n24 Pfizer also cites Judge Walter Jay Skinner's opinion in *Ingerson v. Sharp, 423 F. Supp. 139, 142 n.2. (D. Mass. 1976)* (relying on *Berman v. Narragansett Racing Assoc., 414 F.2d 311 (1st Cir. 1969)* discussed infra) in which Judge Skinner stated that "several plaintiffs need not hold their claims jointly so long as they assert an integrated right against the defendant.' An important element of the approach is that the defendants' total liability remain the same no matter how the fund' is apportioned." Judge Skinner's decision, however, was subsequently vacated by the First Circuit without opinion, substantially detracting from any persuasive value this Court would have ascribed it. *Ingerson v. Sharp, 582 F.2d 1269 (1st Cir. 1978)*.

[*49]

Pfizer also relies on *Durant v. Servicemaster Co., 147 F. Supp. 2d 744, 749–51 (E.D. Mich. 2001), Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft, 48 F. Supp. 2d 37, 41 (D.D.C. 1999), In re Microsoft Corp. Antitrust Litig., 127 F. Supp. 2d 702, 720–721 (D. Md. 2001)*, and *Gavriles v. Verizon Wireless, 194 F. Supp. 2d 674 (E.D. Mich. 2002)*, for the proposition that where disgorgement is involved, removal and federal jurisdiction are proper. In Gavriles, argues Pfizer, Judge Gerald E. Rosen explained in dicta why the disgorgement claim in its view was a claim of a "common and undivided interest" in the defendant's profits:

> Disgorgement is an equitable remedy to force defendant to give up the amount equal to the defendant's unjust enrichment . . . . A claim for disgorgement, if successful, results in a pool of money available for the plaintiffs. The proceeds from disgorgement are not directly related to each plaintiff's actual dam-

ages and would be distributed to plaintiffs who remained a party to the action.

*Id. at 681*. Pfizer argues that, [*50] as in Durant, "all putative class members have a common and undivided interest'" in Pfizer's profits because "one [class member's] failure to collect his share would result in a larger share for each remaining [class member]." Pfizer Mem. at 17 (relying on *Aetna, 48 F. Supp. 2d at 41*, for support of its argument that failure of one plaintiff to collect would not result in a decrease in the amount disgorged) (citation omitted, alteration in original). Pfizer argues further that in Gilman, the complaint specifically sought disgorgement based on "each individual customer's order" rather than a disgorgement of all profits. Id. at 18 (internal quotation marks and citation omitted).

The case here is, however, identical to *Gilman*. It is evident to the Court based on Kwaak's First Amended Complaint and filings with this Court that Kwaak seeks disgorgement of the benefit conferred upon Pfizer by Kwaak and the class members, not the disgorgement of all profits. Kwaak successfully distinguishes, therefore, *Durant*, *Aetna*, and *Microsoft*, and substantially weakens Pfizer's argument. Kwaak also properly distinguishes Pfizer's citation to [*51] cases where plaintiffs sought disgorgement of a "specific, identifiable fund," Kwaak Mem. at 17–18; *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft, 54 F. Supp. 2d 1042, 1049 (D. Kan. 1999)* (stating that "the fact that plaintiffs seek disgorgement of the entire fund is not dispositive of the issue. The proper focus should . . . [be] upon the nature and the value of the rights that they have asserted." (internal quotation marks and citation omitted)).

Likewise persuasive to this Court is a statement from Judge Joseph E. Irenas of the District of New Jersey in Bishop v. General Motors Corp., in which he writes that the "paradigm cases" allowing aggregation "are those which involve a single individual res, such as an estate, a piece of property (the classic example) or an insurance policy. These are matters that cannot be adjudicated without implicating the rights of everyone involved with the res." *925 F. Supp. 294, 298 (D.N.J. 1996)* (emphasis added).

