# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

BENSLEY CONSTRUCTION, INC.,
on its own behalf and on behalf
of all others similarly situated,

    Plaintiff,

      v.

MARSH & MCLENNAN
COMPANIES, INC., et al.

    Defendants.

Civil Action No. 05 11249 GAO

## PLAINTIFF'S REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF MOTION TO REMAND

Kenneth G. Gilman, BBO #192760
Douglas M. Brooks, BBO #058850
Douglas J. Hoffman, BBO #640472
GILMAN AND PASTOR, LLP
60 State St., 37th Floor
Boston, MA 02109
Tel: (617) 742-9700
Fax: (617) 742-9701

00006334.WPD ; 1

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.      THE EXISTENCE OF MDL 1663 IS NOT A BASIS FOR FEDERAL
JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.     CAFA DOES NOT APPLY TO THIS ACTION . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.     The Original Complaint Was Not Subject to CAFA . . . . . . . . . . . . . . . . 5

              1.     Binding First Circuit Precedent Holds That A Case Is Not
"Commenced" When it is Removed to Federal Court,
But Rather When it is Filed in State Court . . . . . . . . . . . . . . . . . . 5

              2.     For Purposes of CAFA, This Action Was Effectively
Commenced in Massachusetts State Court . . . . . . . . . . . . . . . . . 6

        B.     The Proposed Filing of the Second Amended Complaint Does
Not Subject This Case to CAFA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

              1.     Federal Jurisdiction Must Exist at the Time of Removal, and
Subsequent Amendments to Pleadings Cannot Be Used to
Retroactively Support a Notice of Removal . . . . . . . . . . . . . . . . 8

              2.     The Second Amended Complaint Does Not "Re-Commence" an
Entirely New Case for Purposes of CAFA . . . . . . . . . . . . . . . . . 10

III.    THE PRE-CAFA REQUIREMENTS FOR DIVERSITY JURISDICTION ARE
NOT SATISFIED HERE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        A.     Defendants Inappropriately Aggregate Claims to Reach the
Jurisdictional Amount . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        B.     The Parties are Not Completely Diverse;  The Liberty Defendants
Were Properly Joined Under a Conspiracy Theory . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Plaintiff Bensley Construction, Inc. ("Bensley" or "Plaintiff")[1], through its undersigned counsel, hereby submits this reply memorandum of law in further support of its motion to remand this matter to Massachusetts state court, filed on July 21, 2005.[2]

## INTRODUCTION

The pervasive theme of the Defendants' Opposition to Plaintiff's Motion to Remand (the "Opposition"), is to repeatedly accuse Plaintiff of attempting to keep this matter in state court, when, in Defendants' view, it should be consolidated in an MDL proceeding currently underway in the District of New Jersey.[3] Of course, the existence of an MDL proceeding is not a basis for removal where no federal jurisdiction exists over an action in the first place. In addition, this matter is no closer to being consolidated with that MDL proceeding than it was in June 2005 when defendants originally informed the Judicial Panel on Multidistrict Litigation ("JPML") of the existence of this case. The JPML has never taken *any* action to even begin the process of transferring this matter for consolidation with the New Jersey proceeding, and consequently, this Court should not delay ruling on the remand motion in deference to the MDL proceeding.

Defendants maintain that this action, filed in state court on February 17, 2005, is subject to the Class Action Fairness Act ("CAFA"), even though that statute applies only to cases

---

[1] Although Bensley has asked to be removed as class representative, as of this date it remains the Plaintiff of record, as the Court has not acted on Plaintiff's motion for leave to file the Second Amended Complaint.

[2] Defendants consented to allow Plaintiff to submit this Reply memorandum in a stipulation filed with the Court on August 11, 2005 (Dkt. No. 64), which was later amended by stipulations filed September 13 (Dkt. No. 77) and September 26 (Dkt. No. 78).

[3] The Opposition was filed by defendants Marsh & McClennan Companies, Inc., Marsh, Inc., ACE USA, ACE INA, American International Grou0p, Inc., American Re-Insurance Company, Arthur J. Gallagher & Co., Hilb Rogal & Hobbs Company, Willis Group Holdings, Ltd., Willis North America Inc., Willis Group Ltd., Universal Life Resources, Universal Life Resources, Inc., USI Holdings, Inc., MetLife, Inc., Prudential Financial, Inc., UnumProvident Corporation, The St. Paul Travelers Companies, Inc., and Zurich American Insurance Company. Collectively, these parties shall be referred to herein as "Defendants."

"commenced" on or after February 18, 2005.  Defendants argue that the action was not

"commenced" under CAFA until it was removed to federal court, but recent binding precedent

issued by the First Circuit dictates that a case is not "commenced" under CAFA upon removal,

but rather when it is filed in state court.  Defendants next cite the Massachusetts Rules of Civil

Procedure to argue that this action was never effectively "commenced" in state court because

venue was improper in Essex County, where the matter was filed.  Defendants do not, however,

provide any valid alternative suggestion as to when this case *was* commenced.  In fact, under

Defendants' reading of the rule, this case was never commenced at all, which of course is an

absurd result.  Pursuant to a Massachusetts statute, when venue is found to be lacking, the case is

generally transferred, although dismissal is at least theoretically possible.  However, in no

circumstance is the case treated as if it were never commenced in the first place.