This Court holds that federal jurisdiction is, here, likewise improper (1) in light of the persuasiveness of the decisions in, among other cases, Gattegno, Ford Motor, and [*52] Pierson, (2) given that the First Circuit decision in *Berman* is distinguishable as there a "group" was seeking disgorgement, and (3) given that the cases Pfizer largely relies upon are distinguishable as Kwaak does not seek disgorgement of all profits, but rather only the benefit conferred upon Pfizer by Kwaak and the class members

## IV. Attorney's Fees and Costs

Natale and Kwaak argue that given Pfizer's "improper" removal, this Court ought grant them costs and attorneys' fees under [HN11] *28 U.S.C. § 1447(c)*, which allows this Court to order Pfizer to pay "just costs and any actual expenses, including attorney fees incurred as a result of the removal." Natale Mem. at 13 (noting accurately that such award is a "matter for the exercise of the sound discretion of the court" (citations omitted)); Kwaak at 19–20 (asserting that it "should not be forced to foot the bill for Pfizer's baseless and irresponsible removal of this case."). Natale notes that "the purpose of such an award is not to punish defendants, but rather to reimburse plaintiffs for unnecessary litigation costs." Natale Mem. at 13. Natale additionally argues as "Pfizer has itself tried [*53] this same removal argument in three separate cases and had it rejected each time . . . . Plaintiff should not be forced to foot the bill for Pfizer's irresponsible removal of this case." Id. at 14.

This gives this court reason to pause. On the one hand, Pfizer should have the latitude to assert, and seek to determine, its legal rights in various jurisdictions and seek interpretation of this new Act, particularly given its recent enactment. On the other hand, Pfizer's argument has been repeatedly, this being at least the fourth time, rejected by the federal courts. n25 Though this Court disagrees with Pfizer's characterization and assertion that the grant of attorneys' fees and costs of this Court would go against the "clear majority" of decisions and is not the "sounder" view, Pfizer Mem. at 19–20, Pfizer persuades this Court that its legal argument and position are "fairly supportable" or, at a minimum, at least worthy of judicial consideration n26 in an area where the interpretation of a new law may be said to be "less than clear." *Alexander v. A.P. Green Indus. Inc., 44 F. Supp. 2d 368, 374 (D. Me. 1999)*. An award of fees and costs, accordingly, would be [*54] improper.

> n25 As discussed supra, the argument has been rejected once by Judge Collins and twice by Judge Reagan.

> n26 This Court's determination here is in line with the circuit and district interpretations to date. Should other courts similarly interpret the "commence" statutory language, Pfizer's latitude to seek judicial interpretation without being held responsible for attorneys' fees and costs may narrow in the future.

**V. Certification to the First Circuit Court of Appeals** n27

> n27 The Class Action Fairness Act has an express provision for interlocutory appeal of remand orders. *28 U.S.C. § 1453(c)(1)*. Here, however, having held that these cases are not subject to that Act, consideration of interlocutory appeal prescinds from traditional standards.

*28 U.S.C. § 1292(b)* [*55] provides, in pertinent part, that:

> [HN12] when a district judge, in making in a civil action an order not otherwise appealable . . . shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order.

*28 U.S.C. § 1292(b)* (emphasis added). The First Circuit has explained that

> [HN13] only rare cases will qualify for the statutory anodyne; indeed, it is apodictic in this circuit that interlocutory certification of this sort should be used sparingly and only in exceptional circumstances, and where the proposed intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority.

*In re San Juan Dupont Plaza Hotel Fire Litig., 859 F.2d 1007, 1010 n.1 (1st Cir. 1988)* [*56] (quoting *McGillicuddy v. Clements, 746 F.2d 76, 76 n.1 (1st Cir. 1984)*).

This Court had recent occasion to certify another important and controlling question of law to the First Circuit Court of Appeals in *Miara v. First Allmerica Fin. Life Ins. Co., — F. Supp. 2d —, 2005 U.S. Dist. LEXIS 12163, 2005 WL 1463299 (D. Mass. Jun 16, 2005)*. n28 While one of the defendants in Miara requested this Court consider certifying the question of law under *section 1292(b)*, here

the court considers certification motu proprio. This Court once again believes this matter "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from [this] order may materially advance the ultimate termination of the litigation." *28 U.S.C. § 1292(b)*.

> n28 As this Court stated in Miara:
>
> > This Court appreciates that [HN14] *section 1292(b)* certification "should be used sparingly and only in exceptional circumstances." Stone ex. rel. Estate of Stone v. *Stone v. Frontier Airlines, Inc. ( In re Estate of Stone), 256 F. Supp. 2d 28, 47 (D. Mass. 2002)* (denying *Section 1292(b)* certification); *Fierro v. I.N.S., 81 F. Supp. 2d 167 (D. Mass. 1999)* (certifying under *section 1292 (b)* in the interest of judicial economy and efficiency primarily because, there, the matter properly should have been brought before the Court of Appeals in the first place).
> >
> > Certain instances, however, warrant *section 1292(b)* certification.
>
> *2005 U.S. Dist. LEXIS 12163, 2005 WL 1463299 at *38 n.53*.