     Defendants also assert that, if the Court allows Plaintiff to file a Second Amended

Complaint, this event would constitute the "commencement" of a new action and subject the case

to CAFA.  (Opp. at 21).  However, the Notice of Removal was filed well before the Plaintiff

proposed the Second Amended Complaint.  The propriety of removal is measured as of the date

of the removal petition, and as explained below, it is well-settled that in a case where removal is

not based on federal question jurisdiction, a defendant may not rely upon post-removal

amendments to support its removal petition.  Moreover, even if the Second Amended Complaint

were relevant on this motion, its filing would still not "commence" a new case.  It has been held

that as long as a civil action was filed in state court before February 18, 2005 it is not subject to

CAFA, even if it is amended after that date, because a "civil action" can only be commenced

once.  *Weekley v. Guidant Corp.,* No. 1:05CV00064, 2005 WL 2348476 (E.D. Ark. Sept. 23,

2005) (a civil action can only be commenced *once*, and amendments to a civil action after February 18, 2005, do not subject a civil action to CAFA, whether or not they "relate back."). Other courts suggest that the amendment must "relate back" under a Rule 15 analysis to avoid CAFA's reach, and the proposed amendment here easily meets that standard, as it merely seeks to substitute a new class representative, and the Defendants have been on notice of the classwide claims since February 17.

Defendants also claim that the requirements of the pre-CAFA diversity statute are met here, but this argument also fails. First, as demonstrated below, Defendants have inappropriately aggregated the class' claims to meet the jurisdictional amount. Second, Defendants have not come remotely close to meeting their burden of establishing fraudulent joinder by presenting "clear and convincing evidence" that Plaintiff could not "possibly" state a claim against the "Liberty Defendants" in Massachusetts state court. In fact, Defendants have provided no legal argument whatsoever in response to Plaintiffs' demonstration that the Liberty Defendants could be joined pursuant to a conspiracy theory. Consequently, the parties are not diverse and diversity jurisdiction will not lie here.

## ARGUMENT

## I.    THE EXISTENCE OF MDL 1663 IS NOT A BASIS FOR FEDERAL JURISDICTION

The prevailing theme of Defendants' Opposition is that the merits of Plaintiffs' motion to remand should be ignored by this Court due to the existence of a multidistrict litigation proceeding in the District of New Jersey (MDL 1663), with which Defendants feel this case should be consolidated. Defendants attach hundreds of pages of exhibits to their Opposition

***solely*** to show the Court that cases with similar factual allegations are pending in the MDL

proceeding.  However, the existence of an MDL proceeding is not a basis for federal jurisdiction.

It is elementary that, for the case to be removable, subject matter jurisdiction must exist over ***this***

case.  For this reason, courts reject efforts to seek removal based only on the existence of an

MDL proceeding, or solely on concerns of judicial economy.  *E.g. Judy v. Pfizer, Inc.*, 2005 WL

2240088, at *1 (E.D. Mo. Sept. 14, 2005) (stating, in a case denying defendant's efforts to apply

CAFA based on the existence of an MDL, ". . . Pfizer seeks removal of this case to gain the

benefits of its consolidation with the MDL case.  However, Judy has the right to keep the case in

her selected forum of state court if removal under the CAFA is improper.");  *USA One BV v.*

*Delmont Fire Protection Service, Inc*., No. CIV. A. 93-1320, 1993 WL 140514, at *1 (E.D. Pa.

May 3, 1993) (granting remand, and stating: "this court cannot assume jurisdiction merely" for

reasons of "judicial economy").

        Even if the Court bought into Defendants' MDL argument, there is no telling when or if

the JPML would transfer the case.  Despite the fact that Defendants made the JPML aware of the

existence of this matter over three months ago, on June 17, 2005 (Opp. at 5), the JPML has taken

absolutely no action to transfer this matter for consolidation with MDL 1663.

        Defendants have previously informed the Court that the JPML will act "quickly" to

transfer this case, but the facts reveal otherwise.  In moving to stay these proceedings pending a

transfer decision by the JPML, on June 20, 2005, Defendants represented to this Court: "The

JPML will likely meet soon to consider the transfer request, and, in keeping with its past practice,

will likely issue a decision promptly."  (Def's Mem. in Sppt. of Mot. to Stay (Dkt. No. 5), at 12).

Subsequently, more than three months have passed, with no action whatsoever by the JPML.  In

fact, the JPML held transfer hearings in July 2005, and on September 29, 2005, yet has not even taken the first step toward transferring this case by issuing a Conditional Transfer Order. Clearly, Defendants have no clue as to when or if the JPML will take any action on this case.

For these reasons, the existence of MDL 1663 is absolutely irrelevant to this Court's decision on the instant motion to remand, both as a practical matter and as a matter of law.

## II.    CAFA DOES NOT APPLY TO THIS ACTION

Whether or not CAFA applies to this action is a relatively simple question. It is undisputed that CAFA only applies to cases "commenced" on or after February 18, 2005. 109 P.L. 2, Sec. 9. Consequently, to determine whether CAFA governs this case, the Court must determine when this case was "commenced" for CAFA's purposes.[4] Plaintiff maintains that this case was "commenced" only once, when it was originally filed in state court on February 17, 2005, making CAFA inapplicable to this case. The matter is therefore resolved and the Court need not consider the issue further. Defendants' arguments to the contrary are meritless.