[*57]

As in *Miara, 2005 U.S. Dist. LEXIS 12163, 2005 WL 1463290 at *39*, "the matter here is sufficiently . . . important,' *San Juan Dupont, 859 F.2d at 1010 n.1*, constitutes an open question[,] and . . . the litigation would benefit from prompt resolution of the question. *Camacho v. Puerto Rico Ports Auth., 369 F.3d 570, 573 (1st Cir. 2004)*." The Court here interprets not only a new law, but "'an important and unsettled question of controlling law.'" *In re Bank of New England Corp., 218 B.R. 643, 650 (B.A.P. 1st Cir. 1998)*(quoting *United States v. Sorren, 605 F.2d 1211, 1213 (1st Cir. 1979)*); *Miara, 2005 U.S. Dist. LEXIS 12163, 2005 WL 1463299 at *39*. Further, case law to date demonstrates marked litigant confusion and disagreement in this area, thus providing good reason for the First Circuit expeditiously to address this issue. This litigation, as well as class action lawsuits filed within the state and federal courts within this Circuit, would certainly "benefit from prompt resolution" of this question. n29

> n29 As would, of course, other circuits, given

the value of a First Circuit decision on this issue as demonstrated by the value of the decisions of the Seventh and Tenth Circuits on this matter, and in light of the predictable increase in state class action lawsuits removed to federal court seeking judicial interpretation of section 9 of the Act.

[*58]

While this Court holds that "commenced" means the filing of a case in the state court, this Court's interpretation of the Act has persuasive value only, and a binding interpretation from the First Circuit now will clarify this issue and avoid confusion in this circuit in the application of this new and potentially far–reaching law. While timely resolution and remand is always ideal, this Court is of opinion that the issue here warrants a *section 1292(b)* interlocutory appeal and that certification to the United States Court of Appeals for the First Circuit is appropriate.

Therefore, pursuant to *28 U.S.C. § 1292(b)*, Pfizer shall have ten (10) days from the date of the entry of this Memorandum and Certification to appeal to the Court of Appeals for the First Circuit. The controlling question of law worthy of First Circuit review and certified to the First Circuit is: under section 9 of the Class Action Fairness Act of 2005, is a civil action "commenced" on the date a class action complaint is filed by a plaintiff in the state court or on the date a case is removed by a defendant to the federal court?

Pfizer is ordered to provide notice of such appeal, if any, [*59] to this Court. The First Circuit may then exercise its statutory discretion to allow an immediate, interlocutory appeal with respect to the controlling question of law. *28 U.S.C. §§ 1292(b)* and *(c)(1)*. If Pfizer opts not to appeal in the statutory ten–day period, or if the First Circuit, in its rightful discretion, declines to entertain this certification, this Court will promptly remand Natale's

and Kwaak's actions to the Massachusetts Superior Court sitting in and for the County of Suffolk for appropriate resolution of such claims on the merits.

## VI. Conclusion

### A. Natale's and Kwaak's Motions to Remand Based on the Class Action Fairness Act

This Court rules that a case is "commenced" for purposes of the Class Action Fairness Act when it is filed with the state court. As such, this Court would allow both Natale's and Kwaak's Motions to Remand. Given that this matter, however, involves a controlling issue of law, as explained supra this Court certifies the following question to the United States Court of Appeals for the First Circuit: Is a civil action "commenced" under Section 9 of the Class Action Fairness Act of 2005 on the date a class action [*60] complaint is filed by a plaintiff in the state court or on the date a case is removed by a defendant to the federal court? Should Pfizer opt not to pursue an appeal, or should the First Circuit decline to exercise its discretion, this Court will promptly remand the matters to the Middlesex Superior Court.

### B. Kwaak's Motion to Remand Based on Class Action Fairness Act and Alternative Grounds

This Court rules that diversity jurisdiction on Pfizer's alternative grounds, namely disgorgement and aggregation of claims to satisfy the amount in controversy, lacks merit and that federal jurisdiction is improper.

### C. Attorneys' Fees and Costs

This Court denies Natale's and Kwaak's request for attorneys' fees and costs.