### A.    The Original Complaint Was Not Subject to CAFA

### 1.    Binding First Circuit Precedent Holds That A Case Is Not "Commenced" When it is Removed to Federal Court, But Rather When it is Filed in State Court

Defendants argue that CAFA applies to the Original Complaint, asserting that a case is "commenced" for purposes of CAFA only when it is **removed** to federal court, as opposed to when it was filed in state court. (Opp. at 25-27). Every court to consider this argument has

---

[4] Defendants drone on and on about the broader purposes of CAFA (Opp. at 14-17), yet they miss the essential question: to which cases did Congress intend CAFA to apply? Although CAFA broadened federal jurisdiction, *it only did so for cases that fall under its purview*. *Pritchett v. Office Depot, Inc*., 404 F.3d at 1232, 1237, n.6 (10th Cir. 2005) ("While it is clear the Congress wished to expand federal jurisdiction, when that expansion is made effective is what is at issue in this case, and that is an issue we approach cautiously."). Defendant's legislative history arguments are not at all relevant to the question here, which is whether or not CAFA applies to this action.

rejected it.  (Remand Mem. at 3-8) (citing cases).  Defendants, in fact, admit that this very argument was rejected by Chief Judge Young of this District in his recent opinion in *Natale v. Pfizer*, 379 F. Supp. 2d 161 (D. Mass. 2005).  As Defendants stated, Judge Young certified the issue to the First Circuit, and Defendants asked this Court to await the First Circuit's decision in *Natale* prior to ruling on this remand motion.  (Opp. at 26-27).

The First Circuit has since affirmed Judge Young's decision in *Natale*, and held that a case is "commenced" when it is filed in state court, and ***not*** when it is first removed to federal court.  *Natale v. Pfizer*, No. 05-2203, 2005 U.S. App. LEXIS 19912, at *2-3 (1st Cir. Sept. 16, 2005) (affirming *Natale*, 379 F. Supp. 2d 161).  Consequently, under binding First Circuit precedent, this case was not "commenced" upon removal, but instead when it was filed in state court on February 17.[5]

> **2.    For Purposes of CAFA, This Action Was Effectively Commenced in Massachusetts State Court**

Defendants next claim that the case was ***not*** effectively "commenced" for purposes of CAFA when it was filed in state court if venue was improper in the Essex Superior Court (Opp. at 18).  Defendants cite to a Massachusetts Rule, which states that a case is commenced when it is filed in a "proper" court, and cites to the Rule's commentary to argue that a "proper" court requires that the venue requirements be satisfied there.  However, in the context of determining when this case was commenced under CAFA, reading the rule in the manner urged by Defendants would lead to an absurd result.  It would mean that this case was never "commenced"

---

[5] In fact, the rejection of this argument has been so complete that in Judge Young's opinion in *Natale*, the Court very nearly forced the defendant to pay to plaintiff the costs of his motion to remand.  *Natale*, 379 F. Supp. 2d at 181, and n. 26 ("This [request for costs] gives the Court reason to pause . . . Pfizer's argument has been repeatedly, this being at least the fourth time, rejected by the federal courts . . . Should other courts similarly interpret the "commence" statutory language, Pfizer's latitude to seek judicial interpretation without being held responsible for attorney's fees and costs may narrow in the future.").

at all, since Defendants offer no other valid date when the case *was* "commenced."[6]  Courts should not apply the strict, literal language of a statute or rule in situations where it would lead to an absurd result.  *Summit Inv. and Development Corp. v. Leroux*, 69 F.3d 608, 610 (1st Cir. 1995) ("'Literal' interpretations [of a statute] which lead to absurd results are to be avoided."); *Com. v. Kneram*, 826 N.E.2d 733, 736, n.8 (Mass. App. Ct. 2005) ("There are circumstances, however, in which a strict reading of a statute leads to an absurd result.  In such an instance, a deviation is justified so long as it 'preserve[s] the substance of a statute rather than diminish[es] it.'") (citing *Dillon v. Massachusetts Bay Transp. Authy*., 729 N.E.2d 329 (2000)).[7]

Also, in analogous contexts, Massachusetts Courts do not apply the Rule in the manner Defendants suggest here.  When determining when a case is commenced for limitations purposes, Massachusetts courts do not treat a case as if it was never "commenced" in the first place simply because venue is later found improper.  Instead, the action is generally transferred to a court where venue is proper and is treated as if it had been first filed in that court.  M. G. L. c. 223, § 15 ("If an error in venue is discovered . . . the court may . . . order the action . . . to be removed to the proper county . . . and it shall thereupon be entered and prosecuted . . . *as if it had been originally commenced therein, and all prior proceedings otherwise regularly taken shall be valid*") (emphasis added) (*see also* Remand Mem. at 9) (citing cases).

Defendants claim that this analysis is "wrong as a matter of law" (Opp. at 20), but the only case they cite in support merely holds that where venue is improper, it is ***possible*** for a

---

[6]  As explained above, under *Natale*, the date of removal cannot constitute "commencement" under CAFA.