SO CERTIFIED AND ORDERED.

WILLIAM G. YOUNG

CHIEF JUDGE

104NX6

********** Print Completed **********

Time of Request: August 11, 2005  05:33 PM EDT

Print Number:  1861:56543436
Number of Lines:  951
Number of Pages:  19

Send To:  HOFFMAN, DOUGLAS
          GILMAN AND PASTOR
          60 STATE ST FL 37
          BOSTON, MA 02109-1800

104NX6

```
Print Request:  LEXSEE

Time of Request: August 11, 2005  05:34 PM EDT

Number of Lines: 133
Job Number:  1861:56543558

Client ID/Project Name: 8385

Note:
```

```
Research Information:

Lexsee 2005 U.S. App. LEXIS 16036
```

```
Send to:  HOFFMAN, DOUGLAS
          GILMAN AND PASTOR
          60 STATE ST FL 37
          BOSTON, MA 02109-1800
```

LEXSEE 2005 U.S. APP. LEXIS 16036

**PFIZER, INC., Petitioner, v. RICKY LOTT, et al., individually and on behalf of all others similarly situated, Respondents.**

**No. 05–8013**

**UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT**

*2005 U.S. App. LEXIS 16036*

**July 14, 2005, Submitted**
**August 4, 2005, Decided**

**PRIOR HISTORY:** [*1] Petition for Leave to Appeal from the United States District Court for the Southern District of Illinois. No. 05–cv–230–MJR. Michael J. Reagan, Judge.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Petitioner pharmaceutical company sought leave to appeal a decision of the United States District Court for the Southern District of Illinois, which remanded respondent consumers' class action suit to the state court on the ground that there was no federal jurisdiction. No individual claimant met the minimum amount in controversy, and there was no federal claim.

**OVERVIEW:** The Class Action Fairness Act of 2005, Pub. L. No. 109–2, 119 Stat. 4, provided that the minimum amount in controversy was satisfied if the aggregate stakes in a class action exceeded $5 million, which it would in the present case. The Act also provided that it was effective for a case that commenced on or after the Act's enactment date. The company claimed that, although the case was filed in state court the day before the Act's enactment date, the complaint was served afterwards, and the suit was removed to the federal court within 30 days, as permitted by *28 U.S.C.S. § 1446*(b). The court found that, under Illinois law, *735 Ill. Comp. Stat. 5/2–201*, the filing of the complaint "commenced" the suit. When the case was removed to federal court, nothing changed except the forum. The transfer did not commence a new suit for purposes of deciding whether the suit was timely. The injustice of which the company complained was not so great as to justify radical judicial surgery on the statute.

**OUTCOME:** The court denied the petition to appeal.

**CORE TERMS:** removal, Class Action Fairness Act, class action, federal jurisdiction, date of enactment, fed-

eral district, deadline, doubtless

**LexisNexis(R) Headnotes**

*Civil Procedure > Class Actions > Prerequisites*
*Civil Procedure > Jurisdiction > Diversity Jurisdiction > Amount in Controversy*
[HN1] The Class Action Fairness Act of 2005, Pub. L. No. 109–2, 119 Stat. 4, provides that the minimum amount in controversy is satisfied if the aggregate stakes in a class action exceed $5 million.

*Civil Procedure > Class Actions > Prerequisites*
*Governments > Legislation > Effect & Operation > Operability*
[HN2] The Class Action Fairness Act of 2005, Pub. L. No. 109–2, 119 Stat. 4, is applicable only to suits "commenced on or after" the date of enactment.

*Civil Procedure > Appeals > Reviewability*
*Civil Procedure > Class Actions > Prerequisites*
*Civil Procedure > Removal > Postremoval Remands*
[HN3] Although remands to state court are ordinarily non-appealable, the new Class Action Fairness Act of 2005, Pub. L. No. 109–2, 119 Stat. 4, makes an exception for remands of suits removed under it. *28 U.S.C.S. § 1453*(c).

*Civil Procedure > Removal > Removal Proceedings*
[HN4] The ordinary deadline for removal is 30 days, though there is an exception for cases in which removal doesn't become possible until later. *28 U.S.C.S. § 1446*(b).

*Civil Procedure > Removal > Removal Proceedings*
*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN5] The principle is recognized in decisions involving the transfer of cases that were filed in the wrong forum initially; the transfer does not commence a new suit for purposes of deciding whether the suit is timely.