[7]  As Plaintiff pointed out in the Remand Memorandum, if the case were not properly filed in the Essex Superior Court, Defendants could not have removed the case to this court.  *Arizona v. Manypenny*, 451 U.S. 232, 242 n.17, 101 (1981) (the jurisdiction of a federal court in a case removed from state court is derivative, and is only proper if jurisdiction was proper in the state court).  Not surprisingly, Defendants have no response to this argument.

Court to dismiss the case, rather than transfer it.  *Id.* (citing *Brooks v. Maloney*, 766 N.E. 2d 912 (Mass. App. Ct. 2002)).  In *Brooks*, however, the case was not dismissed.  The Massachusetts Court of Appeals actually ***reversed*** the trial court's dismissal of the plaintiff's case, which was based on improper venue, because it did not provide a proper basis for "declining to transfer the action pursuant to G.L. c. 223, § 15, to the proper county." *Id.* at 912.  In other words, Massachusetts courts greatly favor transfer of the action, and dismissal is the exception which a trial court must somehow justify.  More importantly, even if a case ***were*** dismissed, that does not mean it was never "commenced" in the first place.

In any event, ***this*** case was never dismissed, nor did Defendants even move to dismiss it for improper venue.  Instead, Defendants removed the case to federal court, essentially waiving any objection to venue in the process.  *Markelson v. Director of Div. of Employment Sec.*, 383 Mass. 516, 518 (1981) (venue is not jurisdictional in nature and is waivable).

**B.    The Proposed Filing of the Second Amended Complaint Does Not Subject This Case to CAFA**

**1.    Federal Jurisdiction Must Exist at the Time of Removal, and Subsequent Amendments to Pleadings Cannot Be Used to Retroactively Support a Notice of Removal**

Though the Second Amended Complaint was submitted to the Court well after the case was removed, Defendants now attempt to rely on that subsequent amendment to support their removal petition.  Defendants claim that, if the Court allows Plaintiff to file a Second Amended Complaint, this event would constitute the "commencement" of a new action and subject the case to CAFA.  (Opp. at 21).  It is well-settled that Defendants may not rely on post-removal amendments to support their removal petition.  As Defendants themselves concede, in determining whether subject matter jurisdiction exists, the court must look "to the complaint as it

existed at the time the petition for removal was filed." (Opp. at 9) (citing *Anderson v. Electronic Data Sys. Corp.*, 11 F. 3d 1311, 1316 & n.8 (5th Cir. 1994)). This rule applies to thwart defendants from relying on post-removal events to retroactively support a removal petition, where federal jurisdiction did not exist when the petition was filed. *Soriano v. Amvac Chemical Corp.*, Nos. 99-3598, 99-3616, 99-3617, 2003 WL 21467557, at *2 (E.D. La. June 23, 2003) ("Because the Court is aware that diversity jurisdiction was lacking at the time of removal, these matters must be remanded to state court."); *Rudow v. Monsanto Co.*, No. C99-4700, 2001 WL 228163, at *4 (N.D. Cal. Mar. 1, 2001) ("[H]aving learned that federal subject matter jurisdiction was lacking at the time of removal, this Court cannot now put the genie of awareness back into its bottle and retain the case."); *Vasura v. Acands*, 84 F. Supp. 2d 531, 536 (S.D.N.Y. 2000) ("I am presented with a case in which although diversity was not present at the time of removal, the apparent dismissal of the non-diverse defendant has subsequently rendered the parties diverse. Under the circumstances, despite the present existence of diversity, I am compelled to remand.").

In *Soriano*, the defendant first removed on grounds of federal question jurisdiction, which the court rejected. *Soriano*, 2003 WL 21467557, at *1. The defendant then argued that although diversity of the parties was lacking at the removal date, the subsequent dismissal of non-diverse parties via an amended complaint cured that defect, and established federal jurisdiction. *Id.* The Court rejected this argument, and held that since diversity did not exist as of the removal date, the case would be remanded to state court. *Id.* at *1-2.

Here, Defendants argue that the submission of the Second Amended Complaint, which purports to substitute Rehab Seating, Inc. as representative plaintiff, supports removal even though it was submitted well after the Notice of Removal was filed. (Opp. at 21-25). Because

federal jurisdiction must be determined as of the date of removal, the Second Amended Complaint cannot be used to support the Defendants' removal petition, which, as demonstrated herein, had no merit at the time it was filed. Consequently, removal here cannot be upheld on that basis.

### 2. The Second Amended Complaint Does Not "Re-Commence" an Entirely New Case for Purposes of CAFA

Defendants next argue that the Second Amended Complaint, which substitutes Rehab Seating for Bensley, "commences" an entirely new case for purposes of CAFA. (Opp. at 21). As established above, this amended complaint cannot be used to support the Notice of Removal in any event, since it was submitted post-removal. However, even if the amendment had occurred pre-removal, it would still not warrant federal jurisdiction.