**COUNSEL:** For PFIZER, INCORPORATED,

2005 U.S. App. LEXIS 16036, *1

Petitioner: Richard F. O'Malley, Jr. SIDLEY AUSTIN BROWN & WOOD, Chicago, IL, USA.

For RICKY LOTT, GERALD SUMNER, SANDY BECKER, MIKE BALDWIN, individually on behalf of all other similarly situated individuals, Respondents: Stephen M. Tillery, KOREIN TILLERY, St. Louis, MO, USA.

**JUDGES:** Before BAUER, POSNER, and WOOD, Circuit Judges.

**OPINIONBY:** POSNER

**OPINION:**

POSNER, *Circuit Judge.* Pfizer, sued in a class action in an Illinois state court, removed the suit to federal district court, which remanded it to the state court on the ground that there was no federal jurisdiction. The suit charged Pfizer with having overcharged for two drugs in violation of state consumer-protection law. There was no federal claim, and so the only possible basis of federal jurisdiction was diversity of citizenship. The named plaintiffs stipulated that they would not seek or even accept damages in excess of $75,000, and while the stipulation would not bind the other members of the class, *Manguno v. Prudential Property & Casualty Ins. Co., 276 F.3d 720, 724 (5th Cir. 2002),* [*2] the likelihood that any purchaser of either drug had damages in excess of $75,000 was sufficiently remote (*In re Brand Name Prescription Drugs Antitrust Litigation, 123 F.3d 599, 607 (7th Cir. 1997);* see also *Garbie v. DaimlerChrysler Corp., 211 F.3d 407, 410 (7th Cir. 2000))* to cast on Pfizer the burden of presenting some evidence or argument to establish the plausibility of an inference that at least one member of the class could cross the $75,000 threshold, *American Bankers Life Assurance Co. v. Evans, 319 F.3d 907, 909 (7th Cir. 2003),* which would establish jurisdiction over the entire class. *Exxon Mobil Corp. v. Allapattah Service, Inc., 162 L. Ed. 2d 502, 125 S. Ct. 2611 (2005).*

But Pfizer had another string to its bow. [HN1] The Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4, provides that the minimum amount in controversy is satisfied if the *aggregate* stakes in a class action exceed $5 million, as it plainly does in this case. The rub is that the suit was filed in the state court the day before the Act was enacted, although the complaint was served afterwards and the suit was removed to the [*3] federal district court within the 30 days that are permitted for removing from state court a suit that is within the jurisdiction of the federal courts. *28 U.S.C. § 1446(b).* [HN2] The Class Action Fairness Act is applicable only to suits "commenced on or after" the date of enactment, and the

district judge ruled that this meant the date on which the suit was filed in the state court, not the date of removal. Pfizer asks us to permit it to appeal from this determination. *Fed. R. App. P. 5, 27.* [HN3] Although remands to state court are ordinarily nonappealable, the new Act makes an exception for remands of suits removed under it. *28 U.S.C. § 1453(c).*

We are tempted to deny the petition with just a citation to *Knudsen v. Liberty Mutual Ins. Co., 411 F.3d 805 (7th Cir. 2005),* which holds (following *Pritchett v. Office Depot, Inc., 404 F.3d 1232 (10th Cir. 2005),* the only other appellate case to address the issue), that "commenced" indeed means "filed" rather than "removed." But as Pfizer points out, there is a difference between the present case [*4] on the one hand and *Knudsen* and *Pritchett* on the other. In *Knudsen* the suit had been filed five years, and in *Pritchett* two years, before removal. [HN4] The ordinary deadline for removal is 30 days, as we said, though there is an exception for cases in which removal doesn't become possible until later, *28 U.S.C. § 1446(b); Benson v. SI Handling Systems, Inc., 188 F.3d 780, 782 (7th Cir. 1999),* and the defendants pointed out that removal first became possible when the Class Action Fairness Act was passed. If that argument for removal prevailed, then as we noted in *Knudsen* the Act would have a dramatic retroactive effect. In contrast, removal here occurred within the 30-day deadline.