First, simply because a complaint is amended does not "commence" a new civil action for purposes of CAFA. Although some courts follow a "relation-back" test, which is discussed further below, at least one District Court recently held that *no* amendment to an action commenced prior to CAFA's effective date could justify application of the statute.[8] *Weekley*, 2005 WL 2348476 (a civil action can only be commenced *once*, and amendments to a civil action after February 18, 2005, do not subject a civil action to CAFA, whether or not they "relate back."). In *Weekley*, the original complaint was an individual case filed in July 2004. *Id.* at *1. In July 2005, the plaintiff filed a document purporting to amend the complaint into a class action. *Id.* Defendants argued that the amendment subjected the case to CAFA. *Id.*

The Court rejected this argument. It first recognized that the language of CAFA § 9 is

---

[8] As Defendants concede, the "relation-back" test pursuant to Rule 15 which has been suggested by the Seventh Circuit was merely *dicta*, and in any event is not binding on this Court. (Opp. at 22, n. 13).

clear:  CAFA applies only to "any civil action commenced on or after the date of enactment of

this act."  The Court also recognized that in choosing this wording, Congress "used clear,

unambiguous, familiar legal terms."  *Id.* at *2.  The term "civil action" has a well-recognized

meaning in the removal statutes, and applies to the entire action, as opposed to individual claims

or causes of action.  *Id.*  Consequently, the Court concluded that a "civil action, viewed as the

whole case, can only be commenced once."  *Id.* (citing *Sneddon v. Hotwire, Inc.*, 2005 WL

1593593 (N.D. Cal. June 29, 2005).  With regard to amended pleadings, the Court explained:

> ***Pleadings may be amended, but amending pleadings does not commence a civil
> action.***  By definition, a civil action must already have been commenced before a
> pleading can be amended.  Some claims asserted in the initial complaint may be
> dismissed, voluntarily or involuntarily, during the course of the action.  Other
> claims may be added during the course of the action.  Those new claims may
> dramatically change the action.  Those claims may or may not "relate back" to the
> original complaint for limitations purposes.  Nevertheless, a civil action, viewed
> as the entirety of the case or the entirety of the proceeding, commenced when the
> initial complaint was filed.

*Id.* (emphasis added).  Consequently, under the plain language of CAFA, the Court held that a

post-CAFA  amendment to a complaint does not "commence" a new action, ***whether or not the***

***amendment relates back under a Rule 15 analysis***.  *Id.* at *3.  The Court stated that if Congress

had intended for CAFA to apply to actions that were filed before its effective date, but became

removable afterwards, it could easily have done so.  *Id.*  Consequently, the instant action was

commenced only once, on February 17, 2005, and no subsequent amendment could subject this

action to CAFA.

    As Plaintiff explained in the Remand Memorandum, the Seventh Circuit has suggested

that some specified amendments could "commence" a new case, but amendments that relate back

under a Fed. R. Civ. P. 15 analysis would not.  *Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805,

807 (7th Cir. 2005). The changes suggested in *Knudsen* were the addition of a new **defendant** or the addition of new "claims" (*Id.*), neither of which is present here. Defendants, however, attempt to shoehorn this case into the small window suggested by *Knudsen*, by claiming that the addition of any **party** commences a new action under *Knudsen*. (Opp. at 22).

Even if this Court applied a relation-back test, the end result would be the same. The issue of relation back is primarily one of **notice** to the defendant(s). *Young v. Lepone*, 305 F.3d 1, 17-18 (1st Cir. 2002) ("The Supreme Court has emphasized that 'notice within the limitations period' is the linchpin of a Rule 15(c) analysis.") (quoting *Schiavone v. Fortune*, 477 U.S. 21, 31 (1986)). When a class complaint is filed, the defendant is on notice of the classwide claim brought against it from the time of the initial filing. *E.g. Adames v. Mitsubishi Bank Ltd.*, 751 F. Supp. 1565, 1573 (E.D.N.Y. 1990) ("[T]he filing of plaintiff's class action [] suit clearly put defendant on notice of the class-wide nature of the allegations."). For this reason, as Plaintiff already explained, it is well-settled that in the context of a class action, the substitution of a representative plaintiff with another member of the class who alleges essentially the same claims "relates back" to the filing of the original complaint, and therefore does not commence a new case. *Engers v. AT&T Corp.*, No. 98-3660, 2000 U.S. Dist. LEXIS 10937, at *11-12 (D.N.J. 2000) (claims of newly-added class representative related back where new plaintiff was a member of the class and raised the same claims); *U.S. ex rel. Koch v. Koch Industries, Inc.*, 188 F.R.D. 617, 629-30 ("[A]bsent a showing of prejudice to the defendant, an amendment which substitutes one plaintiff . . . for the original plaintiff . . . with no corresponding change in the claims asserted against the defendant, will relate back under Rule 15(c)."); *Manney v. Monroe*, 151 F. Supp. 2d 976, 997 (N.D. Ill. 2001) ("A plaintiff may usually amend his complaint under

Rule 15(c) to . . . substitute or add as plaintiff the real party interest; or to add additional plaintiffs where the action, as originally brought, was a class action.") (quoting *Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir. 1993)).