Nevertheless we think *Knudsen* and *Pritchett* should govern this case as well. While it is true that the proceeding in federal court was "commenced" by the filing of the removal petition, that filing was not the beginning of the suit. For what was removed was the suit that had been brought in the Illinois state court, and under Illinois law the filing of the complaint had "commenced" the suit. *735 ILCS 5/2-201; Kohlhaas v. Morse, 36 Ill. App. 2d 158, 183 N.E.2d 16, 19 (Ill. App. 1962).* [*5] Nothing changed except the forum. [HN5] The principle is recognized in decisions involving the transfer of cases that were filed in the wrong forum initially; the transfer does not commence a new suit for purposes of deciding whether the suit is timely. E.g., *Phillips v. Seiter, 173 F.3d 609, 610 (7th Cir. 1999).* Moreover, were Pfizer's reading adopted, we would have to rewrite the statute in order to create an exception for cases such as *Knudsen* and *Pritchett* in which the removed suit had been filed more than 30 days before removal. That necessity suggests that Pfizer's reading is incorrect. The injustice of which it complains is not so great as to justify radical judicial surgery on the statute.

This is not to belittle Pfizer's indignation at the plaintiffs' having beat the statute by one day, but their gamesmanship actually hurts its argument. Pharmaceutical and other companies that pressed for the enactment of the

2005 U.S. App. LEXIS 16036, *5

Class Action Fairness Act were doubtless acutely aware, as the bill that became the statute was wending its way through Congress en route to enactment, that the prospect of its enactment would spur the class action bar to accelerate the filing of state–law [*6] class actions in state courts. Doubtless the companies made their concerns known to Congress. The fact that Congress did not respond by writ-

ing "removed" (or "removed after the date of enactment but within 30 days of the original filing") instead of "commenced" is telling.

The petition to appeal is

DENIED.

104NX6

********** Print Completed **********

Time of Request: August 11, 2005  05:34 PM EDT

Print Number:  1861:56543558
Number of Lines: 133
Number of Pages: 3

Send To:  HOFFMAN, DOUGLAS
          GILMAN AND PASTOR
          60 STATE ST FL 37
          BOSTON, MA 02109-1800

104NX6

Print Request:  LEXSEE

Time of Request: August 11, 2005  05:58 PM EDT

Number of Lines: 133
Job Number:  1861:56547056

Client ID/Project Name: 8385

Note:
Here's the third case

Research Information:

Lexsee 2005 U.S. App. LEXIS 16465

Send to:  HOFFMAN, DOUGLAS
          GILMAN AND PASTOR
          60 STATE ST FL 37
          BOSTON, MA 02109-1800

LEXSEE 2005 U.S. APP. LEXIS 16465

**WILLIAM SCHORSCH, individually and on behalf of others similarly situated, Plaintiff–Respondent, v. HEWLETT–PACKARD COMPANY, Defendant–Petitioner.**

**No. 05–8017**

**UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT**

*2005 U.S. App. LEXIS 16465*

**July 20, 2005, Submitted**
**August 8, 2005, Decided**

**PRIOR HISTORY:** [*1] Petition for Leave to Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 05 C 3397. Ruben Castillo, Judge.

**CORE TERMS:** cartridge, drum, kit, printer, toner, chip, ink, commence, consumable, consumer, purchasers, clerk, output, proposed amendment, relation–back, occurrence, lawful, deem, new suit, measured, routine, removal

**COUNSEL:** For HEWLETT PACKARD COMPANY, Petitioner: Joel C. Griswold, BELL, BOYD & LLOYD, Chicago, IL USA.

For WILLIAM SCHORSCH, individually and on behalf of all others similarly situated, Respondent: Richard N. Kessler, HARRIS, KESSLER & GOLDSTEIN, Chicago, IL USA.

**JUDGES:** Before EASTERBROOK, WILLIAMS, and SYKES, Circuit Judges.

**OPINIONBY:** EASTERBROOK

**OPINION:**

EASTERBROOK, *Circuit Judge*. Ever since Congress enacted the Class Action Fairness Act of 2005, Pub. L. 109–2, 119 Stat. 4 (2005), defendants have been trying to remove suits that were pending in state court on February 18, 2005, although the statute applies only to suits "commenced" after that date. We have rejected two of these attempts in published opinions. See *Knudsen v. Liberty Mutual Insurance Co., 411 F.3d 805 (7th Cir. June 7, 2005)*; *Pfizer, Inc. v. Lott, 2005 U.S. App. LEXIS 16036, No. 05–8013 (7th Cir. August 4, 2005)* (in circulation).Today's opinion makes a third.