It has even been held in this District that when a plaintiff is deemed to be an inadequate class representative, it is permissible to completely substitute a new representative plaintiff, whose claims relate back to the filing of the initial complaint. *Griffith v. Bowen*, 678 F. Supp. 942, 947 (D. Mass. 1988) (Young, J.) ("[W]hile the named plaintiffs may no longer be adequate class representatives . . . there is no reason to punish the absent class."). Defendants vainly attempt to distinguish Judge Young's decision in *Griffith*, stating only that that case is distinguishable because that plaintiff's claim was dismissed for mootness. (Opp. at 25). However, Defendants do not explain why this distinction is relevant.

The few cases offered by the Defendants are of little assistance. Defendants cite to the First Circuit's decision in *Young* (Opp. at 23), but that case actually supports a finding here that the amendment relates back. In *Young,* the original complaint was an ***individual*** securities fraud complaint. 305 F. 3d at 39. A completely separate plaintiff attempted to piggy-back on the original complaint based on its own transaction. *Id.* The Court refused to allow relation back, due to the fact that the original complaint did not provide adequate notice to the defendant that a second plaintiff had similar claims. ***Significantly, the Court held as it did because the original complaint did not purport to be filed on behalf of a class***:

> [W]e find it difficult to credit the new plaintiffs' blithe assertion that the filing of suit by Cape Ann gave Deloitte notice that the new plaintiffs also would sue. ***Cape Ann's complaint was not couched as a class action--and on these facts, Deloitte had no reason to believe that Cape Ann was speaking on behalf, or acting to the behoof, of other shareholders.***

*Id.* at 39 (emphasis added). Here, conversely, the original complaint was a class action, which therefore put the Defendants on notice of the classwide nature of the claims against them.

Defendants also overstate the "identity of interest" analysis in this context. This requirement is meant to ensure that the defendants were on notice from the beginning of the nature and scope of the claims asserted. *In re Gilat Satellite Networks, Ltd.*, 2005 WL 2277476 (E.D.N.Y. Sep 19, 2005) ("Those courts imposing the "identity of interest" requirement in the context of the addition of new plaintiffs do so to ensure that the defendants had notice of the claims of the new plaintiffs prior to the expiration of the statute of limitations."). In a class action, this requirement is satisfied where the new plaintiff is "similarly situated to the original plaintiffs" even where there is "no 'legal or familial relationship' between the two sets of Plaintiffs," as long as the original complaint put the defendants on adequate notice of the class wide claims. *Immigrant Assist. Proj. of the Los Angeles Cnty. Fed. of Labor v. INS*, 306 F.3d 842, 860, n. 14 (9th Cir. 2002) (quoting *In re Glacier Bay*, 746 F.Supp. 1379, 1391 (D. Alaska 1990). As this is clearly the case here, the substitution of Rehab Seating relates back to the filing of the initial complaint.[9]

## III.    THE PRE-CAFA REQUIREMENTS FOR DIVERSITY JURISDICTION ARE NOT SATISFIED HERE

### A.    Defendants Inappropriately Aggregate Claims to Reach the Jurisdictional Amount

Plaintiff (and proposed Plaintiff Rehab Seating) have explicitly stated that they do not seek, nor would they accept, damages exceeding $74,999 (Amd. Compl., 2d. Amd. Compl. ¶¶

---

[9] In *Adams v. Fed. Mat. Co., Inc.*, 2005 U.S. Dist. LEXIS 15324 (W.D. Ky. July 28, 2005), relied upon by Defendants, the plaintiff amended his complaint to add a new ***defendant*** after the effective date of CAFA. The Court held that the amendment did not relate back because that defendant had no notice of the lawsuit at all until it was added to the suit after CAFA's effective date. *Id.* at *3.

47, 133, 142, 155, 163, 170).  As Plaintiff demonstrated in the Remand Memorandum, courts routinely hold that such a limitation is effective and should be recognized by courts in determining whether the jurisdictional amount is met.  (Remand Mem. at 10-11) (citing cases).  Although Defendants make vague accusations regarding the "best interests of the putative class," (as if this truly were Defendants' concern) they do not even attempt to distinguish the cases cited by Plaintiff on this point, nor do they offer any authority to the contrary.  (Opp. at 7).   The fact remains that this limitation counsels against a finding that the jurisdictional amount is met.

Defendants, however, argue that the class claims can be aggregated to reach the jurisdictional amount.  (Opp. at 11-14).  As Plaintiff has already established, a request for disgorgement does not warrant aggregation of class members' claims for purposes of reaching the jurisdictional minimum.  (Remand Mem. at 10-13) (citing cases).  Obviously, most class actions seek the creation of some type of common fund, but that does not necessarily translate into a common and undivided interest:

> Such a "fund" is created to facilitate the litigation process in virtually every class action, and has nothing necessarily to do with whether the plaintiffs shared a pre-existing (pre-litigation) interest in the subject of the litigation.
>
> * * *
>
> It is of course commonplace to collect class action damages wholesale, put the proceeds in a single fund, and distribute the proceeds retail upon a showing of specific entitlement in accordance with the judgment.

*Gilman v. BHC Sec.,* 104 F.3d 1418,1427-1428 (2d Cir. 1997).  Here, **as defendants themselves admit**, the disgorgement fund is something "Plaintiff seeks to create."  (Opp. at 6).

Defendants claim that "unjust enrichment funds commonly are treated as creating indivisible common funds . . ."  (Opp. at 11).  Defendants have no real basis for this assertion.