*Knudsen* holds that a case is "commenced" when it begins, and that a routine amendment to the complaint does not commence [*2] a new suit. Amendments could in principle initiate litigation, however: a defendant added after February 18 could remove because suit *against it* would have been commenced after the effective date, and tacking a wholly distinct claim for relief onto an old suit likewise might commence a new proceeding. Hewlett–Packard (HP) seeks to take advantage of these provisos.

Schorsch filed suit in Illinois in 2003, proposing to represent a class of persons who purchased from HP drum kits for use in its printers. A "drum kit" contains some of the drums and rollers that fuse the toner to the paper. Components wear out, and HP includes sensors that detect when this process has gone far enough that quality of the printer's output (or the integrity of the printer's other components) may be jeopardized. First the printer warns the customer that the drum kit needs replacing. After a given number of additional pages have been printed, an EEPROM chip tells the printer to stop working until a new drum kit has been installed. (EEPROM stands for "electrically erasable programmable read only memory.") Schorsch contends that this cutoff injures consumers who want to press their luck or accept lower–quality [*3] output at the end of a drum kit's life cycle. The total asserted damages exceed $5 million, the class size exceeds the statutory threshold, and HP is not a citizen of Illinois, so but for its filing date this suit could have been removed under the 2005 Act.

2005 U.S. App. LEXIS 16465, *3

In May 2005 Schorsch tendered a proposed second amended complaint that would expand the class from purchasers of drum kits to purchasers of all printer consumables that contain EEPROM chips. Schorsch believes that HP's toner cartridges (for laser printers) and ink cartridges (for ink–jet printers) also contain EEPROMs. HP then removed the proceeding to federal court, contending that this expansion of the class commenced a new suit. The district judge thought otherwise and remanded; HP asks us for interlocutory review under *28 U.S.C. § 1453(c)(1)*, as amended by the 2005 Act. See also *Fed. R. App. P. 5*. HP contends that the new class definition adds both parties (those class members who purchased cartridges but not drum kits) and claims (for HP sells many more ink or toner cartridges than drum kits). The proposed amendment certainly does not add *parties* to the suit:  [*4]  there were and are only two, Schorsch and HP. Class members are represented vicariously but are not litigants themselves. Compare *Amchem Products, Inc. v. Windsor, 521 U.S. 591, 138 L. Ed. 2d 689, 117 S. Ct. 2231 (1997)*, with *Devlin v. Scardelletti, 536 U.S. 1, 153 L. Ed. 2d 27, 122 S. Ct. 2005 (2001)*. And it is hard to see the change in class definition as the addition of a new claim either.

From its outset, this suit has been about HP's use of EEPROM chips to shut down its printers until a component has been replaced. Identity of the consumable is a detail. HP tells us that its toner cartridges and ink cartridges do not contain EEPROM chips, and if so then the change in the proposed definition has no effect beyond making notice to the class a little more costly. But let us assume that Schorsch is right. This is still just one suit, between the original litigants. Litigants and judges regularly modify class definitions; *Knudsen* holds that such changes do not "commence" new suits.

HP insists that *this* change does, because litigation based on EEPROM chips in toner or ink cartridges is so different from litigation based on EEPROM chips in drum kits that the second amended complaint [*5]  does not relate back to the first. On that view two periods of limitation apply: one (for drum kits) measured from the original complaint in October 2003, and the other (for cartridges) measured from the proposed amendment in May 2005. That would be the sort of addition that, we conjectured in *Knudsen*, might "commence" a new action. But HP does not really believe this. It removed the *whole* suit, not just the claim based on cartridges though its theory of removal supposes that Schorsch commenced a piece of litigation distinct from the drum–kit claim. Likely the reason HP tried to remove the whole shebang is that drum kits and cartridges are consumables for printers made by one firm and subject to one set of legal rules; it would be silly to handle drum kits in state court and toner or ink cartridges in federal. Yet to say this is effectively to say that there is only one "claim" to begin with.