They cite only one decision, *Berman v. Narragansett Racing Asso*, which Plaintiff has already

demonstrated is inapposite. (Remand Mem. at 12). A recent decision in this very District also

distinguished *Berman* from cases like the one at bar.

> Pfizer relies heavily on *Berman v. Narragansett Racing Asso*., 414 F.2d 311, 315
> (1st Cir. 1969) (involving purse winners who, as a group, claimed they were
> entitled to a certain percentage of the money wagered), where the court held that
> the interest was "common and undivided" so as to make aggregation proper.
> [Plaintiff] distinguishes *Berman*, . . . as did Judge Keeton in *Gattegno*, 297 F.
> Supp. 2d at 378. Judge Keeton correctly noted that *Berman* did not involve
> individual agreements between the class members and the defendants. *Id.* Rather,
> *Berman* involved a "purse agreement" to pay annually, in the aggregate, "to the
> group of owners whose horses win purses." 414 F.2d at 313, 315 (noting that "no
> contractual rights [were] created between the defendants and the individual
> pursewinners" (emphasis added)).

*Natale*, 379 F. Supp. at 179. In addition, Plaintiff cited Judge Keeton's decision in *Gattegno*

*v. Sprint Corp*., 297 F. Supp. 2d 372, 377 (D. Mass. 2003), which explained *Berman* and held:

that:

> The focus should not be on the type of relief requested, but rather on the nature
> and value of the right asserted. Thus, the issue turns not on whether plaintiffs
> seek a "common fund," but on whether plaintiffs bring the case based in
> individual claims or in an indivisible, common claim.

*Gattegno*, 297 F. Supp. 2d at 377. Defendants' only response is to claim that Plaintiff cited

*Gattegno* "out of context" (Remand Opp. at 13), but Defendants do not explain why this is so, or

otherwise distinguish *Gattegno* in any meaningful way. (Remand Opp. at 13). Here, class

members had individual agreements with the Defendants, as opposed to an agreement between

the Defendants and the class as a whole. Therefore *Berman* is inapposite, and Plaintiff's request

for disgorgement does not justify aggregation.[10]

---

[10] Defendants claim that "unjust enrichment claims that ***do not differentiate*** between the right to individualized damages and the right of the class to recover must be aggregated." (Opp. at 13). Defendant essentially claims that where a complaint's allegations are unclear, they should be construed in favor of removal. However, reading the

Because Defendants have not established the requisite amount in controversy, diversity jurisdiction cannot lie here, and Plaintiff's motion to remand must be granted.

**B.      The Parties are Not Completely Diverse;  The Liberty Defendants Were Properly Joined Under a Conspiracy Theory**

Defendants maintain that the Liberty Defendants were fraudulently joined in this action. (Opp. at 8).  As explained in Plaintiffs' motion to remand, the burden on a party attempting to demonstrate fraudulent joinder is extraordinarily high.  As an *opinion issued yesterday* in this District stated:  "'In order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by *clear and convincing evidence*, either that there has been outright fraud committed in the plaintiff's pleadings, or *that there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against the non-diverse defendant in state court.*'" *Rodrigues v. Genlyte Thomas Group LLC*, No. CIV.A. 200411512, 2005 WL 2385853, at *3 (D. Mass. Sept. 29, 2005) (quoting *Mills v. Allegiance Healthcare Corp.*, 178 F.Supp.2d 1, 5 (D. Mass. 2001));  *In re Mass. Diet Drug Litig.*, 338 F. Supp. 2d 198, 202 (D. Mass. 2004) (same).  The burden on a defendant to show fraudulent joinder is actually higher than the burden on a motion to dismiss.  *Rodrigues*, 2005 WL 2385853, at *4, n. 5 ("A number of authorities suggest that the fraudulent joinder standard is even more favorable to the plaintiff than the motion to dismiss standard.") (*citing* 16 Moore's Federal Practice, § 107.14[2][c] (Matthew Bender 3d ed.) (citing cases)).  In addition, "[i]n determining whether a joinder is fraudulent, the Court should resolve all factual and legal

---

complaint in this way conflicts squarely with the long-held principal that on a motion to remand, the allegations of the complaint are to be read in favor of remand. *E.g. Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) ("In determining 'whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff.'").  Rather, the true test, as explained by *Berman* and its progeny, is that aggregation is *only* appropriate when a plaintiff class seeks disgorgement of a common, existing fund, to which all class members have an equal right.

ambiguities in favor of the plaintiff." *Rodrigues*, 2005 WL 2385853, at *3 (quoting *Mills*, 178 F.

Supp. 2d at 6).

The main basis that Defendants raise for fraudulent joinder is that Bensley did not

purchase insurance directly from the Liberty Defendants. However, Plaintiff offered two

separate bases for the joinder of the Liberty Defendants in this suit: (1) conspiracy and (2) the

juridical links doctrine. (Remand Mem. at 13-19). As to the basis for the conspiracy allegation,

Plaintiff provided *detailed* information regarding the Liberty Defendants' conduct and described

their connection to the industry-wide conspiracy alleged. (Remand Mem. at 14-16). In addition,

Plaintiff cited numerous cases holding that in circumstances such as these, no direct relationship

with the Defendant is needed in order to state a claim for unjust enrichment. *Id.* at 16 (citing

cases). Finally, Plaintiffs cited numerous cases holding that in cases alleging a conspiracy which

has the effect of raising prices, a plaintiff may state a claim against ***all*** conspirators, whether or

not he purchased anything from them. (Remand Mem. at 18-19).