Although we used *Fed. R. Civ. P. 15(c)* in *Knudsen* to illustrate the difference between claims that relate back and those that do not (and so may be treated as commenced when added to the suit), state rather than federal practice must supply [*6]  the rule of decision. Federal law makes the date of "commencement" important, but different legal systems understand that term differently. Federal practice deems a suit "commenced" when the complaint is filed, see *Fed. R. Civ. P. 3*, but some states may deem it commenced when the filing fee is paid, or when the clerk finds the complaint procedurally sufficient (states may allow clerks to reject papers that are not in proper form, as the Clerk of the Supreme Court does), or when the first (or last) defendant is served with process. Cf. *Pace v. DiGuglielmo, 161 L. Ed. 2d 669, 125 S. Ct. 1807 (2005)* (looking to state law to determine when a pleading has been "properly filed" for purposes of a federal time limit). Illinois has a relation–back rule that is function–ally identical to *Rule 15(c)*, however, so we need not fret over fine points. See *735 ILCS 5/2–616(b)*; see also *Zeh v. Wheeler, 111 Ill. 2d 266, 279–80, 489 N.E.2d 1342, 1348–49, 95 Ill. Dec. 478 (1986)* (relying on cases under *Rule 15(c)* to elucidate the meaning of the state relation–back statute).

In Illinois, a claim relates [*7]  back when it arises out of the same transaction or occurrence as the one identified in the original complaint. Cf. *Mayle v. Felix, 162 L. Ed. 2d 582, 125 S. Ct. 2562 (2005)* (discussing *Rule 15(c)*, which covers the same "conduct" as well as the same "transaction or occurrence"). It is apt to describe the challenged "transaction" as HP's inclusion in consumables of chips that cause printers to stop working before the consumer has wrung the last iota of use from the product. HP has not cited any case, in either Illinois or federal court, treating a similar amendment to the class definition as commencing a new proceeding.

An amendment relates back in Illinois when the original complaint "furnished to the defendant all the information necessary . . . to prepare a defense to the claim subsequently asserted in the amended complaint." *Boatmen's National Bank of Belleville v. Direct Lines, Inc., 167 Ill. 2d 88, 102, 656 N.E.2d 1101, 1107, 212 Ill. Dec. 267 (1995)* (internal quotation marks omitted). The October 2003 complaint did this. The propriety of using EEPROM chips is an all–or–none affair; HP has not suggested any way in which it might be entitled to [*8]  implement end-of-life rules for drum kits but not cartridges, or the reverse. It does not contend, for example, that it informed consumers of one but not the other, or that it solicited purchasers' consent with respect to one but not the other.

This may mean that plaintiffs lose (and quickly) across the board: no rule of law requires drum kits or toner cartridges

or any other consumer product to last for any prescribed period. If it would be lawful in Illinois for HP to fill cartridges with enough toner to last (on average) 3,000 pages, why would it not be lawful to include more toner (enough to *ensure* 3,000 pages of use) and then require replacement at that point, before the streaking and spotty output that marks the end of a cartridge's supply of toner? Consumers are better off with the second kind of cartridge than with the first. Much the same may be said for ink cartridges and drum kits. If HP had promised that its toner cartridges would last for 3,500 pages, then used an EEPROM to shut them down after 3,000, Schorsch would have a better claim, but this does not appear to be the class's theory. Yet it is not our job to resolve the case on the merits; all we need do is observe [*9] that the second amended complaint concerns the same "transaction" as a matter of Illinois law.

*Knudsen* and *Pfizer* hold, and we reiterate, that creative lawyering will not be allowed to smudge the line drawn by the 2005 Act: class actions "commenced" in state court on or before February 18, 2005, remain in state court. Amendments to class definitions do not commence new suits. We can imagine amendments that kick off wholly distinct claims, but the workaday changes routine in class suits do not. Defendants should recognize that *28 U.S.C. § 1447(c)* makes an award of attorneys' fees the norm for improper removal. See *Garbie v. DaimlerChrysler Corp., 211 F.3d 407 (7th Cir. 2000)*. So although we deny the petition for an interlocutory appeal in this case, we also invite the plaintiffs to file (in the district court) an appropriate request for reimbursement of the additional legal expenses to which they have been put by HP's efforts to move this litigation from state to federal court.

104NX6

********** Print Completed **********

Time of Request: August 11, 2005  05:58 PM EDT

Print Number:  1861:56547056
Number of Lines: 133
Number of Pages: 3

Send To:  HOFFMAN, DOUGLAS
          GILMAN AND PASTOR
          60 STATE ST FL 37
          BOSTON, MA 02109-1800