*Incredibly, Defendants do not offer any legal argument in response to Plaintiffs'*

*conspiracy-based joinder argument.* Defendants do not attempt to distinguish any of Plaintiffs'

cases, or argue that they are not applicable under the circumstances presented here. Defendants

merely state that the link between Bensley and the Liberty Defendants is not "direct" enough, but

they do not cite a single case in support of these vague assertions. (Opp. at 10). Given the fact

that Defendants have no legal argument whatsoever on this point, this Court cannot possibly find

that the Defendants have proven, by "clear and convincing evidence," that there is "no

possibility" that Plaintiff can "state a cause of action against the [Liberty Defendants] in state

court." *Rodrigues*, 2005 WL 2385853, at *3.[11]

Defendants also attempt to support their "fraudulent joinder" argument with the claim that Bensley lacks standing because some of the insurance it purchased was through an assigned risk pool and other insurance was purchased through a broker in New Hampshire not specifically named as a defendant. (Opp. at 3-4, 10). First, an attack on Bensley's standing to bring the case is completely inappropriate on this motion to remand, as it asks the Court to rule on the merits of Bensley's claim even before it has established that it has jurisdiction over this case. Moreover, putting aside the "assigned risk pool" issue for the moment, Defendants do not adequately address the fact that Bensley purchased insurance from Zurich though the "competitive" bidding process described in the complaints using the New Hampshire broker. Defendants cite no case law whatsoever to establish that naming Bensley's broker as an individual defendant is necessary to sustain the conspiracy-type claim alleged. Defendants also completely ignore that fact that Bensley brought the case against a ***class*** of all insurance brokers who participated in the Contingent Commission Agreements (as that term is defined in the complaint) alleged. (*E.g.* 2d Amd. Cplt. ¶¶ 35). Consequently, whether Bensley's broker was named as one of the individual defendants is irrelevant to the question of whether Bensley could potentially sustain its conspiracy claim against the Liberty Defendants. At the very least, Defendants have not met their heavy burden of proving fraudulent joinder "by clear and convincing evidence," because they have not and cannot prove that there is "no possibility" that Bensley could state a claim

---

[11] Plaintiff stands on its earlier briefing on the "juridical links" basis for joinder, though it is unnecessary for the Court to reach this issue given Defendants' complete failure to respond to Plaintiff's legal argument regarding joinder based on a conspiracy.

against the Liberty Defendants.[12]

In addition, Defendants argue repeatedly that the addition of Rehab Seating does not "cure" the allegedly fraudulent joinder. (*E.g.* Opp. at 9). However, as previously explained, Rehab Seating was not added as a plaintiff for this purpose (*E.g.* Remand Mem. at 1, n.1), and Plaintiffs did not argue that the proposed substitution of Rehab Seating somehow supported its motion to remand. Rehab Seating was only added due to the fact that Bensley wished to withdraw as a representative plaintiff because the business was being sold. *Id.*

However, Defendants essentially accuse Plaintiff of lying to the Court regarding the reason for the substitution of Rehab Seating in place of Bensley, claiming that Plaintiff's counsel orchestrated this substitution solely for strategic reasons, and that it is a "tacit recognition of the original fraudulent joinder."[13] (Remand Opp. at 6, 9). Although Plaintiffs' counsel believes it should not be necessary and is not relevant to this motion, if the Court wishes, Bensley will provide an affidavit confirming the reason that it wished to withdraw from the action, and that its withdrawal was not suggested by Plaintiffs' counsel.

## CONCLUSION

For the foregoing reasons, and the reasons stated in Plaintiff's Memorandum of law in Support of Motion to Remand, Plaintiff's Motion to Remand should be GRANTED.

---

[12] Defendants also claim that Rehab Seating lacks standing because it purchased its workers compensation insurance through the Massachusetts Workers' Compensation Assigned Risk Pool. (Opp. at 6, and n. 7). However, to whatever extent this assertion is relevant to this motion, Defendants are completely silent about Rehab Seating's Employers' Liability policies, also purchased from the Liberty Defendants, or its Commercial Property and Commercial General Liability policies, purchased from named defendant St. Paul Travelers and/or its affiliates, during the Class Period. (2d Amd. Cplt. ¶¶ 12-13).

[13] Of course, when it suits their purpose in other sections of the Opposition, Defendants appear to concede that Bensley wishes to withdraw from the litigation voluntarily. (Opp. at 21) (conceding that Bensley withdrew because it "no longer wishes to engage in this litigation.")

DATED: September 30, 2005

Respectfully submitted,

**GILMAN AND PASTOR, LLP**

By:     /s/ Kenneth G. Gilman
        Kenneth G. Gilman, BBO #192760
        Douglas M. Brooks, BBO #058850
        Douglas J. Hoffman, BBO #640472
        60 State St., 37th Floor
        Boston, MA 02109
        Tel: (617) 742-9700
        Fax: (617) 742-9701